Jeffrey B. Cereghino, SBN 099480
Email: jbc@rocklawcal.com
Michael F. Ram, SBN 104805
Email:  mram@rocklawcal.com
Matt J. Malone, SBN 221545
Email: mjm@rocklawcal.com
RAM, OLSON, CEREGHINO
   & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LUCIDO, ALMACEO AND LAURAE CAMPBELL, RICHARD CARTER, REGGIE SMITH, DAVID BALMER, KAREN PHILLIPS, WAYNE COLELLO, KAREN BAKER, RICKY BISHARAT, HOPE BENHAM, ROBIN BENHAM, VIRGINIA BURGARDT, CYNTHIA XENAKIS, DIANE PORTER, LANCE CARLSON, GRACE ARMSTRONG, JENNIFER HICKEY, THOMAS AND SHARON NORMAND, CHRISTINA WINTERS, ROBERT BRYDEN, REGINA BOLLINGER, PAT KELLY, AMERICA PENA, ELIZABETH RODARTE, and KACY KIMBALL, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>NESTLÉ PURINA PETCARE COMPANY, a Missouri corporation; and DOES1 through 200, inclusive,<br><br>     Defendants. | Case No. 3:15-cv-00569-EMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMAND |

1        Plaintiffs identified below, individually and on behalf of the Classes defined below of

2   similarly situated persons, file this First Amended Class Action Complaint against Defendant

3   Nestlé Purina Petcare Company ("Purina").

## I. NATURE OF THE CASE

5       1.     Purina failed to disclose that Beneful dog food contains Industrial Grade

6   Glycols, which are not approved for use in food, mycotoxins, lead, and/or arsenic.  Plaintiffs

7   would not have purchased Beneful had they known Beneful contained any one of these

8   substances.  Plaintiffs bring this class action on behalf of all persons who purchased Beneful

9   brand dog food, including persons who incurred out of pocket costs resulting from their dogs

10  becoming ill or dying after ingesting Beneful.

## II. PARTIES

12      2.     Plaintiff Frank Lucido has at all material times been a resident of Discovery

13  Bay, California.  In late December 2014 or early January 2015, Plaintiff Lucido purchased a

14  bag of Beneful for the first time.  Between late December or early January 2015 and

15  approximately January 15, 2015, Plaintiff  Lucido's dogs—Nella, a four-year old purebred

16  German Shepherd sired by a champion show dog, and Remo, an eleven year-old Labrador—ate

17  exclusively Beneful Healthy Fiesta and Healthy Weight .  On approximately January 15, 2015,

18  Plaintiff's Lucido's wife noticed that Nella, his healthy German Shepherd, was losing large

19  amounts of hair and producing an unusual and unpleasant odor.  Plaintiff Lucido became

20  concerned about the possibility that Beneful was causing this.  Shortly thereafter, on the night

21  of January 17th, Nella became violently ill.  Veterinary examination and testing revealed signs

22  of internal bleeding in her stomach and liver malfunction consistent with poisoning, and Nella

23  continues to have ongoing health problems.  Remo, who lived in a different location from

24  Nella, also became ill at almost the same time as Nella; he lost total mobility in his lower body,

25  among other symptoms, before dying.  Plaintiff Lucido would not have purchased Beneful had

26

27

1  he known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a

2  result, Plaintiff Lucido has suffered substantial damages.

3       3.    Plaintiffs Almaceo and Laurae Campbell have at all material times been

4  residents of Oakland, California.  Plaintiffs Campbell owned Shaba Ranks, a six-year old

5  Rhodesian Ridgeback, who ate Purina Beneful Original for approximately four years.  After

6  eating this product, Shaba Ranks experienced blood in the stool, diarrhea, internal bleeding,

7  kidney failure, lethargy, liver malfunction or failure, loss of appetite, seizures, vomiting, and

8  excessive thirst before dying on January 6, 2015.  Plaintiffs Campbell would not have

9  purchased Beneful had they known Beneful contained Industrial Grade Glycols, Mycotoxins,

10  Lead or Arsenic.  As a result, the Campbells have suffered substantial damages.

11       4.    Plaintiff Richard Carter has at all material times been a resident of Yuba City,

12  California.  Plaintiff Carter owns Molly, a female Queensland Heeler, who is nine years old and

13  ate Beneful dog food for the three years prior to November 2014.  Although Molly was

14  previously in good physical health, in November 2014, she fell ill, with unusually high amounts

15  of thirst, vomiting and bloody diarrhea.  This illness resolved itself without veterinary

16  treatment.  But in February 2015, Molly again fell ill, with the same symptoms as before, only

17  to a much more severe degree.  Plaintiff Carter would not have purchased Beneful had he

18  known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result,

19  Plaintiff Carter has suffered substantial damages.

20       5.    Plaintiff Reggie Smith has at all material times been a resident of Oceanside,

21  California.  Plaintiff Smith owned Nadia, a five-year old Siberian Husky-Alaskan Malamute

22  Mix, who ate Purina Beneful Original or Purina Beneful Playful Life for approximately two

23  and one-half years.  After eating these products, Nadia experienced diarrhea, internal bleeding,

24  kidney failure, lethargy, liver malfunction or failure, vomiting, and panicked breathing before

25  dying on March 2, 2015.  Plaintiff Smith would not have purchased Beneful had he known

26

27

1   Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result,

2   Plaintiff Smith has suffered substantial damages.

3         6.      Plaintiffs David Balmer and Karen Phillips have at all material times been

4   residents of Colorado.  Plaintiffs Balmer and Phillips owned Scout, a six-year old Vizsla, who

5   ate Purina Beneful Original consistently starting in or about November 2014.  After eating

6   Beneful for just a few months, in January 2015, Scout experienced decreased appetite, less

7   energy, and occasional episodes of vomiting.  Plaintiffs Balmer and Phillips have two other

8   dogs.  They did not eat Beneful and did not experience symptoms or otherwise become sick.

9   Starting on February 6, 2015, Scout's symptoms worsened.  Over the next ten days, Scout had

10   several seizures, collapsed on several occasions, was lethargic weak, and sleepy, and

11   experienced vomiting, diarrhea with blood in the stool, and decreased appetite before he died in

12   Plaintiffs' arms on February 15, 2015.  Plaintiffs Balmer and Phillips would not have purchased

13   Beneful had they known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or

14   Arsenic.  As a result, Plaintiffs Balmer and Phillips have suffered substantial damages.

15         7.      Plaintiff Wayne Colello has at all material times been a resident of Kissimmee,

16   Florida.  Plaintiff Colello owns Shiner, a three-year old Border Collie, who ate Beneful Healthy

17   Weight for six months to one year.  After eating this product, Shiner experienced vomiting,

18   weakness, kidney failure, and liver failure starting December 21, 2014.  Plaintiff Colello would

19   not have purchased Beneful had he known Beneful contained Industrial Grade Glycols,

20   Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Colello has suffered substantial damages.

21         8.      Plaintiff Karen Baker has at all material times been a resident of Springfield,

22   Illinois.  Plaintiff Baker owns Chloe, a ten-month old German shepherd, who ate Purina

23   Beneful Puppy Chow & Healthy Growth for Puppies for the first ten months of her life.

24   Starting in March 2015, after eating these products, Chloe suffered liver damage.  Plaintiff

25   Baker would not have purchased Beneful had she known Beneful contained Industrial Grade

26

27

1   Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Baker has suffered substantial

2   damages.

3          9.      Plaintiff Ricky Bisharat has at all material times been a resident of

4   Bloomingdale, Illinois.  Plaintiff Bisharat owns Tyson, a six-year old Pit Bull mix, who ate

5   Purina Beneful Original and Purina Beneful Healthy Radiance for four years.  Starting in 2011,

6   and continuing during the four years in which Tyson ate these products, he experienced liver

7   malfunction or failure, loss of appetite, and vomiting, among other symptoms.  Plaintiff

8   Bisharat would not have purchased Beneful had he known Beneful contained Industrial Grade

9   Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Bisharat has suffered substantial

10  damages.

11        10.     Plaintiff Hope Benham has at all material times been a resident of Versailles,

12  Indiana.  Plaintiff Benham owns Willie, a five-year old Shih Tzu, who ate Purina Beneful

13  Healthy Fiesta and Purina Incredibites for one year.  After eating these products, Willie

14  experienced blood in the stool, blood in the urine, diarrhea, kidney failure, lethargy, loss of

15  appetite, vomiting, and weight loss starting in December 2014.  Willie has ceased eating

16  Beneful, but it is unclear whether he will ever fully recover from these symptoms.  Plaintiff

17  Benham would not have purchased Beneful had she known Beneful contained Industrial Grade

18  Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Benham has suffered substantial

19  damages.

20        11.     Plaintiff Robin Benham has at all material times been a resident of Versailles,

21  Indiana.  Plaintiff Benham owned Sadie, a seven-year old Miniature Fox Terrier, who ate

22  Purina Beneful Original and Purina Healthy Growth for Puppies for four months.  After eating

23  these products, Sadie experienced blood in the stool, blood in the urine, diarrhea, lethargy, liver

24  malfunction or failure, vomiting, and weight loss before dying in October 2013.  Plaintiff

25  Benham would not have purchased Beneful had Plaintiff Benham known Beneful contained

26

27

1    Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Benham has

2    suffered substantial damages.

3         12.    Plaintiff Virginia Burgardt has at all material times been a resident of Wichita,

4    Kansas.  Plaintiff Burgardt owns Skye, a thirteen-month old Great Dane, who ate Purina

5    Beneful Original for four months.  After eating this product, Skye experienced dehydration,

6    diarrhea, lethargy, and vomiting.  Plaintiff Burgardt would not have purchased Beneful had she

7    known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result,

8    Plaintiff Burgardt has suffered substantial damages.

9         13.    Plaintiff Cynthia Xenakis has at all material times been a resident of Wayland,

10   Massachusetts.  Plaintiff Xenakis owned Piccolo, a seven-year old Maltese, who ate Beneful

11   Healthy Weight for approximately four months.  After eating this product, Piccolo experienced

12   loss of appetite and liver damage beginning in January 2015.  Plaintiff Xenakis would not have

13   purchased Beneful had she known Beneful contained Industrial Grade Glycols, Mycotoxins,

14   Lead or Arsenic.  As a result, Plaintiff Xenakis has suffered substantial damages.

15        14.    Plaintiff Diane Porter has at all material times been a resident of Mora,

16   Minnesota.  Plaintiff Porter owns Oliver, a six-year old Pug, who ate Beneful Healthy Weight

17   for his entire life.  After eating this product, Oliver experienced blood in the urine, among other

18   symptoms, beginning in July 2012, resulting in two extensive surgeries.  Plaintiff Porter would

19   not have purchased Beneful had she known Beneful contained Industrial Grade Glycols,

20   Mycotoxins, Lead or Arsenic.  Consequently, Plaintiff Porter has suffered substantial damages.

21        15.    Plaintiff Lance Carlson has at all material times been a resident of Helena,

22   Montana.  Plaintiff Carlson owned Hunter, a five-year old Dachshund, who ate Beneful

23   Healthy Weight for two months.  After eating this product, Hunter experienced diarrhea, kidney

24   failure, liver failure, vomiting, and weight loss among other symptoms before dying on

25   February 2, 2015.  Plaintiff Carlson would not have purchased Beneful had he known Beneful

26

27

1  contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff

2  Carlson has suffered substantial damages.

3       16.    Plaintiff Grace Armstrong has at all material times been a resident of Stratford,

4  New Jersey.  Plaintiff Armstrong owns Rocky, a five-and-one-half-year old Beagle, who ate

5  Beneful Incredibites for three years.  After eating this product, Rocky experienced blood in the

6  stool, dehydration, kidney failure, loose stool, and vomiting, starting October 12, 2014.

7  Plaintiff Armstrong would not have purchased Beneful had she known Beneful contained

8  Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Armstrong has

9  suffered substantial damages.

10       17.    Plaintiff Jennifer Hickey has at all material times been a resident of Queensbury,

11  New York.  Plaintiff Hickey owns Dash, a seven-year old Dachshund, who ate Purina Beneful

12  Healthy Weight for one-and-one-half months.  After eating this product, Dash experienced

13  kidney failure and lethargy, among other symptoms, before dying on February 11, 2015.

14  Plaintiff Hickey would not have purchased Beneful had she known Beneful contained

15  Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Hickey has

16  suffered substantial damages.

17       18.    Plaintiffs Thomas and Sharon Normand have at all material times been residents

18  of Rochester, New York.  Plaintiffs Normand owned Irie, an eleven-year old American

19  Staffordshire terrier, who ate Beneful Healthy Fiesta Dry dog food for approximately two

20  years.  After eating this product, Irie experienced blood in the stool, weight loss, vomiting,

21  lethargy, and kidney failure before dying on August 7, 2013.  Plaintiffs Normand would not

22  have purchased Beneful had they known Beneful contained Industrial Grade Glycols,

23  Mycotoxins, Lead or Arsenic.  As a result, Plaintiffs Normand have suffered substantial

24  damages.

25       19.    Plaintiff Christina Winters has at all material times been a resident of Newton

26  Falls, Ohio.  Plaintiff Winters owned eight dogs:  (1) Patti-Jo, an eight-year old Lhasa Apso, (2)

27

Bailey, a thirteen-year-and-eleven-month old Lhasa Apso, (3) Charlotte, a thirteen-year old Lhasa Apso, (4) Toby, a thirteen-year old Lhasa Apso, (5) Jack, a ten-year old Lhasa Apso, (6) Benji, a ten-year old Lhasa Apso, (7) Phoebe, a fourteen-year-and-eleven-month old Maltese Yorkie, and (8) JJ, a ten-month old Shih Tzu.  All of Plaintiff Winters' dogs ate Purina Beneful Healthy Weight and Healthy Radiance, except for JJ, who ate Purina Beneful Puppy.  Plaintiff Winters' dogs began eating Beneful in December 2013.  After eating these products, each dog became ill.  After eating Beneful for almost two months, Patti-Jo experienced lethargy, vomiting, blood from her rectum, an extended stomach, and liver and kidney failure, before dying on January 28, 2014.  Approximately six months later, the other dogs started getting sick. Phoebe experienced an extended stomach and liver and kidney failure before dying on December 22, 2014.  Bailey experienced blindness, diarrhea, vomiting, and an extended stomach. Charlotte, Toby, Jack and Benji each experienced lethargy, diarrhea, and vomiting.  JJ experienced vomiting.  Plaintiff Winters would not have purchased Beneful had she known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Winters suffered substantial damages.

20.     Plaintiff Robert Bryden has at all material times been a resident of Pittsburgh, Pennsylvania.  Plaintiff Bryden owned Mason, a six-year old Doberman pinscher, who ate Purina Beneful Healthy Weight for six weeks.  After eating this product, Mason experienced lethargy, loss of appetite, and weight loss, before dying in June 2013.  Plaintiff Bryden would not have purchased Beneful had he known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Bryden suffered substantial damages.

21.     Plaintiff Regina Bollinger has at all material times been a resident of Derry, Pennsylvania.  Plaintiff Bollinger owned Josie, a seven-and-one-half-month old Collie Shepherd Mix, who ate Purina Beneful Healthy Growth for Puppies for her entire life.  After eating this product, Josie experienced diarrhea, kidney failure, lethargy, loss of appetite, and vomiting before dying on February 10, 2015.  Plaintiff Bollinger would not have purchased

Beneful had she known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Bollinger suffered substantial damages.

22.     Plaintiff Pat Kelly has at all material times been a resident of Feasterville, Pennsylvania.  Plaintiff Kelly owned Apollo Creed, a six-month old Boxer, who ate Purina Healthy Growth for Puppies for his entire life.  After eating this product, Apollo Creed experienced lethargy, loss of appetite, vomiting, weight loss, excessive thirst and kidney failure before dying on February 21, 2015.  Plaintiff Kelly would not have purchased Beneful had Plaintiff Kelly known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Kelly suffered substantial damages.

23.     Plaintiff America Pena has at all material times been a resident of Pharr, Texas.  Plaintiff Pena owned Minnie, a seven-year old Great Dane, who ate Purina Beneful Healthy Fiesta and Purina Beneful Original for four years.  After eating these products, Minnie experienced diarrhea, lethargy, loss of appetite, seizures, vomiting, weight loss, and liver failure, among other symptoms, before dying in October 2012.  Plaintiff Pena would not have purchased Beneful had Plaintiff Pena known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Pena suffered substantial damages.

24.     Plaintiff Elizabeth Rodarte has at all material times been a resident of San Antonio, Texas.  Plaintiff Rodarte owned T-Bone, a five-year old Mastiff, who ate Purina Beneful Original for one year.  After eating this product, T-Bone experienced internal bleeding, lethargy, liver malfunction or failure, loss of appetite and weight loss before dying on December 22, 2012.  Plaintiff Rodarte would not have purchased Beneful had she known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  As a result, Plaintiff Rodarte suffered substantial damages.

25.     Plaintiff Kacy Kimball has at all material times been a resident of Port Angeles, Washington.  Plaintiff Kimball owns Buffalo, a seven-year old Jack Russell Terrier, who ate Beneful Healthy Weight and Beneful Original for his entire life.  After eating these products,

1   Buffalo experienced blood in the urine, jaundice, and liver malfunction or failure, among other

2   symptoms, starting January 26, 2015.  Plaintiff Kimball would not have purchased Beneful had

3   Plaintiff Kimball known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead or

4   Arsenic.  As a result, Plaintiff Kimball suffered substantial damages.

5          26.      Defendant Nestlé Purina ("Purina") manufactures, distributes, markets, and sells

6   pet foods, including Beneful.  It is a Missouri corporation, with its principal place of business at

7   Checkerboard Square, St. Louis, Missouri.  It does business in California and throughout the

8   United States.  Purina has sold dog food since 1957, including Beneful since 2001.  It has spent

9   millions of dollars promoting trust and confidence among consumers in its pet food products.

10  It holds itself out to the public as a manufacturer of safe, nutritious and high-quality pet food.

11  Purina's marketing and public relations efforts have been successful, such that reasonable

12  consumers believe that Purina always makes and sells safe, nutritious and high-quality pet

13  food.

## III.  JURISDICTION AND VENUE

15         27.      This class action is within the original jurisdiction of this Court pursuant to 28

16  U.S.C. § 1332(a) and 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act).  The amount in

17  controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs, and at

18  least one member of the putative classes is a citizen of a state different than Purina.

19         28.      Members of the proposed Class are citizens of California and the United States.

20  Plaintiff is informed and believes that more than two-thirds of the proposed Class members are

21  citizens of states different from the home state(s) of Nestlé Purina.

22         29.      Venue in this District satisfies the requirements of 28 U.S.C. § 1391(b)(2)

23  because a substantial amount of the events and occurrences giving rise to the claims occurred in

24  this District or a substantial part of the property that is the subject of this action is situated in

25  this District.  Moreover, Purina intentionally avails itself of the markets within California

26  through the promotion, sale, marketing, and distribution of its products, including Beneful, and

27

has sufficient minimum contacts in California such that it is subject to personal jurisdiction here.  Purina is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c).  Purina also committed a significant number of tortious acts that are the subject of this complaint in California, including within this District.

## IV.  FACTUAL ALLEGATIONS

**A.     The Products**

30.     Purina manufactures, markets, distributes, and sells dog food under the brand name "Beneful," including various dry or "kibble" dog foods.  This action concerns only the dry or kibble variety of foods sold under the Beneful name.  These products include the following:  Beneful Healthy Weight, Beneful Original, Beneful Incredibites, Beneful Healthy Growth For Puppies, Beneful Healthy Smile, Beneful Healthy Fiesta, Beneful Healthy Radiance, and Beneful Playful Life.  These products are referred to collectively here as "Beneful."

**B.     Purina's Claims and Representations about Beneful**

31.     At all times material and throughout the relevant time period, Purina made and continues to make various positive material representations about the health benefits, quality, nutritional value, safety and other attributes of Beneful on the product packaging, on its website, and in various advertising media, including television, as illustrated by the following examples:

a)     The Product Packaging and Labeling

- "100% Complete and Balanced Nutrition"
- "Satisfaction Guaranteed. If you're not happy, we're not happy. Complete satisfaction or your money back…"
- "23 Essential vitamins & minerals"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- "At Purina, we're unconditionally devoted to pets. We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

- "Yes, dogs can have it all—and should! How? A special blend of wholesome ingredients, including grains, real beef, and accents of vitamin-rich veggies! It gives dogs the complete nutrition they need and a taste they love." (Beneful Original)

- "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…" (Beneful Healthy Weight)

- "With real chicken, wholesome rice, and accents of vitamin-rich veggies, it has the complete nutrition puppies need…" (Beneful Healthy Growth for Puppies")

- "When your puppy is grown, Beneful has so many delicious ways to help keep him healthy and happy." (Beneful Healthy Growth for Puppies)

b)      The Website:  https://www.beneful.com/products/dry-dog-food (last visited June 1, 2015).

- "It has the complete nutrition dogs need and the taste they love." (all Beneful products);

- "Our omega-rich, complete and balanced nutrition helps support a shiny coat and healthy skin." (Beneful Healthy Radiance);

- "Here's to being healthy and happy! Yes, dogs can have it all— and should!" (Beneful Original);

- "Our protein-rich blend, with real beef and egg, is made for a playful dog like yours!" (Beneful Playful Life);

- "Especially for puppies, our calcium-rich blend is made with the added goodness of real milk." (Beneful Growth for Puppies);
- "Helps your dog maintain a healthy weight with our calorie-smart blend—with 10% fewer calories than Beneful® Original." (Beneful Healthy Weight);
- "Our protein-rich blend, with real beef, is made with your little buddy in mind." (Beneful IncrediBites);
- "Our vitamin-rich blend, with real chicken, helps support overall good health." (Beneful Healthy Fiesta).

c)   Television Advertising

- "Make your dog happy—choose Beneful." (television ad)
- "Be Healthy. Healthful. Flavorful. Beneful." (television ad)
- "Beneful keeps my dog healthy and happy." (television ad)
- "Healthy with a side of happy."  (television ad)

**C.    Purina Failed to Disclose that Beneful Contains Harmful or Toxic Ingredients**

32.    Purina failed to disclose in the list of ingredients on its packaging, or otherwise, that Beneful contains **Industrial Grade Glycols**, which the FDA has not approved for use in foods and which should not be used in foods.

33.    Purina also failed to disclose that Beneful contains **Mycotoxins,** a group of toxins produced by fungus that occurs in grains, which are a principal ingredient in Beneful. Independent consumer advocate group The Association for Truth In Pet Food conducted testing of Beneful Original and found that it contained dangerous levels of Mycotoxins. (http://associationfortruthinpetfood.com/wp-content/uploads/2015/01/PFTestInfoGraphic.jpg) Mycotoxins are a known, significant health risk to dogs.  Consumer complaints about Beneful report symptoms that are consistent with Mycotoxin poisoning. (http://news.cornell.edu/stories/2005/12/vet-college-caring-dogs-poisoned-contaminated-food.

34.     Purina further failed to disclose that Beneful contains **Lead**.

35.     Purina further failed to disclose that Beneful contains **Arsenic**.

36.     The presence of the **Industrial Grade Glycols, Mycotoxins, Lead**, or **Arsenic**, whether alone or combined, are harmful or toxic to dogs.

37.     Plaintiffs, members of the proposed Classes, and reasonable consumers would not have purchased Beneful had they known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic.

**D.     Complaints by Dog Owners About Beneful**

38.     Plaintiffs allege that, as a direct and proximate result of the consumption of Beneful, their dogs became ill or died.  They are not alone.  The Internet is replete with thousands of complaints from dog owners about Beneful and the adverse effects on their dogs from Beneful, including serious injury and death.  The dogs show consistent symptoms, including stomach and related internal bleeding, liver malfunction or failure, vomiting, diarrhea, dehydration, weight loss, seizures, bloat, and kidney failure, as illustrated by the following:

- On May 16, 2015, a pet owner reported:  "I have fed my Yellow Lab Beneful for a few years now. A few months ago my dog starting throwing up and having seizures. It happened twice. At the same time I started reading about the harm that Beneful has caused some dogs. I stopped using Beneful for about a month and everything was fine. Long story short, I still had the Beneful in a tub and by mistake fed it to my dog and the same day she had the same thing - throwing up and a seizure. This time made sure I threw out the Beneful. It just seems so hard to believe that it is just a coincidence."

- On May 8, 2015, a pet owner reported:  "I believe 2 of my dogs have died due to me feeding them Beneful not knowing it was harmful to them. They both had the symptoms described in the class action suit. My other 2 also have some symptoms but I stopped feeding them the food. One is holding steady for now and the other who is stronger, and younger is improving. My smallest dog became sick, first throwing up and eventually after the vets were unable to figure out and help, his stomach started internally bleeding and there was nothing they could do.

   The next was my other boy and he started throwing up and died within the week because his kidneys were failing and it was awful. My oldest girl coughs all the time, she is on some medicine to try and help but it is gradually getting worse. The last girl

had severe itching which caused an infection which we have gotten cleared up and are hoping she doesn't come down with any more symptoms and is on the way to good health with no more Beneful food."

- On May 7, 2015, a pet owner reported: "We started feeding our dogs Beneful in early 2014. By July, our three year old, eight pound Yorkie began suffering from violent, severe seizures. We spent over $1000 on vets, tears, anti anxiety meds and treatments. In February 2015 I heard reports that Beneful was making dogs sick. I immediately replaced our dog food with another, more "natural" brand and our dog's seizures have completely disappeared. After weekly (or more) seizures, there have been none since replacing her food. This is too much a coincidence for me to believe Purina's claims that this food is safe and healthy."

- On April 26, 2015, a pet owner reported: "My dog who is 7 years old has eaten Beneful dog food most of his life. Three months ago he started to vomit. I changed him to chicken and rice for a few days thinking he had a tummy bug. I put him back on Beneful and again he vomited. I then decided to try the all natural recipe from a different brand. He was fine but didn't like it very much. Two months went and he was fine. Due to the fact that he didn't LOVE the new food and expense I went back to Beneful yesterday. Last night he vomited. There is something very wrong with this food. Now I will have to put him back on the expensive brand that he isn't crazy about because there is something in Beneful that is making my perfectly healthy dog, sick!"

- On January 31, 2015, a pet owner reported: "after eating Beneful for just over a week, my dogs liver failed. She was drinking way more than usual, stopped eating and was vomiting. She spent 2 days in intensive care with IV fluids and antibiotics."

- On December 23, 2014, another pet owner reported: "we started using Beneful dog food for our 9-year old dog Roxie a few weeks ago. A few days later our dog started going to the bathroom all over our house. She also started drinking a lot more water than usual…brought her to the Vet for blood work and her liver functions were really high…Two days later our dog had passed away in our family room."

- On October, 19, 2014, another pet owner reported: "My dog Daisy started getting bad sick after my vet recommended Purina Beneful dog food. She's vomiting, very weak, dehydrated, lethargic, couldn't walk. She's always been a happy playful yorkie. We been to vet, spend 300 dollars on her."

- "Dog (8 years old) getting surgery on 10/20/2014. Vet said it was bladder stones, large ones. Asked us what type of dog food we use. Beneful. He said that makes sense, a lot of dogs come in with this condition, always Beneful." - published October 17, 2014.

- "My 1 1/2 year old dog has been suffering with vomiting, diarrhea, lethargic and no desire to eat for the last three weeks. We've been back and forth to the vet and vet hospital many times. I've spent over $6,000 on overnight stays and exploratory surgery...My dog had been home for four days and all he was eating was chicken,

cheerios, yogurt and pumpkin. Last night he ate beneful and today we are back to square one…This food should not be on the market!!"  Published October 2, 2014.

- "I rescued a very healthy pug three years ago. About two and a half years ago I had a coupon for Beneful. My dog got very sick stopped eating was weak and had loose diarrhea…Three months later my wonderful dog was dead. I sent the UPC to Beneful. They reimbursed me for the vet bills that were about $700.00." Published September 21, 2014.

- "We ran out of dog food one day and my husband brought home a bag of Beneful Healthy Fiesta...My 5 year old shar pei ate half a bowl and the next morning was kinda mopey looking. I came home from work that night and he was throwing up bile everywhere. We tried giving him water and he wouldn't even drink. The next morning I found my dog dead. Up until the day this food was given to him, he was a lively and happy dog. I attribute his death to this horrible dog food that is still being sold. After reading all of the complaints on this dog food, Purina should be ashamed and made to take this brand off of the shelves." Published September 20, 2014.

- "…I bought a bag of Beneful from Walmart. I weened my dog into it using the remainder of her science diet. As soon as she started eating the Beneful on its own, she would throw it up. Every night for a week I would be woken up by her puking. On Sunday I switched her back to the regular science diet (not sensitive) but she wouldn't eat it so I tried giving her Beneful and she wouldn't eat that...We're talking about a dog who LOVES her some boiled chicken. Anyway after 3 days of her not eating anything except grass and barely drinking any water I took her to the vet. They took her temperature rectally and when they pulled out the thermometer there was blood. After lab work was done and came back clear, they did some feeling around and found her lower intestine to be swollen. She has never had issues like this before…" Posted September 4, 2014.

- "After opening a new bag of Playful Life by Beneful my dog was horribly sick. He was vomiting, diarrhea, lethargic, wheezing and couldn't walk or eat. We rushed him to the vet where he was put on steroids, IV to re-hydrate and antibiotics. He almost died. He was there for four days…This past Monday we started him back on Beneful (the same bag). He was worse than before in just hours. We got him to the hospital and the vet got him on an IV and flushed his system. He was sure it was this Lot of food." Posted August 7, 2014.

**E.   Purina Has Been Paying Injured Consumers for their Silence**

39.     Purina has been contacting dog owners soon after they post anything on social media, including Beneful's Facebook page and Facebook discussion groups focused on the dangers of Beneful.  Purina denies liability and offers monetary compensation in exchange for

1  confidentiality agreements.  Purina's tactics have been downright persistent and aggressive,

2  consisting of repeated calls and frequent voicemails.

3       40.     Purina's settlement offers have ranged from the purchase price of a bag of the

4  food up to a few thousand dollars.  In exchange, Purina requires consumers to enter into a

5  nondisclosure agreement ("NDA").  Several consumers have reported on social media that the

6  NDA is remarkably restrictive, prohibiting a public disclosure.  Below is an example of an

7  NDA Purina sought from a dog owner:

**Claim No:** ▊▊▊▊▊▊

### SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

IN CONSIDERATION of the payment of ▊▊▊▊▊▊▊▊▊▊▊, receipt of which is hereby acknowledged by ▊▊▊▊▊▊ residing at ▊▊▊▊▊▊ (there in after the undersigned"), for my/our self(ves) spouse(s), children, agents, heirs, representatives, executors, predecessors, successors and assigns, release and forever discharge Nestlé Purina PetCare Company and its shareholders, subsidiaries, affiliates, divisions, officers, directors, employees, agents, representatives, insurers, predecessors, successors and assigns and all other persons, firms, companies, and corporations  and/or independent contractors (including, but not limited to, all distributors, handlers, brokers, prepared food purveyors, wholesale sellers, retail sellers, grocery stores and/or chains and all other such parties charged or chargeable with responsibility), of and from any and all claims, demands, debts, damages, actions or causes of action, injuries, loss of use, loss of services, veterinary and or medical expenses or any other liabilities arising out of or in any way connected with the incident that was reported on or about 04/19/2015, involving product: Beneful Dry Dog Food.

The undersigned further covenant(s) and agree(s) to protect, indemnify, and hold harmless Nestlé Purina PetCare Company and its shareholders, subsidiaries, affiliates, officers, directors, employees, agents, representatives, insurers, predecessors, successors and assigns, and/or independent contractors of and from any further loss, damage or expense by reason of litigation or otherwise arising out of or in any way connected with the subject claim.

The undersigned understands that this settlement is a compromise of a disputed claim, the liability for which is expressly denied and that this settlement is not to be construed as an admission of liability on the part of any persons, corporations, companies, divisions or other entities released herein.

The undersigned agree that this release expresses a FULL, FINAL AND COMPLETE SETTLEMENT of the liability claimed as well as AN ACCORD AND SATISFACTION. It is also agreed that this release reflects the ENTIRE AGREEMENT between the parties hereto and that the terms of this release are contractual and not a mere recital, consideration therefore having been given and accepted.

I/WE AGREE THAT THIS RELEASE CONSTITUTES A CONFIDENTIAL SETTLEMENT OF THIS ENTIRE MATTER, BARRING ALL PARTIES FROM PUBLIC DISCLOSURE OF ANY DETAILS, DISCUSSIONS, SOCIAL MEDIA POSTINGS, ETC., WHATSOEVER, REGARDING IT.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I/We further state that we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as our own free act.

Date:_____          By: _____
                                            ▊▊▊▊▊▊▊

# V.  CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the Classes and Subclasses proposed below, under Federal Rule of Civil Procedure 23.  The requirements of subsections (a), (b)(2), and (3) to Rule 23 are met with respect to the Classes defined below.

42.     Plaintiffs seek to represent, and bring this action on behalf of, the following Classes:

    a)     **California**:  Plaintiffs Frank Lucido, Almaceo Campbell, Richard Carter and Reggie Smith (collectively, "California Plaintiffs") are members and proposed class representatives of the following California Class and Subclass.

        i.   California Class:  All persons residing in California who purchased Beneful for personal, family or household use at any time during the period that begins four years prior to February 5, 2015 to the date of class certification.

        ii.  California Subclass:  All persons residing in California who purchased Beneful for personal, family or household use and who incurred out of pocket costs resulting from internal organ distress, injury, and/or internal organ failure, or death resulting from these conditions, after their dog ingested Beneful at any time during the period that begins four years prior to February 5, 2015 to class certification.

    b)     **Colorado**:  Plaintiffs David Balmer and Karen Phillips ("Colorado Plaintiffs") are members and putative class representatives of the Colorado Class Subclass.

        i.   Colorado Class:  All persons residing in Colorado who purchased Beneful for personal, family or household use at

1          any time during the period that begins three years prior to

2          February 5, 2015 to the date of class certification.

3          ii.   Colorado Subclass:  All persons residing in Colorado who

4          purchased Beneful for personal, family or household use and

5          who incurred out of pocket costs resulting from internal organ

6          distress, injury, failure, or death resulting from these

7          conditions, after their dog ingested Beneful at any time during

8          the period that begins three years prior to February 5, 2015 to

9          class certification.

10     c)    **Florida**:  Plaintiff Wayne Colello ("Florida Plaintiff") is a member and

11     putative class representative of the Florida Class and Subclass.

12          i.   Florida Class:  All persons residing in Florida who purchased

13          Beneful for personal, family or household use at any time

14          during the period that begins four years prior to February 5,

15          2015 to the date of class certification.

16          ii.   Florida Subclass:  All persons residing in Florida who

17          purchased Beneful for personal, family or household use and

18          who incurred out of pocket costs resulting from internal organ

19          distress, injury, failure, or death resulting from these

20          conditions, after their dog ingested Beneful at any time during

21          the period that begins  four years prior to February 5, 2015 to

22          class certification.

23     d)    **Illinois**:  Plaintiffs Karen Baker and Ricky Bisharat (collectively,

24     "Illinois Plaintiffs") are members and putative class representatives of

25     the Illinois Class and Subclass.

26

27

1                i.   <u>Illinois Class</u>:  All persons residing in Illinois who purchased

2              Beneful for personal, family or household use at any time

3              during the period that begins five years prior to February 5,

4              2015 to the date of class certification.

5             ii.   <u>Illinois Subclass</u>:  All persons residing in Illinois who

6              purchased Beneful for personal, family or household use and

7              who incurred out of pocket costs resulting from internal organ

8              distress, injury, failure, or death resulting from these

9              conditions, after their dog ingested Beneful at any time during

10             the period that begins five years prior to February 5, 2015 to

11             class certification.

12      e)     **<u>Indiana</u>**:  Plaintiffs Robin Benham and Hope Benham (collectively,

13     "Indiana Plaintiffs") are members and putative class representatives of

14     the Indiana Class and Subclass.

15              i.   <u>Indiana Class</u>:  All persons residing in Indiana who purchased

16              Beneful for personal, family or household use at any time

17              during the period that begins four years prior to February 5,

18              2015 to the date of class certification.

19             ii.   <u>Indiana Subclass</u>:  All persons residing in Indiana who

20              purchased Beneful for personal, family or household use and

21              who incurred out of pocket costs resulting from internal organ

22             distress, injury, failure, or death resulting from these

23             conditions, after their dog ingested Beneful at any time during

24             the period that begins four years prior to February 5, 2015 to

25             class certification.

26

27

f)   **Kansas**:  Plaintiff Virginia Burgardt ("Kansas Plaintiff") is a member and putative class representative of the Kansas Class and Subclass.

    i.   Kansas Class:  All persons residing in Kansas who purchased Beneful for personal, family or household use at any time during the period that begins five years prior to February 5, 2015 to the date of class certification.

    ii.   Kansas Subclass:  All persons residing in Kansas who purchased Beneful for personal, family or household use and who incurred out of pocket costs resulting from internal organ distress, injury, failure, or death resulting from these conditions, after their dog ingested Beneful at any time during the period that begins five years prior to February 5, 2015 to class certification.

g)   **Massachusetts:**  Plaintiff Cynthia Xenakis ("Massachusetts Plaintiff") is a member and putative class representative of the Massachusetts Class and Subclass.

    i.   Massachusetts Class:  All persons residing in Massachusetts who purchased Beneful for personal, family or household use at any time during the period that begins four years prior to February 5, 2015 to the date of class certification.

    ii.   Massachusetts Subclass:  All persons residing in Massachusetts who purchased Beneful for personal, family or household use and who incurred out of pocket costs resulting from internal organ distress, injury, failure, or death resulting from these conditions, after their dog ingested Beneful at any

1   time during the period that begins four years prior to February

2   5, 2015 to class certification.

3   h)   **Minnesota:**  Plaintiff Diane Porter ("Minnesota Plaintiff") is a member

4   and putative class representative of the Minnesota Class and Subclass.

5   i.   Minnesota Class:  All persons residing in Minnesota who

6   purchased Beneful for personal, family or household use at

7   any time during the period that begins six years prior to

8   February 5, 2015 to the date of class certification.

9   ii.   Minnesota Subclass:  All persons residing in Minnesota who

10   purchased Beneful for personal, family or household use and

11   who incurred out of pocket costs resulting from internal organ

12   distress, injury, failure, or death resulting from these

13   conditions, after their dog ingested Beneful at any time during

14   the period that begins six years prior to February 5, 2015 to

15   class certification.

16   i)   **Montana:**  Plaintiff Lance Carlson ("Montana Plaintiff") is a member

17   and putative class representative of the Montana Class and Subclass.

18   i.   Montana Class:  All persons residing in Montana who

19   purchased Beneful for personal, family or household use at

20   any time during the period that begins four years prior to

21   February 5, 2015 to the date of class certification.

22   ii.   Montana Subclass:  All persons residing in Montana who

23   purchased Beneful for personal, family or household use and

24   who incurred out of pocket costs resulting from internal organ

25   distress, injury, failure, or death resulting from these

26   conditions, after their dog ingested Beneful at any time during

27

the period that begins four years prior to February 5, 2015 to class certification.

j)    **New Jersey:** Plaintiff Grace Armstrong ("New Jersey Plaintiff") is a member and putative class representative of the New Jersey Class and Subclass.

      i.  New Jersey Class: All persons residing in New Jersey who purchased Beneful for personal, family or household use at any time during the period that begins six years prior to February 5, 2015 to the date of class certification.

      ii.  New Jersey Subclass: All persons residing in New Jersey who purchased Beneful for personal, family or household use and who incurred out of pocket costs resulting from internal organ distress, injury, failure, or death resulting from these conditions, after their dog ingested Beneful at any time during the period that begins six years prior to February 5, 2015 to class certification.

k)    **New York:** Plaintiffs Jennifer Hickey and Thomas and Sharon Normand ("New York Plaintiffs") are members and putative class representatives of the New York Class and Subclass.

      i.  New York Class: All persons residing in New York who purchased Beneful for personal, family or household use at any time during the period that begins six years prior to February 5, 2015 to the date of class certification.

      ii.  New York Subclass: All persons residing in New York who purchased Beneful for personal, family or household use and who incurred out of pocket costs resulting from internal organ

distress, injury, failure, or death resulting from these
conditions, after their dog ingested Beneful at any time during
the period that begins six years prior to February 5, 2015 to
class certification.

l)      **Ohio:**  Plaintiff Christina Winters ("Ohio Plaintiff") is a member and
putative class representative of the Ohio Class and Subclass.

i.   Ohio Class:  All persons residing in Ohio who purchased
Beneful for personal, family or household use at any time
during the period that begins six years prior to February 5,
2015 to the date of class certification.

ii.  Ohio Subclass:  All persons residing in Ohio who purchased
Beneful for personal, family or household use and who
incurred out of pocket costs resulting from internal organ
distress, injury, failure, or death resulting from these
conditions, after their dog ingested Beneful at any time during
the period that begins six years prior to February 5, 2015 to
class certification.

m)     **Pennsylvania:**  Plaintiffs Robert Bryden, Regina Bollinger, and Pat
Kelly ("Pennsylvania Plaintiffs") are members and putative class
representatives of the Pennsylvania Class and Subclass.

i.   Pennsylvania Class:  All persons residing in Pennsylvania
who purchased Beneful for personal, family or household use
at any time during the period that begins six years prior to
February 5, 2015 to the date of class certification.

ii.  Pennsylvania Subclass:  All persons residing in Pennsylvania
who purchased Beneful for personal, family or household use

1    and who incurred out of pocket costs resulting from internal

2    organ distress, injury, failure, or death resulting from these

3    conditions, after their dog ingested Beneful at any time during

4    the period that begins six years prior to February 5, 2015 to

5    class certification.

6    n)    **Texas:**  Plaintiffs America Pena and Elizabeth Rodarte ("Texas

7    Plaintiffs") are members and putative class representatives of the Texas

8    Class and Subclass.

9    i.    Texas Class:  All persons residing in Texas who purchased

10    Beneful for personal, family or household use at any time

11    during the period that begins four years prior to February 5,

12    2015 to the date of class certification.

13    ii.    Texas Subclass:  All persons residing in Texas who

14    purchased Beneful for personal, family or household use and

15    who incurred out of pocket costs resulting from internal organ

16    distress, injury, failure, or death resulting from these

17    conditions, after their dog ingested Beneful at any time during

18    the period that begins four years prior to February 5, 2015 to

19    class certification.

20    o)    **Washington:**  Plaintiff Kacy Kimball ("Washington Plaintiff") is a

21    member and putative class representative of the Washington Class and

22    Subclass.

23    i.    Washington Class:  All persons residing in Washington who

24    purchased Beneful for personal, family or household use at

25    any time during the period that begins four years prior to

26    February 5, 2015 to the date of class certification.

27

1                ii.   <u>Washington Subclass</u>:  All persons residing in Washington

2              who purchased Beneful for personal, family or household use

3              and who incurred out of pocket costs resulting from internal

4              organ distress, injury, failure, or death resulting from these

5              conditions, after their dog ingested Beneful at any time during

6              the period that begins four years prior to February 5, 2015 to

7              class certification..

8      43.     The above proposed Classes exclude: (1) Purina, any entity in which Purina has

9 a controlling interest, and their legal representatives, officers, directors, employees, assigns,

10 and successors; (2)all Judges and Justices to whom this case is ever assigned and all member of

11 their staffs and immediate families; and (3) Class Counsel.

12      44.     Plaintiffs are informed and believe that Purina sold many hundreds of thousands

13 of packages of Beneful which contain substances that are harmful or toxic to dogs.  While the

14 precise number and identities of the members of the Classes are unknown to Plaintiffs, this

15 information can be ascertained through reasonable discovery, diligence and appropriate notice.

16 Give Purina's sales volumes, Plaintiffs are informed and believe that there will be tens of

17 thousands of Class members in each State Class and hundreds of thousands of Class members

18 in several of the State Classes.

19      45.     There are numerous common questions of law and fact that predominate over

20 any questions affecting only individual members of the Classes.  Among these common

21 questions of law and fact are the following:

22          a)     Whether the Beneful products contain ingredients that are harmful or   ,

23       toxic to dogs;

24          b)     Whether Purina made representations, including on the packaging and

25       labels, regarding the safety and quality of Beneful;

26

27

c)      Whether the representations Purina made regarding the safety and
quality of Beneful were true;

d)      Whether Purina knew or should have known that Beneful contained
substances that are harmful or toxic to dogs;

e)      Whether Purina failed to disclose that Beneful contained substances that
are harmful or toxic to dogs;

f)      Whether Plaintiffs' and Class members' dogs became ill or died as a
result of having consumed Beneful;

g)      Whether, by its misconduct as set forth here, Purina has engaged in
unlawful, unfair, deceptive, or fraudulent business practices;

h)      Whether Purina breached an express warranty;

i)      Whether Purina breached an implied warranty of merchantability;

j)      Whether Purina violated its statutory consumer protection obligations;

k)      Whether Plaintiffs and members of the Classes have suffered damages as
a result of the conduct alleged here, and if so, the measure of such
damage;

l)      Whether Purina has been unjustly enriched as a result of the conduct
complained of here; and

m)      Whether Plaintiffs and Class members are entitled to equitable relief,
including but not limited to restitution or disgorgement of all Purina's
gross revenues from the sale of Beneful.

46.      The claims of the Plaintiffs are typical of the claims of the members of the
Classes. They all arise out of the same pattern of conduct by Purina and under the same legal
theories, and Purina has no defenses unique to Plaintiffs or to any individual Plaintiff.

47.     Plaintiffs have no interests antagonistic to those of the Classes and will protect the interests of the Classes fairly and adequately. Plaintiffs have retained attorneys experienced in complex class action litigation.

48.     The questions of fact and law common to all Class and Subclass members predominate over any questions affecting only individual Class and Subclass members.  Purina is alleged to have engaged in the same misconduct with respect to all Class and Subclass members, including, among other things, falsely, deceptively and misleadingly labeling and advertising Beneful and failing to disclose the presence of hazardous and toxic ingredients in Beneful; all Class and Subclass members suffered the same injury caused by Purina's misconduct, i.e., paying money to purchase a falsely advertised product (the Classes) and suffering damage to their personal property (their dogs) as a result of purchasing Beneful and feeding it to their dogs (the Subclasses); all Class and Subclass members would not have purchased Beneful had they known it contained the contaminants and toxins described herein; and all Subclass members suffered similar consequential damages in that Beneful caused their dogs to become ill and/or die.

49.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class and Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Purina, so it would be impracticable for Class members to individually seek redress for Purina's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

1      50.    Purina has acted or refused to act on grounds generally applicable to Plaintiffs

2  and the other members of the Classes and Subclasses, thereby making appropriate final

3  injunctive relief and declaratory relief with respect to the members of the Classes and

4  Subclasses as a whole.  The misconduct alleged herein on the part of Purina is continuing as of

5  the present time:  Purina has not stopped the false, deceptive and misleading labeling and

6  advertising of Beneful, but continues to insist that Beneful is healthy and safe for dogs; Purina

7  has not removed the hazardous and toxic ingredients from Beneful; and dogs are continuing to

8  get sick and die from eating Beneful. Injunctive relief is necessary in order to force Purina to

9  cease engaging in these unlawful practices and take corrective action.

10     51.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

11                         **VI.  TOLLING AND ESTOPPEL**

12     52.    Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the

13  exercise of reasonable diligence should have discovered, that they were injured by Purina's

14  wrongful conduct as alleged here.  Because Purina concealed and failed to disclose to Plaintiffs

15  and members of the Classes and the Subclasses the dangers of feeding Beneful to their dogs,

16  and because Purina affirmatively warranted and misrepresented that Beneful constituted safe,

17  healthy food for dogs, Plaintiffs did not and could not have discovered the defect through

18  reasonable diligence until shortly before the filing of the Complaint in this case. The applicable

19  statutes of limitations have been tolled by Purina's knowing and active concealment of the

20  material facts concerning the dangers of feeding Beneful to their dogs and by Purina's

21  affirmative warranties and representations that Beneful constituted safe, healthy food for dogs.

22  Purina kept Plaintiffs and the members of the Classes and the Subclasses ignorant of vital

23  information essential to pursue their claims, without any fault or lack of diligence on the part of

24  Plaintiffs and Class members.

25     53.    Purina was and is under a continuous duty to disclose to Plaintiffs and the

26  members of the Classes and the Subclasses the true character, quality and nature of Beneful.  At

27

1    all relevant times, and continuing to this day, Purina knowingly, affirmatively and actively

2    misrepresented and concealed the true character, quality and nature of Beneful, including that it

3    was dangerous for dogs, rather than a safe, healthy food for dogs, as promised. Therefore,

4    Purina is estopped from relying on any statutes of limitation in defense of this action

5        54.    Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, and

6    Fraudulent Concealment, the claims asserted herein are not barred due to any statute of

7    limitations or statute of repose.  With respect to each and every claim for relief asserted here,

8    Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, and Fraudulent Concealment

9    and its application to that claim for relief.

10       55.    Purina knew or should have known that Beneful was not a safe, healthy food for

11   dogs, despite advertisements, marketing and representations promising that Beneful constitutes

12   "healthy," "great nutrition" for dogs, which promotes "healthy growth."

13       56.    Purina knew or should have known that Beneful contains substances known to

14   be dangerous to dogs, including Industrial Grade Glycols, Mycotoxins, Lead and/or Arsenic.

15       57.    All conditions precedent to the filing of this First Amended Complaint have

16   been satisfied.

### VII.  CAUSES OF ACTION

**A.**    **CALIFORNIA CAUSES OF ACTION**

### COUNT 1
**Asserted as to the California Plaintiffs, the California Class and the California Subclass
(Negligence)**

21       58.    The California Plaintiffs incorporate here the allegations of all of the preceding

22   and subsequent paragraphs as if fully set forth here verbatim.

23       59.    The California Plaintiffs bring this claim on behalf of themselves, the California

24   Class and the California Subclass.

60.     Purina owed a duty of reasonable care to the California Plaintiffs and the members of the California Class and the California Subclass to provide dog food that was safe for consumption by dogs, free from excessive amounts of toxins with harmful effects.

61.     Purina breached this duty by selling Beneful, which contained Industrial Grade Glycols, Mycotoxins, Arsenic, or Lead, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the California Plaintiffs and the members of the California Class and the California Subclass of Beneful's dangers on its packaging.

62.     Such conduct by Purina was negligent because it did not reflect the level of care that an ordinarily prudent and reasonable person in Purina's place would have given under the same or similar circumstances.

63.     Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the California Plaintiffs and the members of the California Class and the California Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in their injury and death.  Such injury and death to the dogs constituted property damage to the California Plaintiffs and the members of the California Class and the California Subclass beyond and in addition to their damage from purchasing Beneful.

64.     As a proximate result of Purina's negligent acts, the California Plaintiffs and the members of the California Class and the California Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses incurred for them.

## COUNT 2
**Asserted as to the California Plaintiffs, the California Class and the California Subclass**
**(Negligent Misrepresentation)**

65.     The California Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

66.     The California Plaintiffs bring this claim on behalf of themselves, the California Class and the California Subclass.

67.     Purina owed the California Plaintiffs, the California Class and the California Subclass a duty to exercise reasonable care in representing the safety of Beneful.

68.     Purina falsely represented that Beneful was safe for consumption by dogs and omitted to disclose that Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic, or Lead.  Purina intended that consumers, including the class members, would rely on these representations, and Purina had no reasonable grounds to believe these representations were true when made.

69.     In reality, Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic, or Lead and caused dogs to become ill and, in some cases, to die.

70.     The California Plaintiffs, the California Class and the California Subclass reasonably relied on the information provided by Purina regarding the safety of Beneful.

71.     As a proximate cause of Purina's false representations, the California Plaintiffs and the members of the California Class and the California Subclass suffered injury to property, specifically in the illness and deaths of their pets and associated expenses, in an amount to be proven at trial.

**COUNT 3**
**Asserted as to the California Plaintiffs, the California Class and the California Subclass**
**(Strict Products Liability)**

72.     The California Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

73.     The California Plaintiffs bring this claim on behalf of themselves, the California Class and the California Subclass.

74.     Purina, as set forth above, is a manufacturer and distributor of Beneful.

75.     Beneful is defective in design and/or manufacture in that it contains amounts of ingredients or toxins that are harmful to animals upon consumption and did not have nutritional

value appropriate for its intended purpose.  Beneful was further defective due to inadequate testing.  Purina knew that Beneful would be purchased and used without inspection or testing for defects and harmful substances by the purchaser.

76.     Further, Beneful was under the exclusive control of Purina and was sold in its defective state without warning as to its health risks.  Purina had a duty to warn purchasers of the health risks posed by Beneful in an effective manner.  Such warnings should have been placed on the packaging at point-of-sale or in another manner reasonably calculated to fairly warn purchasers of the danger.

77.     The kinds of harm which befell the California Plaintiffs, the California Class and the California Subclass and their pets were foreseeable results of the defects in Beneful.

78.     Neither the California Plaintiffs nor any member of the California Class or the California Subclass had any reason to know, prior to or at the time of purchase, or any time prior to the injuries to their pets, that Beneful was defective and harmful.

79.     The California Plaintiffs and members of the California Class and California Subclass have been damaged as a result of the defects in design and manufacture of Beneful, and as a result of Purina's failure to warn of its health risks, in an amount to be proven at trial.

**<u>COUNT 4</u>**
**Asserted as to the California Plaintiffs, the California Class and the California Subclass**
**(Violation of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750, _et seq._))**

80.     The California Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

81.     The California Plaintiffs bring this claim on behalf of themselves, the California Class and the California Subclass.

82.     Purina's sale of dangerous and defective pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Consumers Legal Remedies Act, California Civil Code section 1750, _et seq_.

83.     Purina is a "person" as defined under California Civil Code section 1761(c).

84.     Purina violated Civil Code sections 1770(a)(5) and (a)(7) when it failed to disclose that Beneful contains Industrial Grade Glycols, Mycotoxins, Arsenic or Lead. Purina's sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

85.     As a result of the practices described here, Purina has committed the following violations of section 1770:

        b)     Purina has represented that Beneful has characteristics or benefits that it does not have, including that it is "healthy" and offers "great nutrition" and omitted to disclose that it contains Industrial Grade Glycols, Mycotoxins, Arsenic or Lead (section 1770(a)(5)); and

        c)     Purina has falsely represented that Beneful is of a particular standard, quality, or grade (section 1770(a)(7)).

86.     Purina undertook its deceptive practices with the design and purpose of inducing the California Plaintiffs and members of the California Class and the California Subclass to purchase Beneful, which they did.  Purina engaged in marketing efforts to reach the California Plaintiffs and members of the California Class and the California Subclass and persuade members to purchase Beneful, which was defective, leading to the injuries to their pets and other damages.

87.     As a result of Purina's unfair and deceptive acts and practices, the California Plaintiffs and members of the California Class and the California Subclass have suffered damages including: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Arsenic, or Lead); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

88.     The California Plaintiffs and members of the California Class and the California Subclass have provided Purina with the notice required by the Consumers Legal Remedies Act by giving notice of Purina's violation of the Act by certified mail.   As such, the California Plaintiffs have complied with California Civil Code section 1782(a).

### COUNT 5
**Asserted as to the California Plaintiffs, the California Class and the California Subclass**
**(Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*))**

89.     The California Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

90.     The California Plaintiffs bring this claim on behalf of themselves, the California Class and the California Subclass.

91.     Purina's practices as alleged in this First Amended Complaint constitute unlawful, unfair and fraudulent business acts and practices under the UCL, Bus. & Prof. Code §§ 17200, *et seq.*

92.     The UCL prohibits acts of "unfair competition," including any unlawful, unfair, or fraudulent business act or practice.

93.     A violation of another law is treated as "unlawful competition" that is independently actionable. A business practice is "unfair" if: a) the utility of Purina's conduct is substantially outweighed by the gravity of the harm to the alleged victim; b) Purina's practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or c) Purina's practice would deceive a reasonable consumer.

94.     Purina committed unlawful practices because it violated the CLRA.

95.     Purina committed unfair practices because it manufactured and distributed Beneful, which is harmful to dogs, despite knowledge of the defect, and in a manner that would deceive a reasonable consumer.

96.     Purina engaged in unfair, deceptive, untrue or misleading advertising by representing that Beneful was "healthy," constituted "great nutrition," and that it promoted "healthy growth" and that Purina guaranteed satisfaction, despite the fact that Beneful was not safe for consumption by dogs and Purina did not guarantee satisfaction, and by omitting to disclose that Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic or Lead.

97.     Purina committed unfair, unlawful or fraudulent practices by: (a) representing that Beneful was safe for dogs to consume when it was not; and (b) continuing to represent the health benefits of Beneful despite being aware of numerous complaints from users of Beneful that their dogs had become ill or died after consuming it; and (c) omitting to disclose that Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic or Lead.

98.     The California Plaintiffs and members of the California Class and the California Subclass relied on such statements and omissions.  Had they known that Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic or Lead, they never would have purchased it.

99.     Accordingly, Plaintiffs seek an injunction requiring Purina to cease selling Beneful and to recall any of the product currently in distribution, restitution, and all other relief this Court deems appropriate.

**COUNT 6**
**Asserted as to the California Plaintiffs, the California Class and the California Subclass**
**(Violation of the False Advertising Law (Cal. Bus. & Prof. Code §17500 *et seq.*))**

100.    The California Plaintiffs reallege all prior allegations as though fully set forth herein.

101.    The California Plaintiffs bring this claim on behalf of themselves, the California Class and the California Subclass.

102.    Purina disseminated advertising within California and throughout the United States.  Purina disseminated or caused to be disseminated the materially untrue and misleading advertising described in this First Amended Complaint with the intent to directly or indirectly

induce the California Plaintiffs and the members of the California Class and the California Subclass to purchase Beneful.

103.    The advertising misrepresenting Beneful's health benefits, and omitting to state that Beneful contained Industrial Grade Glycols, Mycotoxins, Arsenic, or Lead, were untrue, misleading, and deceptive, as set forth in this First Amended Complaint.

104.    When Purina disseminated the advertising described here, it knew, or by the exercise of reasonable care should have known, that the statements concerning Beneful were untrue or misleading, or omitted to state the truth about Beneful, in violation of the False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.*

105.    The California Plaintiffs, on their own behalf and on behalf of the California Class and the California Subclass, seek restitution, disgorgement, injunctive relief, and all other relief allowable under §17500, *et seq.*

**B.    COLORADO CAUSES OF ACTION**

<u>COUNT 7</u>
**Asserted as to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass**
<u>**(Breach of Express Warranty)**</u>

106.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.    The Colorado Plaintiffs bring this action on behalf of themselves, the Colorado Class and the Colorado Subclass.

108.    Purina constitutes a "merchant" and a "seller" in connection with its sales of Beneful, as those terms are defined in the Colorado Uniform Commercial Code.  Further, the Colorado Plaintiffs, the Colorado Class members and the Colorado Subclass members constitute "buyers" in connection with their purchases of Beneful from Purina, as that term is defined in the Colorado Uniform Commercial Code.  Further, Beneful constitutes "goods," as that term is defined in the Colorado Uniform Commercial Code.

109.   By affirmations of fact, promises and descriptions made on Beneful's packaging and which relate to such goods, Purina provided the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass with written express warranties before or at the time of purchase, including the following:

a)   "Satisfaction Guaranteed.   If you're not happy, we're not happy. Complete satisfaction or your money back…..

b)   "At Purina, we're unconditionally devoted to pets.   We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

c)   "100% Complete and Balanced Nutrition"

d)   "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…."

e)   "Healthy."

110.   These affirmations of facts and promises made by Purina to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass related to Beneful and became part of the bases of the bargains between them and Purina and thereby created express warranties that Beneful would conform to those affirmations and promises. Furthermore, the aforementioned descriptions of Beneful were part of the bases of the bargains for the purchases of Beneful between Purina and the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass and they created an express warranty that the goods would conform to those descriptions.   As previously noted, because Beneful contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic, it did not conform to the affirmations, promises and descriptions previously mentioned, resulting in breaches of express warranties.

111.   Beneful was marketed directly to consumers by Purina, came in sealed packages, and did not change from the time it left Purina's possession until it was purchased by consumers in stores.

112. The Colorado Plaintiffs have complied with all conditions precedent to filing this breach of warranty claim, including providing timely notice of these breaches of warranty to Purina on behalf of themselves and the Colorado Class within a reasonable time after discovering that Beneful might have proximately caused the damages described herein. Such notice was reasonable based on the circumstances of this case, including the fact Purina has engaged in a campaign to prevent other affected consumers from publicly discussing similar claims while at the same time expressly denying any relationship between the failure to disclose that Beneful contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic, and the injuries here at issue. Alternatively, this pleading constitutes adequate notice on behalf of the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass. Alternatively, notice need not have been given to Purina because it had actual notice of its breaches of warranty as to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass.

113. As a proximate result of Purina's breach of express warranties, the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass have suffered actual damages as follows: (a) the difference in value between the value of the Beneful as expressly warranted (the full purchase prices) and the value of the Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); i.e., the full purchase price of the Beneful; (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful. The Colorado Plaintiffs and members of the Colorado Class and the Colorado Subclass cannot return Beneful to Purina for repair as the subject defect is irreparable.

**COUNT 8**
**Asserted as to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass**
**(Breach of the Implied Warranty of Merchantability, Colo. Rev .Stat. § 4-2-314)**

114.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

115.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass, as those terms are defined in the Colorado Uniform Commercial Code.  Further, the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass constituted "buyers" as that term is defined in the Colorado Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is defined in the Colorado Uniform Commercial Code.

116.    As part of the sales to the Colorado Plaintiffs and members of the Colorado Class and the Colorado Subclass, Purina impliedly warranted that Beneful was merchantable.  Among other things, to be merchantable,  Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled, and conform to the promises or affirmations of fact made on the containers or labels.

117.    Beneful breached the implied warranty of merchantability initially because it would not pass without objection in the trade under the contract description.  Specifically, Beneful will not pass without objection in the trade under the description of dog food, because it contained Industrial Grade Glycols, Mycotoxins, Lead or Arsenic.  In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, which is safely feeding dogs.  Further, Purina breached the implied warranty of merchantability because Beneful was not adequately contained, packaged or labeled because it failed to warn of the dangers of its consumption by dogs.

118.    At the time of sale to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass throughout the Class Period, Purina made promises and affirmations of fact on the packaging of Beneful to the effect that Beneful was safe for

consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

119.    However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.  For the reasons set forth above, Beneful was defective, such defect was present when Beneful left Purina's control, and such defect caused the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass members' injuries.

120.    Within a reasonable time after the discovery of Purina's breach of the implied warranty and the possible link of Beneful to the illness and death of their pet, the Colorado Plaintiffs gave notice of such breaches on behalf of themselves and members of the Colorado Class and the Colorado Subclass.  Alternatively, this pleading constitutes adequate notice on behalf of the Colorado Plaintiff and the members of the Colorado Class and the Colorado Subclass.  Alternatively, no notice was required because Purina was already aware of its breaches as to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass.

121.    As a proximate result of this breach of implied warranty by Purina, the Colorado Plaintiffs and the Colorado Class have been damaged in the following manner: (a) by the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the market value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

**COUNT 9**
**Asserted as to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

122.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

123.    The Colorado Plaintiffs bring this claim on behalf of themselves, the Colorado Class and the Colorado Subclass.

124.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

125.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

126.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

127.    The Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

128.    Pursuant to 15 U.S.C. § 2310(e), the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass are entitled to bring this action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Colorado Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, the Colorado Plaintiffs already gave any required notice on behalf of themselves and the members of the Colorado Class and the Colorado Subclass by letter dated April 28, 2015.

129.    In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled, and (d) conformed to the promises and affirmations of fact set forth on its container and label.

130.     Purina is liable to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

131.     Purina initially breached the implied warranty of merchantability as to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food. Specifically, Beneful was unsafe and toxic to dogs and defective because it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic. These substances in Beneful made it unfit for its ordinary purpose of providing safe, healthy dog food. In fact, Beneful has caused injury and death to thousands of dogs.

132.     Purina further breached its implied warranty of merchantability to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic.

133.     Purina further breached its implied warranty of merchantability to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass because Beneful was not adequately contained, packaged, and labeled. The directions and labeling that accompanied the Beneful dog food did not warn the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass of the dangers of feeding Beneful to their dogs.

134.     Purina further breached its implied warranty of merchantability to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above. Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

135.    Pursuant to 15 U.S.C. § 2310(d)(1), the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic ); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

136.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass in connection with the commencement and prosecution of this action.

**COUNT 10**
**Asserted Against Purina on Behalf of the Colorado Plaintiffs and the Colorado Subclass (Negligence)**

137.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

138.    The Colorado Plaintiffs bring this claim on behalf of themselves, the Colorado Class and the Colorado Subclass.

139.    Purina owed a duty of care to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass to provide pet food that was safe for consumption by dogs, free from toxins that could have harmful effects if consumed.

140.    Purina breached this duty by selling Beneful, which was not safe and contained harmful toxins, without adequate quality control and testing; without using proper

1  manufacturing and production practices; without properly investigating reports of pet deaths

2  and illnesses following consumption of Beneful; and without adequately warning the Colorado

3  Plaintiffs and the members of the Colorado Class and the Colorado Subclass of such dangers on

4  Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an

5  ordinarily prudent and reasonable person would have acted under the same or similar

6  circumstances.

7      141.    Purina should have known that Beneful posed a risk of harm to dogs; that

8  purchasers of Beneful, including the Colorado Plaintiffs and the members of the Colorado

9  Class and the Colorado Subclass, would not recognize the risk; and that consumption of

10  Beneful by dogs would foreseeably result in injury and death to those dogs, constituting

11  property damage to the Colorado Plaintiffs and the members of the Colorado Class and the

12  Colorado Subclass beyond and in addition to their damages from purchasing the worthless

13  Beneful.

14      142.    As a proximate result of Purina's negligent acts alleged herein, the Colorado

15  Plaintiffs and the members of the Colorado Class and the Colorado Subclass suffered injury to

16  property, specifically in the illness and deaths of their dogs and the expenses incurred

17  therewith.

18                          **COUNT 11**
   **Asserted as to the Colorado Plaintiffs and the Colorado Subclass**
19                     **(Strict Products Liability)**

20      143.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding

21  paragraph as though fully set forth at length herein.

22      144.    The Colorado Plaintiffs bring this claim on behalf of themselves, the Colorado

23  Class and the Colorado Subclass.

24      145.    Purina designed, manufactured, distributed and sold Beneful, which was unsafe

25  because it contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead and had other

26  harmful effects.

27

146.     The existence of Industrial Grade Glycol, Mycotoxins, Arsenic or Lead and other harmful effects in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition.  The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

147.     These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

148.     Beneful came in sealed packages, and both the product and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

149.     The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

150.     Accordingly, Purina is strictly liable for the damages caused to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass by the consumption of the unreasonably dangerous Beneful, specifically the illness and deaths of their dogs and the expenses incurred therewith.

**COUNT 12**
**Asserted as to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

151.     The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

152.     The Colorado Plaintiffs bring this claim on behalf of themselves, the Colorado Class and the Colorado Subclass.

153.     This claim in quasi-contract is based upon principles of restitution.  A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

154.    The Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass conferred a benefit on Purina by purchasing Beneful in the form of the gross revenues Purina derived from such sales, which they would not have conferred had the true facts detailed above been disclosed by Purina.

155.    At the expense of the Colorado Plaintiffs and members of the Colorado Class and the Colorado Subclass, Purina received and accepted benefits in the form of the gross revenues Purina derived from sales of Beneful to the Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass.

156.    For the reasons detailed above, Purina has profited and accepted such benefits under circumstances where it engaged in improper, deceitful or misleading conduct that would make it inequitable and unjust for Purina to retain such benefit without repaying the value it received from the sales of such products.

157.    The Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass are entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to them.

## COUNT 13
### Asserted as to the Colorado Plaintiffs, the Colorado Class and the Colorado Subclass
### (Violation of the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6-1-105, *et seq.*)

158.    The Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

159.    The Colorado Plaintiffs bring this claim on behalf of themselves, the Colorado Class and the Colorado Subclass.

160.    The Colorado Plaintiffs and the members of the Colorado Class and the Colorado Subclass were actual purchasers and users of Beneful manufactured, marketed, distributed and sold by Purina.

161.    As set forth in detail above, Purina disseminated unhealthy and dangerous Beneful despite making numerous uniform material representations about its allegedly guaranteed and healthy nature, and it omitted material facts to the contrary, including that

1  Beneful contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic.  In so doing, Purina
2  engaged in and/or caused others to engage in a deceptive trade practice.  In violation of the
3  following provisions of Colo.Rev.Stat. § 6-1-105, Purina:

4       "(b)     Knowingly makes a false representation as to the source, sponsorship,
5       approval or certification of goods ….

6       "(e)     Knowingly makes a false representation as to the characteristics,
7       ingredients, uses [or] benefits … of goods … or a false representation as to the
8       sponsorship, approval, status, affiliation, or connection of a person therewith;

9       "(g)     Represents that goods … are of a particular standard, quality, or grade,
10      or that goods are of a particular style or model, if he knows or should know that
11      they are of another;

12      "(i)     Advertises goods … with intent not to sell them as advertised;

13      "(r)     Advertises or otherwise represents that goods or services are guaranteed
14      without clearly and conspicuously disclosing the nature and extent of the
15      guarantee, any material conditions or limitations in the guarantee which are
16      imposed by the guarantor, the manner in which the guarantor will perform, and
17      the identity of such guarantor….

18      "(u)     Fails to disclose material information concerning goods … which
19      information was known at the time of an advertisement or sale if such failure to
20      disclose such information was intended to induce the consumer to enter into a
21      transaction".

22      162.     These deceptive trade practices occurred in the course of Purina's business.

23      163.     These deceptive trade practices significantly impacted the public as there are
24 thousands of actual or potentially affected purchasers and users of Beneful in Colorado, and
25 Beneful was disseminated in part from Colorado throughout the United States.

26

27

164.     As a result of these deceptive trade practices, the Colorado Plaintiffs and members of the Colorado Class and the Colorado Subclass were injured and suffered actual damages or losses, which include (a) the difference in value between the value of the Beneful as expressly warranted (the full purchase prices) and the value of the Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic); i.e., the full purchase price of the Beneful; (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful.

## C.     FLORIDA CAUSES OF ACTION

**COUNT 14**
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.***

165.     The Florida Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

166.     The Florida Plaintiff brings this claim on behalf of himself, the Florida Class and the Florida Subclass.

167.     At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

168.     Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

169.     Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

170.     The Florida Plaintiff and the members of the Florida Class and the Florida Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

171.     Pursuant to 15 U.S.C. § 2310(e), the Florida Plaintiff and the members of the Florida Class and the Florida Subclass are entitled to bring this class action and are not required

1    to give Purina notice and an opportunity to cure until such time as the Court determines the

2    representative capacity of the Florida Plaintiff pursuant to Rule 23 of the Federal Rules of Civil

3    Procedure.  However, Florida Plaintiff Wayne Colello already gave the required notice on

4    behalf of himself, the Florida Class and the Florida Subclass by letter dated June 3, 2015.

5         172.    In connection with its sale of Beneful, Purina gave an implied warranty as

6    defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of

7    the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its

8    ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

9    contract description as dog food, (c) was adequately contained, packaged and labeled as the

10   agreements required, and (d) conformed to the promises and affirmations of fact set forth on its

11   container and label.  Fla. Stat. § 672.314.

12        173.    Purina is liable to the Florida Plaintiff and members of the Florida Class and the

13   Florida Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty

14   of merchantability.

15        174.    Purina initially breached the implied warranty of merchantability as to the

16   Florida Plaintiff and members of the Florida Class and the Florida Subclass because Beneful

17   was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.

18   Specifically, Beneful contained Industrial Grade Glycols, which have not been approved for

19   use in food, Mycotoxins, Lead, or Arsenic, making Beneful unfit for its ordinary purpose of

20   providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of

21   dogs.

22        175.    Purina further breached its implied warranty of merchantability to the Florida

23   Plaintiff and the members of the Florida Class and the Florida Subclass because Beneful would

24   not pass without objection in the trade under its contract description as dog food, as it contained

25   Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or

26   Arsenic.

27

176.     Purina further breached its implied warranty of merchantability to the Florida Plaintiff and members of the Florida Class and the Florida Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the Florida Plaintiff and members of the Florida Class and the Florida Subclass that Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic.

177.     Purina finally breached its implied warranty of merchantability to the Florida Plaintiff and the members of the Florida Class and the Florida Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

178.     Pursuant to 15 U.S.C. § 2310(d)(1), the Florida Plaintiff and the members of the Florida Class and the Florida Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

179.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Florida Plaintiff and the members of the Florida Class and the Florida Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Florida Plaintiff

and the members of the Florida Class and the Florida Subclass in connection with the

commencement and prosecution of this action.

### COUNT 15
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Breach of Express Warranty - Fla. Stat. § 672.313**

180.     The Florida Plaintiff incorporates herein the allegations of all of the preceding

and subsequent paragraphs as if fully set forth here verbatim.

181.     The Florida Plaintiff brings this claim on behalf of himself, the Florida Class

and the Florida Subclass.

182.     Purina constituted both a "merchant" and a "seller," as those terms are defined

in Fla. Stat. §§ 672.103 and 672.104, in connection with its sale of Beneful to the Florida

Plaintiff and the members of the Florida Class and the Florida Subclass.  Further, the Florida

Plaintiff and the members of the Florida Class and the Florida Subclass constituted "buyers," as

that term is defined in Fla. Stat. § 672.103.  Beneful, itself, constituted "goods," as that term is

defined in Fla. Stat. § 672.105.

183.     The representations on Purina's packaging for Beneful created express

warranties, including that Beneful was safe for consumption by pets, under both common law

and Fla. Stat. § 672.313.  Said representations include, but are not limited to, Beneful dog food

being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that

customers' satisfaction would be guaranteed.

184.     The representations regarding Beneful described in detail above constituted

affirmations of fact and promises relating to Beneful that became part of the basis for the

bargain for the purchase of Beneful and created an express warranty that Beneful would

conform to those affirmations of fact and promises.

185.     Likewise, the representations as described in detail above constituted

descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful

and created an express warranty that Beneful would conform to those descriptions.

186.     Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, constituting a breach of these express warranties.

187.     The Florida Plaintiff and the members of the Florida Class and the Florida Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they know it contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of those dogs; and (d) for those whose dogs died from consuming Beneful, the cost of disposing of their remains.

188.     Within a reasonable time after their discovery of Purina's breaches, the Florida Plaintiff gave notice of the breaches of the express warranties on behalf of himself and the members of the Florida Class and the Florida Subclass.  Alternatively, this pleading constitutes a sufficient notice of Purina's breaches of the express warranties.  Alternatively, it was not necessary for the Florida Plaintiff or members of the Florida Class or the Florida Subclass to give Purina notice of its breaches of the express warranties because Purina had actual notice of the fact that Beneful contained excessive amounts of substances which made it toxic and deadly to dogs.

## COUNT 16
### Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass
### Breach of the Implied Warranty of Merchantability—Fla. Stat. § 672.314

189.     The Florida Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

190.     The Florida Plaintiff brings this claim on behalf of himself, the Florida Class and the Florida Subclass.

191.     Purina is a "seller" and "merchant" as to Beneful within the meaning of Fla. Stat. § 672.104.  Purina designed, manufactured and sold Beneful, which constitutes "goods"

within the meaning of Fla. Stat. § 672.105.  The Florida Plaintiff and members of the Florida

Class and the Florida Subclass constituted "buyers" within the meaning of Fla. Stat. § 672.103.

Consequently, pursuant to Florida law Purina impliedly warranted that Beneful was

merchantable, including that it: (a) was fit for its ordinary purposes as safe, healthy dog food,

(b) could pass without objection in the trade under its contract description as dog food, (c) was

adequately contained, packaged, and labeled as the agreements required, and (d) conformed to

the promises and affirmations of fact set forth on its container and labels.

192.    Beneful was sold in sealed packaging, and the defects existed when it left

Purina's control.

193.    When Purina designed, manufactured and sold Beneful, it knew the purpose for

which Beneful was intended; *i.e.*, that it would be consumed by dogs.

194.    Purina initially breached the implied warranty of merchantability as to the

Florida Plaintiff and the members of the Florida Class and the Florida Subclass because

Beneful  was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.

Specifically, Beneful contained Industrial Grade Glycols, which have not been approved for

use in food, Mycotoxins, Lead, or Arsenic, making it unfit for its ordinary purpose of providing

safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

195.    Purina further breached its implied warranty of merchantability to the Florida

Plaintiff and the members of the Florida Class and the Florida Subclass because Beneful would

not pass without objection in the trade under its contract description as dog food, as it contained

Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or

Arsenic.

196.    Purina further breached its implied warranty of merchantability to the Florida

Plaintiff and the members of the Florida Class and the Florida Subclass because Beneful was

not adequately contained, packaged, and labeled.  The directions and labeling that accompanied

1  Beneful did not warn the Florida Plaintiff and the members of the Florida Class and the Florida

2  Subclass of the dangers of feeding Beneful to their dogs.

3    197.    Purina finally breached its implied warranty of merchantability to the Florida

4  Plaintiff and the members of the Florida Class and the Florida Subclass because Beneful did

5  not conform to the promises and affirmations of fact set forth on its container and label, as

6  described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"

7  did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers'

8  satisfaction was not guaranteed.

9    198.    The Florida Plaintiff and members of the Florida Class and the Florida Subclass

10  were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the

11  amount of the difference in value between the value of the Beneful as warranted (its full

12  purchase prices) and the Beneful as actually delivered ($0, because consumers would not have

13  paid anything for it had they know it contained Industrial Grade Glycols, Mycotoxins, Lead, or

14  Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for

15  those whose dogs died from consuming Beneful, the market value of those dogs; (d) for those

16  whose dogs died from consuming Beneful, the cost of disposing of their remains; and (e) other

17  economic losses including the increased risk of health problems in their pets.

18    199.    Within a reasonable time after their discovery of Purina's breaches, the Florida

19  Plaintiff gave notice of the breaches of the implied warranty of merchantability on behalf of

20  themselves and members of the Florida Class and the Florida Subclass.  Alternatively, this

21  pleading constitutes a sufficient notice of Purina's breaches of the implied warranty of

22  merchantability.  Alternatively, it was not necessary for the Florida Plaintiff or members of the

23  Florida Class and the Florida Subclass to give Purina notice of its breaches of the implied

24  warranty of merchantability because Purina had actual notice of the fact that the Beneful

25  contained excessive amounts of substances which made it toxic and deadly to dogs.

26

27

**COUNT 17**
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Violation of Florida's Deceptive and Unfair Trade Practices Act, Ch. 501, Part II**

200.    The Florida Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

201.    The Florida Plaintiff brings this claim on behalf of himself and the Florida Class and the Florida Subclass.

202.    The Florida Plaintiff and the members of the Florida Class and the Florida Subclass are "consumers" as defined in Fla. Stat. § 501.201.

203.    The stated purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.202(2).

204.    The Florida Plaintiff and the members of the Florida Class and the Florida Subclass are consumers, and Beneful is considered a good, within the meaning of the FDUTPA. Purina is engaged in trade or commerce within the meaning of the FDUTPA.

205.    Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

206.    Purina has violated the FDUTPA by engaging in the unfair and deceptive practices, including its omission that Beneful contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

207.    Fla. Stat. § 501.203(3) provides that a:    "[v]iolation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2013:

…(c)   Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

208.    Florida laws provide protection to purchasers of animal food from unfair, deceptive and unconscionable practices in Fla. Stat. § 580.071 (Adulteration) and Fla. Stat. § 580.081 (Misbranding).

209.    Specifically, § 580.071 provides that "[n]o person shall distribute an adulterated commercial feed or feedstuff." A commercial feed or feedstuff shall be deemed to be adulterated under (1)(a)  if "it bears or contains any poisonous, deleterious, or nonnutritive substance that may render it injurious to animal or human health, or (b)  If it bears or contains any food additive or added poisonous, deleterious, or nonnutritive substance that is unsafe within the meaning of s. 406 of the Federal Food, Drug, and Cosmetic Act, other than a pesticide chemical in or on a raw agricultural commodity"; or "(5)  if its composition or quality falls below or differs from that which it is purported or is represented to possess by its labeling". Fla. Stat. § 580.071 (2013).

210.    Purina omitted to disclose that Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic.  Therefore, the composition or quality of Beneful falls below what is purported or represented by its label. Purina's omissions injured the Florida Plaintiffs and the members of the Florida Class. Moreover, these substances injured the dogs of the Florida Plaintiff and the members of the Florida Subclass.

211.    Fla. Stat. § 580.081 (Misbranding) provides that "[n]o person shall distribute misbranded commercial feed or feedstuff."

212.    Commercial feed or feedstuff shall be deemed to be misbranded under subsection (1) if "its labeling is false or misleading in any particular or under subsection (6) if it is not appropriate for its intended or purported use." Fla. Stat. § 580.081.

213. Purina's conduct, as more fully described herein, violated Fla. Stat. § 580.071 and § 580.081. Violations of these laws, which are designed to protect consumers like Plaintiffs, constitute per se violations of FDUTPA pursuant to Fla. Stat. § 501.203(3)(c).

214. Under Fla. Stat. § 501.211(1), the Florida Plaintiff and members of the Florida Class and the Florida Subclass seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of Purina and for restitution and disgorgement of the gross revenues derived by Purina from its sale of Beneful to them, along with any other equitable relief to which they are entitled, pursuant to Florida law.

215. Under Fla. Stat. §§ 501.211(2) and 501.2105, the Florida Plaintiff and the members of the Florida Class and the Florida Subclass make additional claims for damages, attorneys' fees, and costs.

216. Purina's violations of FDUTPA were the producing cause of actual economic damages to the Florida Plaintiff and members of the Florida Class and the Florida Subclass equal to: (a) the amount they paid for Beneful; the difference in value between the value of Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known Beneful contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) their veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of their dogs; and (4) for those whose dogs died from consuming Beneful, the cost of disposing of their remains, which they seek to recover from Purina pursuant to the FDUTPA.

**COUNT 18**
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Negligence**

217. The Florida Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

218.    The Florida Plaintiff brings this claim on behalf of himself, the Florida Class and the Florida Subclass.

219.    Purina owed a duty of reasonable care to the Florida Plaintiff and the members of the Florida Class and the Florida Subclass to provide dog food that was safe for consumption by dogs, free from excessive amounts of toxins with harmful effects.

220.    Purina breached this duty by selling Beneful, which contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Florida Plaintiff and the members of the Florida Class and the Florida Subclass of Beneful's dangers on its packaging.

221.    Such conduct by Purina was negligent because it did not reflect the level of care that an ordinarily prudent and reasonable person in Purina's place would have given under the same or similar circumstances.

222.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Florida Plaintiff and the members of the Florida Class and the Florida Subclass, would not recognize the risk, and that consumption of Beneful by pets would foreseeably result in their injury and death.  Such injury and death to the dogs constituted property damage to the Florida Plaintiff and the members of the Florida Class and the Florida Subclass beyond and in addition to their damage from purchasing Beneful.

223.    As a proximate result of Purina's negligent acts alleged herein, the Florida Plaintiff and the members of the Florida Class and the Florida Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses incurred therewith.

**COUNT 19**
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Strict Products Liability – § 402A of the Restatement (2d) of Torts**

224.    The Florida Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

225.    The Florida Plaintiff brings this claim on behalf of himself, the Florida Class and the Florida Subclass.

226.    Purina designed, manufactured and sold Beneful, which contained excessive amounts of toxins and had other harmful effects as alleged, *supra*. The presence of excessive amounts of toxins and other harmful effects in Beneful, at all times material hereto, which would not reasonably have been expected by consumers, constituted an unreasonably dangerous defect and/or condition.

227.    Beneful was unreasonably dangerous because of defects in marketing, design and manufacturing, which reasonable consumers would not have expected.

228.    There was a defect in the marketing of Beneful which made it unreasonably dangerous because Purina failed to warn the Florida Plaintiff and members of the Florida Class and the Florida Subclass, on its packaging or otherwise, of the potential harm to their dogs from eating Beneful, which warning reasonable consumers would have expected.

229.    Beneful was defectively designed because it contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, there were substitute ingredients available for Beneful that would meet the same needs and not be unsafe or unreasonably expensive, Purina had the ability to eliminate the unsafe character of Beneful without seriously impairing its usefulness or significantly increasing its costs, it was not anticipated that purchasers of Beneful would be aware of the dangers inherent in the use of the product, and the expectations of the ordinary consumer were that dog food manufactured by Purina would be safe for dogs.

230.    Alternatively, Beneful was defectively manufactured because it contained excessive amounts of toxins or other ingredients that are harmful and deadly to dogs that

1    deviated in terms of quality from the specifications or planned output in a manner that rendered

2    it unreasonably dangerous and not within the expectations of reasonable consumers.

3            231.    These unreasonably dangerous defects in the marketing, design and manufacture

4    of Beneful existed at the time the Beneful left Purina's control.

5            232.    Beneful came in sealed packages, and it did not change from the time it left

6    Purina's possession, through the time it arrived in stores to be sold to consumers and consumers

7    bought and took possession of it.

8            233.    The unreasonably dangerous defects and/or conditions of Beneful proximately

9    caused injury and death to dogs, and related expenses, constituting property damage to the

10   Florida Plaintiff and members of the Florida Class and the Florida Subclass beyond and in

11   addition to their damages from purchasing Beneful.

12           234.    Accordingly, Purina is strictly liable for these damages caused to the Florida

13   Plaintiff and the members of the Florida Class and the Florida Subclass by its unreasonably

14   dangerous product.

**COUNT 20**
**Asserted as to the Florida Plaintiff, the Florida Class and the Florida Subclass**
**Unjust Enrichment**

15
16           235.    The Florida Plaintiff incorporates herein the allegations of all of the preceding

17   and subsequent paragraphs as if fully set forth here verbatim.

18           236.    The Florida Plaintiff brings this claim on behalf of himself, the Florida Class

19   and the Florida Subclass.

20
21           237.    The Florida Plaintiff and members of the Florida Class and the Florida Subclass

22   purchased Beneful, which was defective, not merchantable, and unreasonably dangerous and

23   therefore had no value to them.

24           238.    The Florida Plaintiff and members of the Florida Class and the Florida Subclass

25   purchased Beneful designed, manufactured and marketed by Purina in various retail stores.

26   Purina has received and retained a benefit from the Florida Plaintiff and the members of the

27   Florida Class and the Florida Subclass – the gross revenues resulting from their purchases.

Purina is not entitled to retain these revenues because of the diminished value, inherent defects, adulterated state, misbranded content and general lack of merchantability of Beneful.

239.     The Florida Plaintiff and members of the Florida Class and the Florida Subclass lack an adequate remedy at law.

240.     Principles of fairness and equity demand that Purina disgorge the above-referenced revenues to the Florida Plaintiff and the members of the Florida Class and the Florida Subclass.

**D.     ILLINOIS CAUSES OF ACTION**

<u>**COUNT 21**</u>
**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
<u>**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**</u>

241.     The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

242.     The Illinois Plaintiffs bring this action on behalf of themselves the Illinois Class and the Illinois Subclass.

243.     This cause of action is brought pursuant the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* ("ICFA").

244.     The acts and omissions, specifically including Purina's omission that Beneful contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, occurred in the conduct of trade or commerce as that term is used therein.

245.     Section 2 of ICFA prohibits unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce, as well as deceptive acts or practices which are committed in the course of trade or commerce and with the intent that others rely upon them.  815 ILCS 505/2.

246.     Section 2 of the ICFA provides, in full:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of

any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

815 ILCS 505/2.

247.   Purina's acts, representations and omissions, as alleged in detail *supra*, are by their very nature unfair, deceptive and unlawful within the meaning of the ICFA.

248.   Purina has disseminated or caused to be disseminated advertising, labeling, packaging, marketing, and promotion of Beneful that is deceptive and otherwise violates the ICFA, because at all times material hereto, the advertising, labeling, packaging, marketing and promotion of Beneful included false and/or misleading statements or representations concerning the quality of Beneful and/or failed to disclose and/or concealed or omitted material facts, including without limitation, known defects and risks concerning the quality of Beneful, the healthiness of Beneful, that Beneful contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, and the safety of Beneful.

249.   In making and disseminating the representations and omissions alleged herein, Purina intended to deceive reasonable consumers, including the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass.

250.   Purina made and disseminated the representations and omissions alleged herein in the course of conduct involving trade and commerce.

251.   The utility of Purina's practices related to the advertising, labeling, packaging, marketing, promotion and selling of Beneful while making affirmative misrepresentations and without properly disclosing its true nature and/or characteristics is negligible, if any, when

1    weighed against the harm to the general public, the Illinois Plaintiffs, the Illinois Class and the
2    Illinois Subclass.

3        252.    The harmful impact upon members of the general public targeted by such
4    practices and the members of the Illinois Class and the Illinois Subclass who purchased and
5    used Beneful outweighs any reasons or justifications by Purina for the unfair and deceptive
6    business practices Purina employed to sell Beneful described herein.

7        253.    Purina had an improper motive (profit before accurate marketing) in its practices
8    related to the advertising, labeling, packaging, marketing, promotion and selling of Beneful, as
9    set forth *supra*.

10       254.    The use of such unfair and deceptive business acts and practices was and is
11   under the sole control of Purina, and was deceptively hidden from the Illinois Plaintiffs, the
12   members of the Illinois Class and the Illinois Subclass, and the general public in Purina's
13   advertising, labeling, packaging, marketing, promotion and selling of Beneful in a deceptive
14   effort to put profit over accurate marketing. These deceptive acts and practices had a capacity,
15   tendency, and/or likelihood to deceive or confuse reasonable consumers into believing that
16   Beneful was healthy, was free of excessive harmful toxic substances and was otherwise safe.

17       255.    As a direct and proximate result of Purina's deceptive and unfair conduct and/or
18   violations of the ICFA, Plaintiffs and the members of the Illinois Class and the Illinois Subclass
19   have suffered and continue to suffer damages, including without limitation the following:

20           f)    The difference in value between the value of Beneful as represented (the
21                 full purchase prices) and the actual value of Beneful ($0, because
22                 consumers would not have paid anything for it had they known it
23                 contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); i.e.,
24                 the full purchase prices of the Beneful ;

25           g)    All veterinary bills incurred as a result of  illness, injury or death caused
26                 by consuming Beneful;

27

h)      All bills incurred for the disposition of the remains of dogs killed by Beneful; and

i)      The market value of the dogs killed as a result of ingesting Beneful.

256.    Illinois also provides protection to purchasers of animal food from unfair and deceptive practices.  505 ILCS 30/7 (Adulteration), 505 ILCS 30/8 (Misbranding), and 505 ILCS 30/11.1 (Prohibited Acts).

257.    A commercial feed is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health;" 505 ILCS 30/7, and a commercial feed is misbranded if its "labeling is false or misleading in any particular." 505 ILCS 30/8.  Illinois law also prohibits the "manufacture or distribution of any commercial feed that is adulterated or misbranded." 505 ILCS 30/11.1.

258.    Beneful contains poisonous, deleterious or nonnutritive substances, which injured the dogs of the Illinois Plaintiff and the members of the Illinois Class and the Illinois Subclass, and the composition or quality of Beneful falls below what is purported or represented by its label, as set forth above.

259.    Plaintiffs and the other members of the Illinois Class and the Illinois Subclass further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Illinois Class members and the Illinois Subclass members will be irreparably harmed unless the unlawful actions of Purina are enjoined, in that Purina will continue to falsely and misleadingly market and advertise and represent on its packaging the healthy nature of Beneful.  Towards that end, the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass request an order granting them injunctive relief requiring removal of the unsafe product from retail outlets,

corrective disclosures and/or disclaimers on the labeling and advertising of Beneful and/or the removal of the harmful ingredients before sales resume.

260.    Absent injunctive relief, Purina will continue to manufacture and sell unsafe Beneful without warning to consumers of its harmful effects.

261.    In this regard, Purina has violated, and continues to violate, the Illinois Consumer Fraud and Deceptive Business Practices Act, which makes unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce unlawful.  As a direct and proximate result of Purina's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act as described above, the Illinois Plaintiffs and the members of the Illinois Class and the Illinois Subclass have suffered damages, as set forth above.

### COUNT 22
**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
**(Breach of Express Warranty)**

262.    The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

263.    The Illinois Plaintiffs bring this action on behalf of themselves and the Illinois Class and the Illinois Subclass.

264.    Purina constitutes a "merchant" and a "seller" in connection with its sales of Beneful, as those terms are defined in the Illinois Uniform Commercial Code.  Further, the Illinois Plaintiffs and the members of the Illinois Class and the Illinois Subclass constitute "buyers" in connection with their purchases of Beneful from Purina, as that term is defined in the Illinois Uniform Commercial Code.  Further, Beneful constitutes "goods," as that term is defined in the Illinois Uniform Commercial Code.

265.    By affirmations of fact, promises and descriptions made on Beneful's packaging, Purina provided Plaintiffs and the other members of the Illinois Class and Illinois

Subclass with written express warranties before or at the time of purchase, including the following:

j)      "Satisfaction Guaranteed. If you're not happy, we're not happy. Complete satisfaction or your money back…"

k)      "At Purina, we're unconditionally devoted to pets. We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

l)      "100% Complete and Balanced Nutrition";

m)     "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…"

n)      "Healthy."

266.    These affirmations of facts and promises made by Purina to the Illinois Plaintiffs and the Illinois Class and the Illinois Subclass members related to Beneful and became part of the bases of the bargains between them and Purina and thereby created express warranties that the Beneful would conform to those affirmations and promises.   Furthermore, the aforementioned descriptions of the Beneful were part of the bases of the bargains for the purchases of Beneful between Purina and the Illinois Plaintiffs and the Illinois Class and the Illinois Subclass members and they created an express warranty that the goods would conform to those descriptions.   As previously noted, because Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, it did not conform to the affirmations, promises and descriptions previously mentioned, resulting in breaches of express warranties.

267.   Beneful was marketed directly to consumers by Purina, came in sealed packages, and did not change from the time it left Purina's possession until it was purchased by consumers in stores.

268.   The Illinois Plaintiffs have complied with all conditions precedent to filing this breach of warranty claim, including providing notice of the breach of warranty to the Purina on behalf of themselves and the Illinois Class and the Illinois Subclass, prior to filing this action. Alternatively, the filing of this First Amended Complaint provides sufficient notice of breach to Purina on behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass. Alternatively, notice need not have been given to Purina because it had actual notice of its breaches of warranty as to the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass.

269.   As a proximate result of Purina's breach of express warranties, Plaintiffs and the members of the Illinois Class and the Illinois Subclass have suffered actual damages as follows: (a) the difference in value between the value of the Beneful as expressly warranted (the full purchase prices) and the value of the Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic); i.e., the full purchase price of the Beneful; (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful. Plaintiffs and members of the Illinois Class cannot return Beneful to Purina for repair as the subject defect is irreparable.

**COUNT 23**

**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

270.    The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

271.    The Illinois Plaintiffs bring this claim on behalf of themselves, the Illinois Class and the Illinois Subclass.

272.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

273.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

274.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

275.    The Illinois Plaintiffs and the members of the Illinois Class and the Illinois Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

276.    Pursuant to 15 U.S.C. § 2310(e), the Illinois Plaintiffs and the members of the Illinois Class and the Illinois Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Illinois Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, the Illinois Plaintiffs, Bisharat and Baker, already gave the required notice on behalf of themselves, the Illinois Class and the Illinois Subclass by letters dated May 15 and 20, 2015.

277.    In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

1   contract description as dog food, (c) was adequately contained, packaged and labeled as the

2   agreements required, and (d) conformed to the promises and affirmations of fact set forth on its

3   container and label.

4          278.   Purina is liable to the Illinois Plaintiffs, the Illinois Class and the Illinois

5   Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of

6   merchantability.

7          279.   Purina initially breached the implied warranty of merchantability as to the

8   Illinois Plaintiffs and the members of the Illinois Class and Illinois Subclass because Beneful

9   was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.

10  Specifically, Beneful contained Industrial Grade Glycols, which have not been approved for

11  use in food, Mycotoxins, Lead, or Arsenic, making Beneful unfit for its ordinary purpose of

12  providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of

13  dogs.

14         280.   Purina further breached its implied warranty of merchantability to the Illinois

15  Plaintiffs and the members of the Illinois Class and the Illinois Subclass because Beneful would

16  not pass without objection in the trade under its contract description as dog food because it

17  contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins,

18  Lead, or Arsenic.

19         281.   Purina further breached its implied warranty of merchantability to the Illinois

20  Plaintiffs and the members of the Illinois Class and the Illinois Subclass because Beneful was

21  not adequately contained, packaged, and labeled.  The directions and labeling that accompanied

22  the Beneful dog food did not warn the Illinois Plaintiffs and the members of the Illinois Class

23  and the Illinois Subclass of the dangers of feeding Beneful to their dogs.

24         282.   Purina finally breached its implied warranty of merchantability to the Illinois

25  Plaintiffs and the members of the Illinois Class and the Illinois Subclass because Beneful did

26  not conform to the promises and affirmations of fact set forth on its container and label, as

27

described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

283.    Pursuant to 15 U.S.C. § 2310(d)(1), the Illinois Plaintiffs and the members of the Illinois Class and the Illinois Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

284.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Illinois Plaintiffs and the members of the Illinois Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Illinois Plaintiffs and the members of the Illinois Class in connection with the commencement and prosecution of this action.

## COUNT 24
**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
**(Negligence)**

285.    The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

286.    The Illinois Plaintiffs bring this action on behalf of themselves, the Illinois Class and the Illinois Subclass.

287.    Purina owed a duty of care to Plaintiffs, the Illinois Class and the Illinois Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

288.    Purina breached this duty by selling Beneful, which was not safe and contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass of the dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

289.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass, would not recognize the risk; and that consumption of Beneful by dogs would foreseeably result in injury and death to those dogs, constituting property damage to the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass beyond and in addition to the damages from purchasing the worthless Beneful.

290.    As a proximate result of Purina's negligent acts alleged herein, the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass suffered injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

### COUNT 25
**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
**(Products Liability)**

291.    The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

292.    The Illinois Plaintiffs bring this action on behalf of themselves, the Illinois Class and the Illinois Subclass.

293.    Purina designed, manufactured and sold Beneful, which was unsafe because it contained toxins and had other harmful effects as alleged, *supra*.

294.    The existence of Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition.  The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

295.    These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

296.    Beneful came in sealed packages, and it and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

297.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass beyond and in addition to the damages from purchasing the worthless Beneful.

298.    Accordingly, Purina is strictly liable for the damages caused to Plaintiffs, the Illinois Class and the Illinois Subclass, by the unreasonably dangerous Beneful, specifically the illness and deaths of their dogs and the expenses incurred therewith.

## COUNT 26
**Asserted Against Purina on Behalf of the Illinois Plaintiffs, the Illinois Class and the Illinois Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

299.    The Illinois Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

1     300.    The Illinois Plaintiffs bring this action on behalf of themselves, the Illinois Class

2 and the Illinois Subclass.

3     301.    The Illinois Plaintiffs, the Illinois Class and the Illinois Subclass members

4 conferred a benefit on Purina by purchasing Beneful—the gross revenues Purina derived from

5 such sales.

6     302.    Purina accepted and retained the benefit in the amount of the gross revenues it

7 received from sales of Beneful to the Illinois Plaintiffs, the Illinois Class and the Illinois

8 Subclass members.

9     303.    Purina has thereby profited under circumstances which would make it unjust for

10 Purina to be permitted to retain the benefit.

11     304.    The Illinois Plaintiffs, the Illinois Class and the Illinois Subclass members are

12 entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to

13 them.

14 **E.**     **INDIANA CAUSES OF ACTION**

15 <u>**COUNT 27**</u>

16 **Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**

17 <u>**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**</u>

18     305.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding

19 and subsequent paragraphs as if fully set forth here verbatim.

20     306.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and

21 the Indiana Subclass

22     307.    At all times relevant hereto, there was in full force and effect the Magnuson-

23 Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

24     308.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

25     309.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

26

27

310.    The Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

311.    Pursuant to 15 U.S.C. § 2310(e), the Indiana Plaintiffs and the members of the Indiana Class and the Indiana Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Indiana Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, Indiana Plaintiffs Benham already gave the required notice on behalf of herself and the Indiana Class by letter dated May 15, 2015.

312.    In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and label.  Ind. Code §§ 26-1-2-314(2)(a), (c), (e) and (f).

313.    Purina is liable to the Indiana Plaintiff, the Indiana Class and the Indiana Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

314.    Purina initially breached the implied warranty of merchantability as to the Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of

1   providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of

2   dogs.

3      315.   Purina further breached its implied warranty of merchantability to the Indiana

4   Plaintiff and the members of the Indiana Class and the Indiana Subclass because Beneful would

5   not pass without objection in the trade under its contract description as dog food, as it contained

6   Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or

7   Arsenic.

8      316.   Purina further breached its implied warranty of merchantability to the Indiana

9   Plaintiff and the members of the Indiana Class and the Indiana Subclass because Beneful was

10  not adequately contained, packaged, and labeled.  The directions and labeling that accompanied

11  the Beneful dog food did not warn the Indiana Plaintiff and the members of the Indiana Class

12  and the Indiana Subclass of the dangers of feeding Beneful to their dogs.

13     317.   Purina finally breached its implied warranty of merchantability to the Indiana

14  Plaintiff and the members of the Indiana Class and the Indiana Subclass because Beneful did

15  not conform to the promises and affirmations of fact set forth on its container and label, as

16  described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"

17  did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers'

18  satisfaction was not guaranteed.

19     318.   Pursuant to 15 U.S.C. § 2310(d)(1), the Indiana Plaintiff and the members of the

20  Indiana Class and the Indiana Subclass are entitled to recover the following damages

21  proximately caused to them by Purina's breach of the implied warranty of merchantability: (1)

22  the difference in value between the Beneful as warranted (the full purchase price) and the

23  Beneful as actually delivered ($0.00, because consumers would not have paid anything for it

24  had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the

25  veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating

26  Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful,

27

the cost of disposing of the remains.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass in connection with the commencement and prosecution of this action.

**COUNT 28**
**Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**
**(Breach of Express Warranty, Ind. Code § 26-1-2-313)**

319.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

320.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

321.    Purina constituted both a "merchant" and a "seller," as those terms are defined in Ind. Code §§ 26-1-2-103 and 104, in connection with its sale of Beneful to the Indiana Plaintiff, the Indiana Class and the Indiana Subclass.  Further, the Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass constituted "buyers," as that term is defined in Ind. Code § 26-1-2-103.  Beneful, itself, constituted "goods," as that term is defined in Ind. Code § 26-1-2-105.

322.    The statements on Purina's packaging for Beneful created express warranties, including that Beneful was safe for consumption by pets, under both common law and Ind. Code § 26-1-2-313.  Said statements include, but are not limited to, Beneful dog food being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

323.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the

1  bargain for the purchase of Beneful and created an express warranty that Beneful would

2  conform to those affirmations of fact and promises.

3          324.    Likewise, the statements as described in detail above constituted descriptions of

4  Beneful that became part of the basis of the bargain for the purchase of Beneful and created an

5  express warranty that Beneful would conform to those descriptions.

6          325.    Beneful contained Industrial Grade Glycols, which have not been approved for

7  use in food, Mycotoxins, Lead, or Arsenic, constituting a breach of these express warranties.

8          326.    The Indiana Plaintiff and the members of the Indiana Class and the Indiana

9  Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a)

10 in the amount of the difference in value between the value of the Beneful as warranted (its full

11 purchase prices) and the Beneful as actually delivered ($0, because consumers would not have

12 paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead,

13 or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c)

14 for those whose dogs died from consuming Beneful, the market value of those dogs; and (d) for

15 those whose dogs died from consuming Beneful, the cost of disposing of their remains.

16         327.    Within a reasonable time after their discovery of Purina's breaches, the Indiana

17 Plaintiff gave notice of the breaches of the express warranties on behalf of herself, the Indiana

18 Class and the Indiana Subclass.  Alternatively, this pleading constitutes a sufficient notice of

19 Purina's breaches of the express warranties.  Alternatively, it was not necessary for the Indiana

20 Plaintiff to give Purina notice of its breaches of the express warranties because Purina had

21 actual notice of its breaches of warranty as to the Indiana Plaintiff, the Indiana Class and the

22 Indiana Subclass.

23

24

25

26

27

**COUNT 29**

**Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**
**(Breach of the Implied Warranty of Merchantability, Ind. Code § 26-1-2-314)**

328.   The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

329.   The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

330.   Purina is a "seller" and "merchant" as to Beneful within the meaning of Ind. Code §§ 26-1-2-103 and 104.   Purina designed, manufactured and sold Beneful, which constitutes "goods" within the meaning of Ind. Code § 26-1-2-105.   The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass constituted "buyers" within the meaning of Ind. Code § 26-1-2-103.   Consequently, pursuant to Ind. Code §§ 26-1-2-314(2)(a), (c), (e) & (f), Purina impliedly warranted that Beneful was merchantable, including that it: (a) was fit for its ordinary purposes as safe, healthy dog food, (b) could pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged, and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and labels.

331.   Purina initially breached the implied warranty of merchantability as to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass because Beneful was not fit for the ordinary purposes for which it is used -- a safe, healthy dog food. Specifically, Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

332.   Purina further breached its implied warranty of merchantability to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass because Beneful would

1   not pass without objection in the trade under its contract description as dog food, as it contained
2   Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or
3   Arsenic.

4       333.    Purina further breached its implied warranty of merchantability to the Indiana
5   Plaintiff, the members of the Indiana Class and the Indiana Subclass because Beneful was not
6   adequately contained, packaged, and labeled.  The directions and labeling that accompanied
7   Beneful did not warn the Indiana Plaintiff, the members of the Indiana Class and the Indiana
8   Subclass of the dangers of feeding Beneful to their dogs.

9       334.    Purina finally breached its implied warranty of merchantability to the Indiana
10  Plaintiff, the members of the Indiana Class and the Indiana Subclass because Beneful did not
11  conform to the promises and affirmations of fact set forth on its container and label, as
12  described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"
13  did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers'
14  satisfaction was not guaranteed.

15      335.    The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass
16  were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the
17  amount of the difference in value between the value of the Beneful as warranted (its full
18  purchase prices) and the Beneful as actually delivered ($0, because consumers would not have
19  paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead,
20  or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c)
21  for those whose dogs died from consuming Beneful, the market value of those dogs; and (d) for
22  those whose dogs died from consuming Beneful, the cost of disposing of their remains.

23      336.    Within a reasonable time after their discovery of Purina's breaches, the Indiana
24  Plaintiff gave notice of the breaches of the implied warranty of merchantability on behalf of
25  herself, the Indiana Class and the Indiana Subclass.  Alternatively, this pleading constitutes a
26  sufficient notice of Purina's breaches of the implied warranty of merchantability.

27

Alternatively, it was not necessary for the Indiana Plaintiff to give Purina notice of its breaches of the implied warranty of merchantability because Purina had actual notice of its breaches of warranty as to the Indiana Plaintiff, the Indiana Class and the Indiana Subclass.

## COUNT 30

### Asserted on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass
### (Violation of Indiana's Deceptive Consumer Sale Act ("IDCSA"), Ind.
### Code § 24-5-0.5, *et seq.*)

337.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

338.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

339.    The Indiana Plaintiff and the members of the Indiana Class and the Indiana Subclass are "persons" within the meaning of Ind. Code § 24-5-.0.5-2(a)(2).

340.    Purina is a "supplier" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

341.    The sale of Beneful to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass constituted a "consumer transaction" within the meaning of Ind. Code § 24-5-0.5-2(a)(1), and Purina's actions as set forth herein occurred in the conduct of trade or commerce.

342.    The IDCSA prohibits a supplier from committing an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.  Ind. Code § 24-5-0.5-3(a).  The following acts and representations as to the subject matter of a consumer transaction by a supplier, *inter alia*, constitute deceptive acts under the IDCSA: (1) "That such subject of a consumer transaction has … performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have," and (2) "That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not."  Ind. Code §§ 24-5-0.5-3(b)(1) & (2).

343.     By marketing and selling Beneful containing Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, as described in detail, *supra,* Purina engaged in unfair, abusive and deceptive acts, omissions and practices prohibited by IDCSA, including:  representing that the Beneful had characteristics, benefits and qualities (safe, healthy dog food) which it did not have when it knew or reasonably should have known that it did not; and representing that it was of a particular standard, quality, and grade (safe, healthy dog food) when it was not when it knew or reasonably should have known that it was not; and knowingly failing to disclose the presence of Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic.

344.     Pursuant to Ind. Code § 24-5-0.5-5(a), by letter dated May 15, 2015, the Indiana Plaintiff gave Purina written notice, on her own behalf, on behalf of the Indiana Class and the Indiana Subclass, of the nature of Purina's deceptive acts and the actual damages suffered from those acts.  By letter dated May 18, 2015, Purina refused to make a cure, making Purina's deceptive acts uncured under the IDCSA.  Purina's deceptive acts are also incurable, because they were engaged in by Purina as a part of a scheme, artifice, or device with an intent to defraud or mislead in that Purina was aware that Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, yet it continued to market and sell Beneful as being "healthy," offering "great nutrition," and promoting "healthy growth."

345.     The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass relied upon Purina's uncured and incurable deceptive acts in purchasing Beneful.  Purina's conduct in the sale and marketing of Beneful was uniform with respect to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass, such that reliance can be determined on a class-wide basis.  Indeed, had Purina not represented that it was safe, healthy food or had it disclosed the truth about Beneful, it can be presumed that any reasonable consumer, including the Indiana Plaintiff and the members of the Indiana Class, would not have

purchased Beneful, and, therefore, that all of them relied upon Purina's uncured and incurable deceptive acts.

346.    As a direct and proximate cause of Purina's violations of the IDCSA, the Indiana Plaintiff and other members of the Indiana Class have suffered injury in fact and/or actual damages.

347.    Pursuant to Ind. Code § 24-5-0.5-4(a), the Indiana Plaintiff and the members of the Class are entitled to recover the following damages from Purina: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.  Because Purina's deceptive acts were willful, the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass are entitled to have their damages increased by the Court in an amount of up to three times their actual damages.  Ind. Code § 24-5-0.5-4(a)(1). The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass are also entitled to recover from Purina their reasonable attorney's fees pursuant to Ind. Code § 24-5-0.5-4(a).

## COUNT 31
**Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**
**(Negligence)**

348.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

349.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

350.     The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass commenced their negligence claim within two years of when they knew or, in the exercise of ordinary diligence, could have discovered that they had suffered injuries as a result of Purina's negligence.

351.     Purina owed a duty of reasonable care to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass to provide dog food that was safe for consumption by dogs, free from excessive amounts of toxins with harmful effects.

352.     Purina breached this duty by designing, manufacturing, marketing and selling Beneful, which contained excessive amounts of harmful toxins, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass of Beneful's dangers on its packaging. Such conduct by Purina was negligent because it did not reflect the level of care that an ordinarily prudent and reasonable person in Purina's place would have given under the same or similar circumstances.

353.     Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in their injury and death.   Such injury and death to the dogs constituted property damage to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

354.     As a proximate result of Purina's negligent acts alleged herein, the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses associated therewith.

**COUNT 32**

**Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**
**(Strict Products Liability – Ind. Code § 34-20-1, et seq.)**

355.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

356.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

357.    The Indiana Plaintiff, the Indiana Class and the Indiana Subclass' strict products liability claim was commenced within two years of when they knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of Beneful, a defective product manufactured and put into the stream of commerce by Purina.

358.    Purina engaged in the business of selling Beneful. Purina designed, manufactured, marketed and sold Beneful.  Purina put Beneful into the steam of commerce. Beneful contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead.

359.    At the time Beneful was conveyed to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass, it was in a condition not contemplated by reasonable persons among those considered expected users and consumers of the product and was unreasonably dangerous to the expected users and consumers when used in reasonably expectable ways of handling or consumption because of the presence of Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic.  Beneful was, therefore, defective.

360.    Beneful was also defective because Purina failed to properly package or label Beneful to give reasonable warnings of danger about the product or to give reasonably complete instructions on the proper use of the product, when Purina, by exercising reasonable diligence, could have made such warnings or instructions available to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass.

361.    The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass are all in the class of persons that Purina should have reasonably foreseen as being subject to the harm caused by the defective condition of Beneful.

362.    The defective condition of Beneful, and lack of adequate warnings or instructions, existed at the time the Beneful left Purina's control.

363.    Beneful came in sealed packages, and it did not change from the time it left Purina's possession, through the time it arrived in stores to be sold to consumers and consumers bought and took possession of it.

364.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, and related expenses, constituting property damage to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

365.    Accordingly, Purina is strictly liable for these damages proximately caused to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass by its defective and unreasonably dangerous product.

## COUNT 33
**Asserted Against Purina on Behalf of the Indiana Plaintiff, the Indiana Class and the Indiana Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

366.    The Indiana Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

367.    The Indiana Plaintiff brings this claim on behalf of herself, the Indiana Class and the Indiana Subclass.

368.    The Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass purchased Beneful, which was defective, not merchantable, and unreasonably dangerous and therefore had no value to them.

369.     Purina holds money, namely the gross revenues it derived from its sale of Beneful to, and at the expense of, the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass, which in equity and good conscience belongs to the Indiana Plaintiff, the members of the Indiana Class and the Indiana Subclass.

370.     Based upon assumpit/money had and received unjust enrichment/restitution, the Indiana Plaintiff , the members of the Indiana Class and the Indiana Subclass are entitled to recover the full amount of all gross revenue derived by Purina from the sale of Beneful to them.

**F.     KANSAS CAUSES OF ACTION**

<u>**COUNT 34**</u>
**Asserted Against Purina on Behalf of the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
<u>**(Breach of Express Warranty)**</u>

371.     The Kansas Plaintiff and the Kansas Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

372.     The Kansas Plaintiff brings this action on behalf of herself, the Kansas Class and the Kansas Subclass.

373.     Purina constitutes a "merchant" and a "seller" in connection with its sales of Beneful, as those terms are defined in the Kansas Uniform Commercial Code.  Further, the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members constitute "buyers" in connection with their purchases of Beneful from Purina, as that term is defined in the Kansas Uniform Commercial Code.  Further, Beneful constitutes "goods," as that term is defined in the Kansas Uniform Commercial Code. As these are consumer transactions, no direct contractual relationship is required between Purina and Kansas Class members.

374.     By affirmations of fact, promises and descriptions made on Beneful's packaging and which relate to such goods, Purina provided the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass with written express warranties before or at the time of purchase, including the following:

o)      "Satisfaction Guaranteed.   If you're not happy, we're not happy. Complete satisfaction or your money back…."

p)      "At Purina, we're unconditionally devoted to pets.   We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

q)      "100% Complete and Balanced Nutrition";

r)      "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…."

s)      "Healthy"

375.   These affirmations of facts and promises made by Purina to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members related to Beneful and became part of the bases of the bargains between them and Purina and thereby created express warranties that Beneful would conform to those affirmations and promises.   Furthermore, the aforementioned descriptions of Beneful were part of the bases of the bargains for the purchases of Beneful between Purina and the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members and they created an express warranty that the goods would conform to those descriptions.   As previously noted, because Beneful contained Industrial Grade Glycols, which have not been approved for use in food, Mycotoxins, Lead, or Arsenic, it did not conform to the affirmations, promises and descriptions previously mentioned, resulting in breaches of express warranties.

376.   Beneful was marketed directly to consumers by Purina, came in sealed packages, and did not change from the time it left Purina's possession until it was purchased by consumers in stores.

377. The Kansas Plaintiff has complied with all conditions precedent to filing this breach of warranty claim, including providing timely notice of these breaches of warranty to Purina on behalf of herself, the Kansas Class and the Kansas Subclass within a reasonable time after discovering that Beneful might have proximately caused the damages described herein. Such notice was reasonable based on the circumstances of this case, including the fact Purina has engaged in a campaign to prevent other affected consumers from publicly discussing similar claims while at the same time expressly denying any relationship between the consumption of Beneful and the injuries here at issue. Alternatively, this pleading constitutes adequate notice on behalf of the Kansas Plaintiff, the Kansas Class and the Kansas Subclass. Alternatively, notice need not have been given to Purina because it had actual notice of its breaches of warranty as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass.

378. As a proximate result of Purina's breach of express warranties, the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass have suffered actual damages as follows: (a) the difference in value between the value of the Beneful as expressly warranted (the full purchase prices) and the value of the Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); i.e., the full purchase price of the Beneful; (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful. The Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass cannot return Beneful to Purina for repair as the subject defect is irreparable.

**COUNT 35**
**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Breach of the Implied Warranty of Merchantability, K.S.A. § 84-2-314)**

379.    The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

380.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass, as those terms are defined in the Kansas Uniform Commercial Code.  Further, the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members constituted "buyers" as that term is defined in the Kansas Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is defined in the Kansas Uniform Commercial Code.  As this is a consumer transaction, no direct contractual relationship is required between the Kansas Plaintiff, the Kansas Class, the Kansas Subclass members and Purina.

381.    As part of the sales to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass, Purina impliedly warranted that Beneful was merchantable.  Among other things, to be merchantable,  Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled, and conform to the promises or affirmations of fact made on the containers or labels.

382.    Beneful breached the warranty of implied merchantability initially because it would not pass without objection in the trade under the contract description.  Specifically, dog food that is unsafe for consumption for dogs and that is highly likely to cause illness and death will not pass without objection in the trade under the description of dog food, nor could such a

defect reasonably be discovered by any reasonable form of examination prior to use or consumption.  In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, which is safely feeding dogs. Further, Purina breached the implied warranty of merchantability because Beneful was not adequately contained, packaged or labeled because it failed to warn of the dangers of its consumption by dogs.  The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members' reasonable expectations as to the function of such products was that they would not injure or kill their dogs once consumed, or would not contain or have a probability, likelihood or tendency to Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic.

383.   At the time of sale to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass and throughout the Class Period, Purina made promises and affirmations of fact on the packaging of Beneful to the effect that Beneful was safe for consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

384.   However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed. For the reasons set forth above, Beneful was defective, such defect was present when Beneful left Purina's control, and such defect caused the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members' injuries.

385.   Within a reasonable time after the discovery of Purina's breach of the implied warranty and the possible link of Beneful to the illness and death of their pet, the Kansas

Plaintiff gave notice of such breaches on behalf of herself, the Kansas Class and the Kansas Subclass. Alternatively, this pleading constitutes adequate notice on behalf of the Kansas Plaintiff, the Kansas Class and the Kansas Subclass. Alternatively, no notice was required because Purina was already aware of its breaches as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass.

386.    As a proximate result of this breach of implied warranty by Purina, the Kansas Plaintiff, the Kansas Class and the Kansas Subclass have been damaged in the following manner: (a) by the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the market value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

## COUNT 36
**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

387.    The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

388.    The Kansas Plaintiff brings this claim on behalf of herself, the Kansas Class and the Kansas Subclass.

389.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

390.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

391.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

392.     The Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

393.     Pursuant to 15 U.S.C. § 2310(e), the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass are entitled to bring this action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Kansas Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, the Kansas Plaintiff already gave any required notice on behalf of herself, the Kansas Class and the Kansas Subclass by letter dated May 13, 2015.

394.     In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled, and (d) conformed to the promises and affirmations of fact set forth on its container and label.

395.     Purina is liable to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

396.     Purina initially breached the implied warranty of merchantability as to the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food. Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

397.   Purina further breached its implied warranty of merchantability to the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

398.   Purina further breached its implied warranty of merchantability to the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass of the dangers of feeding Beneful to their dogs.

399.   Purina further breached its implied warranty of merchantability to the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

400.   Pursuant to 15 U.S.C. § 2310(d)(1), the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

401.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Kansas Plaintiff, the members of the Kansas Class and the Kansas Subclass in connection with the commencement and prosecution of this action.

## COUNT 37
**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Negligence)**

402.    The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

403.    Purina owed a duty of care to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass to provide pet food that was safe for consumption by dogs, free from substances, including Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic that could have harmful effects if consumed.

404.    Purina breached this duty by selling Beneful, which was not safe and contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Kansas Plaintiff, the Kansas Class and the Kansas Subclass of such dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

405.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Kansas Plaintiff, the Kansas Class and the Kansas Subclass, would not recognize the risk; and that consumption of Beneful by dogs would

foreseeably result in injury and death to those dogs, constituting property damage to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

406.     As a proximate result of Purina's negligent acts alleged herein, the Kansas Plaintiff, the Kansas Class and the Kansas Subclass suffered injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

## COUNT 38
**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Strict Products Liability)**

407.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

408.     Purina designed, manufactured, distributed and sold Beneful, which was unsafe because it contained toxins and had other harmful effects as alleged in the factual section above.

409.     The existence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition.  The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

410.     These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

411.     Beneful came in sealed packages, and both the product and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

412.     The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Kansas Plaintiff and the Kansas Class beyond and in addition to their damages from purchasing the worthless Beneful.

413.     Accordingly, Purina is strictly liable for the damages caused to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass by the consumption of the unreasonably dangerous Beneful, specifically the illness and deaths of their dogs and the expenses incurred therewith.

**COUNT 39**
**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

414.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

415.     This claim in quasi-contract is based upon principles of restitution.  A person who has been unjustly enriched at the expense of another is required to make restitution to the other, and will restore to the person entitled thereto that which in equity and good conscience belongs to another.

416.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members conferred a benefit on Purina by purchasing Beneful in the form of the gross revenues Purina derived from such sales, which they would not have conferred had the true facts detailed above been disclosed by Purina.

417.     At the expense of the Kansas Plaintiff, the Kansas Class and the Kansas Subclass, Purina received, appreciated and accepted benefits in the form of the gross revenues Purina derived from sales of Beneful to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass members.

418.     For the reasons detailed above, Purina has profited and accepted such benefits under circumstances where it engaged in improper, deceitful or misleading conduct that would

make it inequitable and unjust for Purina to retain such benefit without repaying the value it received from the sales of such products.

419.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members are entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to them.

**COUNT 40**

**Asserted as to the Kansas Plaintiff, the Kansas Class and the Kansas Subclass**
**(Violation of the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-626, *et seq.*)**

420.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

421.     The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members were actual purchasers and users of Beneful products that were introduced into the stream of commerce, manufactured, distributed and sold by Purina throughout Kansas and the United States.  Purina is a "supplier" for purposes of this statute

422.     As set forth in detail above Purina disseminated unhealthy and dangerous Beneful dog food despite making numerous uniform material representations about the guaranteed and healthy nature of the Product, and it omitted and willfully failed to disclose material facts to the contrary despite having learned of the potential presence of dangerous substances in Beneful, including Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, prior to such sales.  In so doing, Purina engaged in and/or caused others to engage in deceptive or unconscionable acts in connection with consumer transactions.  In violation of the following provisions of K.S.A. § 50-626 and -627, Purina, either knowingly or with reason to know, misleadingly claimed that Beneful:

> "(b)(1)(A)     has sponsorship, approval, characteristics, ingredients, uses or benefits that they do not have;

1    "(D)       are of a particular standard, quality, grade, style or model, if they

2              are of another which differs materially from the representation;

3    "(F)       has uses, benefits or characteristics unless [Purina] relied upon

4              and possesses a reasonable basis for making such representation;

5              or

6    "(G)       use, benefit or characteristic of property has been proven or

7              otherwise substantiated unless [Purina] relied upon and possesses

8              the type and amount of proof or substantiation represented to

9              exist";

10   (2)        willfully used, in any written representation, an exaggeration,

11             falsehood, innuendo or ambiguity as to a material fact; and

12   (3)        willfully failed to state a material fact, or the willfully concealed,

13             suppressed or omitted a material fact.

14       423.   These deceptive trade practices occurred in the course of Purina's business.

15       424.   The Kansas Plaintiff, the Kansas Class and the Kansas Subclass members would

16   not have purchased Beneful products at the prices that they did, if at all, but for Purina's

17   wrongful failure to disclose the tendency of those products to contain Industrial Grade Glycols,

18   which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

19       425.   As a result of the commission of these deceptive trade practices and failure to

20   disclose the above material omitted facts by Purina, the Kansas Plaintiff, the Kansas Class and

21   the Kansas Subclass members were injured and suffered actual damages or economic losses,

22   which include (a) the difference in value between the value of the Beneful as expressly

23   warranted (the full purchase prices) and the value of the Beneful as actually accepted and

24   delivered ($0, because it was unsafe and unfit for its ordinary purpose and thus reduced or

25   eliminated its value); i.e., the full purchase price of the Beneful; (b) the veterinarian bills

26   incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by

27

consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful.

## G.     MASSACHUSETTS CAUSES OF ACTION

### <u>COUNT 41</u>
**Asserted as to the Massachusetts Plaintiff, the Massachusetts Class
and the Massachusetts Subclass
<u>(Unfair and Deceptive Conduct in Violation of M.G.L., c. 93A, § 2)</u>**

426.     The Massachusetts Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

427.     This Count is brought by the Massachusetts Plaintiff on behalf of herself, the Massachusetts Class and the Massachusetts Subclass.

428.     Purina's conduct, as alleged herein constituted unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of M.G.L., c. 93A, § 2, and the regulations promulgated thereunder, including, without limitation, the following:

     a)    940 C.M.R. § 3.02 ( prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

     b)    940 C.M.R. § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

     c)    940 C.M.R. § 3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through

pictorial representations or in any other manner, as to the product being offered for sale");

d)  940 C.M.R. § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty");

e)  940 C.M.R. § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction"); and

f)  940 C.M.R. § 3.16(3) (providing that an act or practice violates c. 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection").

429.  Purina's unlawful conduct, in violation of c. 93A, § 2 and the regulations referenced in the preceding paragraph, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing and advertising for Beneful, including representing that Beneful offers "100% complete and balanced nutrition," that is "healthy" for dogs and that it promotes dogs' "healthy growth"; (b) the fact that, contrary to Purina's representations of Beneful as healthy and safe for dogs, Purina omitted that Beneful instead contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic; (c)  Beneful was hazardous and toxic to dogs and caused the Massachusetts Plaintiff's, the Massachusetts Class and the Massachusetts

Subclass members' dogs to become ill and, in some cases, die; and (d) its breach of the implied warranty of merchantability, all as alleged in greater detail herein.

430.    Massachusetts laws provide protection to purchasers of animal food from unfair, deceptive and unconscionable practices in its commercial feed statute.  M.G.L., c. 128, §§ 56 (prohibiting adulteration and misbranding of commercial feed); 54 (defining adulteration); and 55 (misbranding).

431.    The commercial feed statute provides that "[n]o person shall (a) manufacture or distribute any commercial feed that is adulterated or misbranded; (b) adulterate or misbrand any commercial feed."  M.G.L. c. 128, § 56.  A commercial feed shall be deemed to be adulterated if: "(1) it bears or contains any poisonous or deleterious substance which may render it injurious to health; (2) it bears or contains any added poisonous, added deleterious or added non-nutritive substance which is unsafe within the meaning of section four hundred and nine of the Federal Food, Drug and Cosmetic Act, other than one which is (i) a pesticide chemical in or on a raw agricultural commodity; or (ii) a food additive"; or "(7) its composition or quality falls below or differs from that which it is purported or represented to possess by its labeling."  M.G.L. c. 128, § 54.  Commercial feed is misbranded when, among other things, "its labeling is false or misleading in any particular manner."  M.G.L. c. 128, § 55.

432.    Beneful contains poisonous, deleterious or non-nutritive substances which injured the dogs of the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members, and the composition or quality of Beneful falls below what is purported or represented by its label, as set forth above.

433.    Further, Beneful is misbranded in that its labeling is false and misleading for the reasons set forth in detail herein.

434.    Accordingly, Purina's conduct, as alleged in detail herein, violated M.G.L. c. 128, §§ 55 and 56.  Violations of these provisions, which are designed to protect consumers, constitute *per se* violations of c. 93A § 2, pursuant to 940 C.M.R. § 3.16(3).

435.    The Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members have been injured by Purina's unfair and deceptive conduct, as alleged herein.

436.    The Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members suffered actual damages, which they seek to recover in at least the following categories:

a)    Veterinary bills incurred as a result of their dogs' illnesses or injuries caused by consumption of Beneful;

b)    The costs of disposing of the remains of their dogs killed by consumption of Beneful;

c)    The values of their dogs killed by consumption of Beneful; and

d)    The amounts they paid for Beneful: the difference between the value of Beneful as represented (the purchase price) and the value of Beneful as actually accepted and delivered (which was $-0-, because of the unsafe and hazardous nature of the product).

437.    Purina's unfair and deceptive acts or practices, as alleged herein, were willful or knowing violations of M.G.L. c. 93A, § 2, within the meaning of M.G.L. c. 93A, § 9(3).

438.    On May 4, 2015, Massachusetts Class and Subclass member Paul Malcolm served Purina with a demand letter, in accordance with M.G.L. c. 93A, § 9(3).  The demand letter explained and described the nature of the unfair or deceptive acts or practices, the injuries suffered by the members of the Massachusetts Class and the Massachusetts Subclass, as well as demanding compensation for those injuries and other relief.

439.    Purina failed to tender a reasonable offer of relief in response to the demand letter.

440.     Pursuant to M.G.L. c. 93A, §§ 9(3) and 9(4), the Massachusetts Plaintiff and each of the members of the Massachusetts Class and the Massachusetts Subclass are entitled to recover their actual damages, as set forth above (or statutory damages of $25, whichever is greater), double or treble their actual damages, plus their reasonable attorneys' fees and the costs of this action, and injunctive relief directing Purina to stop engaging in the unfair and deceptive acts and practices alleged herein.

**COUNT 42**
**Asserted as to the Massachusetts Plaintiff, the Massachusetts Class and**
**the Massachusetts Subclass**
**(Breach of the Implied Warranty of Merchantability**
**M.G.L. c. 106 § 2-314)**

441.     The Massachusetts Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

442.     The Massachusetts Plaintiff brings this claim on her own behalf and on behalf of the Massachusetts Class and the Massachusetts Subclass.

443.     Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass, as those terms are defined in the Massachusetts Uniform Commercial Code.  Further, the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members constituted "buyers" as that term is defined in the Massachusetts Uniform Commercial Code. Beneful, itself, constituted "goods," as that term is defined in the Massachusetts Uniform Commercial Code.

444.     As part of the sales to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass, Purina impliedly warranted that Beneful was merchantable. Among other things, to be merchantable, Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled as the agreements may have required, and conform to the promises or affirmations of fact made on the containers or labels.

445.   Purina breached the implied warranty of merchantability as to Beneful initially because Beneful would not pass without objection in the trade under the contract description. Specifically, dog food that contains Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, and/or is unsafe for consumption for dogs and that is highly likely to cause illness and death will not pass without objection in the trade under the description of dog food.  In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, safely feeding dogs. Further, Purina breached the implied warranty of merchantability because Beneful was not adequately labeled as the agreements might have required because it failed to warn of the dangers of its consumption by dogs.

446.   At the time of sale throughout the Class Period, Purina made promises and affirmations of fact on the containers and labels of Beneful to the effect that Beneful was safe for consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

447.   However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.

448.   Within a reasonable time after the discovery of Purina's breach, Massachusetts Class and Subclass member Paul Malcolm gave notice of the breaches on behalf of himself, the Massachusetts Class and the Massachusetts Subclass.  Alternatively, this pleading constitutes sufficient notice of breach. Alternatively, to the extent it is determined that notice of the breaches was not given, Purina did not suffer any prejudice thereby.

449.   As a proximate result of this breach of warranty by Purina, the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass have been damaged in the

following ways: (a) the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the dogs' remains.

## COUNT 43
### Asserted as to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass
### (Breach of Express Warranty
### M.G.L. c. 106 § 2-313)

450.   The Massachusetts Plaintiff incorporates herein all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

451.   The Massachusetts Plaintiff brings this claim on behalf of herself, the Massachusetts Class and the Massachusetts Subclass.

452.   Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass, as those terms are defined in the Massachusetts Uniform Commercial Code.  Further, the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members constituted "buyers" as that term is defined in the Massachusetts Uniform Commercial Code. Beneful, itself, constituted "goods," as that term is defined in the Massachusetts Uniform Commercial Code.

453.   Under section 2-313 of the Uniform Commercial Code, the statements on Purina's containers and labels created express warranties, including that Beneful was safe for consumption by pets. Said statements include, but are not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

454.   The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

455.   Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful that created an express warranty that Beneful would conform to the description.

456.   Beneful was not safe for pets to consume and caused pets to become ill and/or die.  The unsafe nature of the pet food constituted a breach of these express warranties.

457.   The Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members were injured as a direct and proximate result of Purina's aforementioned breaches as follows: (a) the difference in value between the value of the Beneful as warranted (its full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose dogs died from consumption of Beneful, the value of those dogs; and (d) for those whose dogs died from consumption of Beneful, the cost of disposing of their remains.

458.   Within a reasonable time after the discovery of Purina's breaches, Massachusetts Class and Subclass member Paul Malcolm gave notice of the breach  on behalf of the Massachusetts Class and the Massachusetts Subclass.   Alternatively, this pleading constitutes a sufficient notice of breach.  Alternatively, to the extent it is determined that notice of the breach was not given, Purina did not suffer any prejudice thereby.

459.   The Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass demand judgment against Purina for damages, as set forth above, plus interest, costs and such additional relief as the Court may deem appropriate or to which the

Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members may be entitled.

## COUNT 44

**Asserted Against Purina on Behalf of the Massachusetts**
**Plaintiff, the Massachusetts Class and the Massachusetts Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

460.     The Massachusetts Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

461.     The Massachusetts Plaintiff brings this claim on behalf of herself, the Massachusetts Class and the Massachusetts Subclass.

462.     At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

463.     Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

464.     Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

465.     The Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).   They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

466.     Pursuant to 15 U.S.C. § 2310(e), the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Massachusetts Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.   However, Massachusetts Class and Subclass member Paul Malcolm already gave the required notice on behalf of the Massachusetts Class and the Massachusetts Subclass by letter dated May 4, 2015.

467.     In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.   As a part of

the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and label. M.G.L. c. 106 § 2-314(d)(2) (a), (c), (e) and (f).

468. Purina is liable to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

469. Purina initially breached the implied warranty of merchantability as to Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food. Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food. In fact, Beneful has caused injury and death to thousands of dogs.

470. Purina further breached its implied warranty of merchantability to the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

471. Purina further breached its implied warranty of merchantability to the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass because Beneful was not adequately contained, packaged, and labeled. The directions and labeling that accompanied the Beneful dog food did not warn the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass of the dangers of feeding Beneful to their dogs.

472.    Purina finally breached its implied warranty of merchantability to the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

473.    Pursuant to 15 U.S.C. § 2310(d)(1), the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.  In addition, pursuant to 15 U.S.C. § 2310(d) (2), the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Massachusetts Plaintiff, the members of the Massachusetts Class and the Massachusetts Subclass in connection with the commencement and prosecution of this action.

**COUNT 45**

**Asserted Against Purina on Behalf of the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass**
**(Negligence)**

474.   The Massachusetts Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

475.   The Massachusetts Plaintiff brings this action on behalf of herself, the Massachusetts Class and the Massachusetts Subclass.

476.   Purina owed a duty of care to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

477.   Purina breached this duty by selling Beneful, which was not safe and contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass of the dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

478.   Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass, would not recognize the risk; and that consumption of Beneful by dogs would foreseeably result in injury and death to those dogs, constituting property damage to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass beyond and in addition to damage from buying the worthless Beneful.

479.   As a proximate result of Purina's negligent acts alleged herein, the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass suffered

injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

## COUNT 46
**Asserted Against Purina on Behalf of the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

480.    The Massachusetts Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

481.    The Massachusetts Plaintiff brings this action on behalf of herself, the Massachusetts Class and the Massachusetts Subclass.

482.    The Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members conferred a benefit on Purina in the form of the gross revenues Purina derived from the money they paid to purchase Beneful.

483.    Purina had an appreciation or knowledge of the benefit conferred on it by the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members.

484.    Purina accepted and retained the benefit in the amount of the gross revenues it derived from sales of Beneful to the Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass members.

485.    Purina has thereby profited by retaining the benefit under circumstances which would make it unjust for Purina to be permitted to retain the benefit.

486.    The Massachusetts Plaintiff, the Massachusetts Class and the Massachusetts Subclass are entitled to restitution of the entire amount Purina derived from its sales of Beneful to them.

**H.      MINNESOTA CAUSES OF ACTION**

<u>**COUNT 47**</u>
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
<u>**(Violation of Minnesota Uniform Deceptive Trade Practices Act,**</u>
<u>**M.S.A. § 325D.43,** *et seq).*</u>

487.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

488.    This Count is brought by the Minnesota Plaintiff on behalf of herself, the Minnesota Class and the Minnesota Subclass.

489.    Purina's conduct, as alleged herein, constituted deceptive trade practices in the course of its business in violation of M.S.A. § 325D.44, including the following types of conduct specified in § 325D.44,1:

    a)    Representing that goods or services have characteristics, ingredients, uses or benefits that they do not have (§ 325D.44,1(5));

    b)    Representing that goods are of a particular standard, quality or grade, if they are of another (§ 325D.44,1(7));

    c)    Advertising goods or services with intent not to sell them as advertised (§ 325D.44,1(9)); and

    d)    Engaging in conduct that creates a likelihood of confusion or misunderstanding (§ 325D.44, 1(13)).

490.    Purina's deceptive practices (including conduct prohibited by the provisions cited in subparagraphs (a) through (d) above), as alleged in greater detail herein, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing, promotion and advertising for Beneful, including that Beneful offers "100% complete and balanced nutrition," that is "healthy" for dogs and that it promotes dogs' "healthy growth"; (b) its omissions, contrary to Purina's representations, that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead,

or Arsenic and therefore create confusion or misunderstanding; and (b) its omission that these substances caused the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs to become ill and in some cases die.

491.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members have been damaged by Purina's deceptive trade practices, and members of the Minnesota Class and the Minnesota Subclass are likely to be damaged by Purina's deceptive trade practices.

492.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to an injunction directing Purina to: remove the false and misleading statements, representations, and depictions from its labeling, packaging, marketing, promotion and advertising for Beneful; issue corrective statements, including making full disclosure of Beneful's inclusion of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic; and otherwise cease engaging in the deceptive trade practices alleged herein.

## COUNT 48
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Violation of Minnesota Unfair Trade Practices Act, M.S.A. § 325D.09, *et seq.*)**

493.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

494.    This Count is brought by the Minnesota Plaintiff on behalf of herself, the Minnesota Class and the Minnesota Subclass.

495.    At all times relevant hereto, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members were "persons" within the meaning of M.S.A. § 325D.10(a).

496.    Purina's conduct, as alleged herein, constituted unlawful trade practices, in violation of M.S.A. § 325D.09, including conduct in violation of M.S.A. § 325D.13, in that, in

connection with the sale of Beneful, Purina knowingly misrepresented, directly or indirectly, the true quality, ingredients and origin of Beneful.

497.    Purina's unlawful trade practices (including conduct prohibited by § 325D.13), as alleged in greater detail herein, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing, promotion and advertising for Beneful, including representing that Beneful offers "100% complete and balanced nutrition," that is "healthy" for dogs and that it promotes dogs' "healthy growth";  and (b) the fact that, contrary to Purina's representations, Purina omitted that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic; and/or (c) that those substances caused the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs to become ill and, in some cases, die.

498.    As a result of Purina's unlawful trade practices, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members have suffered injury within the meaning of M.S.A. § 325D.15, which they seek to recover, consisting of at least the following:

a)    Veterinary bills incurred as a result of their dogs' illnesses or injuries caused by consumption of Beneful;

b)    The costs of disposing of their dogs killed by consumption of Beneful;

c)    In cases resulting in death caused by consumption of Beneful, the value of the dogs; and

d)    The amounts they paid for Beneful: the difference between the value of Beneful as represented (the purchase price) and the value of Beneful as actually accepted and delivered (which was $-0-, because of the unsafe and hazardous nature of the product).

499.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to recover these actual damages and injunctive relief (to, among other

things, direct Purina to cease its deceptive conduct, as alleged herein, and to issue corrective statements and advertising) pursuant to M.S.A. § 325D.15.

500.    Alternatively, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to bring an action for damages under the Minnesota Private Attorney General Statute, M.S.A. § 8.31, 3a, because this action has a public benefit.   The public benefit of this action is demonstrated by at least the following:

a)    this action seeks injunctive relief in order to stopPurina from continuing to engage in the unfair trade practices alleged herein, including to eliminate Purina's false and misleading advertising and to direct it to issue corrective statements and advertising, in an effort to protect members of the Minnesota Class and the Minnesota Subclass and members of the public;

b)    this action seeks to address a pervasive problem with an unreasonably dangerous product manufactured and sold by Purina, that is causing dogs who eat it to get sick and die.  Beneful is estimated to have caused the death and injury of over 3,000 dogs during the last few years, including the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs.  By bringing this action, the Minnesota Plaintiff hope to prevent additional dogs from suffering the same fate from consumption of Beneful;

c)    the toxic and hazardous nature of Beneful has caught the attention of the Association for Truth in Pet Food ("ATPF"), which has tested Beneful and found it to contain high risk levels of Mycotoxins and bacteria and has given Beneful a Risk Equivalent Quality Rating of 32, where anything over 20 indicates a high risk; and

d)    members of the public have been and are concerned about the risk to their dogs of consuming Beneful, as evidenced by, among other things, the thousands of complaints by dog owners about Beneful that can be found on the Internet and the hundreds of calls undersigned counsel have received from dog owners whose dogs have become ill and died from consuming Beneful.

**COUNT 49**
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Violation of Minnesota Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*)**

501.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

502.    This Count is brought by the Minnesota Plaintiff on behalf of herself, the Minnesota Class and the Minnesota Subclass.

503.    At all times relevant hereto, Purina was a "person" within the meaning of M.S.A. § 325F.68(3).

504.    Purina's conduct, as alleged herein, constituted unlawful practices, in violation of M.S.A.§ 325F.69,1, including fraud, false pretense, false promises, misrepresentations, misleading statements, and/or deceptive practices, with the intent that others rely thereon, in connection with the sale of Beneful to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members.

505.    Purina's unlawful practices (including fraud, misrepresentation, and deceptive practices prohibited by § 325F.69,1)), as alleged in greater detail herein, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing, promotion and advertising for Beneful,  including representing that Beneful offers "100% complete and balanced nutrition," that is "healthy" for dogs and that it promotes dogs' "healthy growth";  (b) its omission that Beneful contained Industrial Grade

Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic; and/or (c) its omission that these substances caused the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs to become ill and in some cases die.

506. As a result of Purina's fraud, misrepresentation and deceptive practices, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members have suffered injury within the meaning of M.S.A. § 8.31,3a, which they seek to recover, consisting of at least the following:

    a)    Veterinary bills incurred as a result of their dogs' illnesses or injuries caused by consumption of Beneful;

    b)    The costs of disposing of their dogs killed by consumption of Beneful;

    c)    In cases resulting in death caused by consumption of Beneful, the value of the dogs; and

    d)    The amounts they paid for Beneful: the difference between the value of Beneful as represented (the purchase price) and the value of Beneful as actually accepted and delivered (which was $-0-, because of the unsafe and hazardous nature of the product).

507. The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members also seek injunctive relief pursuant to M.S.A. § 8.31,3a, directing Purina to cease the unlawful practices alleged herein and to issue corrective statements and advertising.

508. The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to bring an action for damages and injunctive under M.S.A. § 8.31, 3a, because this action has a public benefit.  The public benefit of this action is demonstrated by at least the following:

    a)    this action seeks injunctive relief in order to stop Purina from continuing to engage in the fraud, false pretense, false promises, misrepresentations, misleading statements, and/or deceptive practices alleged herein, and to

issue corrective statements and advertising, in an effort to protect members of the Minnesota Class and the Minnesota Subclass and members of the public;

b)      this action seeks to address a pervasive problem with an unreasonably dangerous product manufactured and sold by Purina, that is causing dogs who eat it to get sick and die.  Beneful is estimated to have caused the death and injury of over 3,000 dogs during the last few years, including the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs.  By bringing this action, the Minnesota Plaintiff hope to prevent additional dogs from suffering the same fate from consumption of Beneful;

c)      the toxic and hazardous nature of Beneful has caught the attention of the Association for Truth in Pet Food ("ATPF"), which hastested Beneful and found it to contain high risk levels of Mycotoxins and bacteria and has given Beneful a Risk Equivalent Quality Rating of 32, where anything over 20 indicates a high risk; and

d)      members of the public have been and are concerned about the risk to their dogs of consuming Beneful, as evidenced by, among other things, the thousands of complaints by dog owners about Beneful that can be found on the Internet and the hundreds of calls undersigned counsel have received from dog owners whose dogs have become ill and died from consuming Beneful.

**COUNT 50**

**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Violation of Minnesota False Statement in Advertisement Act, M.S.A. § 325F.67)**

509.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

510.    This Count is brought by the Minnesota Plaintiff on behalf of herself, the Minnesota Class and the Minnesota Subclass.

511.    Purina's conduct, as alleged herein, constituted the making, dissemination or publishing of advertisements containing material assertions, representations or statements of fact that were untrue, deceptive or misleading, in connection with the promotion, marketing and sale of Beneful to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members, in violation of M.S.A.§ 325F.67.

512.    Purina's untrue, misleading and deceptive statements, as alleged in greater detail herein, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing, promotion and advertising for Beneful, including representing that Beneful offers "100% complete and balanced nutrition," that it is "healthy" for dogs and that it promotes dogs' "healthy growth";  and (b) the fact that, contrary to Purina's representations, Beneful was hazardous and toxic to dogs, containing Industrial Grade Glycol, Mycotoxins, Arsenic or Lead and caused the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs to become ill and in some cases die.

513.    As a result of Purina's untrue, misleading and deceptive statements, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members have suffered injury within the meaning of M.S.A. § 8.31,3a, which they seek to recover, consisting of at least the following:

   a)    Veterinary bills incurred as a result of their dogs' illnesses or injuries caused by consumption of Beneful;

b)      The costs of disposing of their dogs killed by consumption of Beneful;

c)      In cases resulting in death caused by consumption of Beneful, the value of the dogs; and

d)      The amounts they paid for Beneful: the difference between the value of Beneful as represented (the purchase price) and the value of Beneful as actually accepted and delivered (which was $-0-, because of the unsafe and hazardous nature of the product).

514.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members also seek injunctive relief pursuant to M.S.A. § 8.31,3a, directing Purina to stop making the untrue, misleading and deceptive statements alleged herein and to issue corrective statements and advertising.

515.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to bring an action for damages and injunctive under M.S.A. § 8.31, 3a, because this action has a public benefit.  The public benefit of this action is demonstrated by at least the following:

a)      this action seeks injunctive relief in order to stop Purina from continuing to make the untrue, misleading and deceptive statements alleged herein, and to issue corrective statements and advertising, in an effort to protect members of the Minnesota Class, the Minnesota Subclass and members of the public;

b)      this action seeks to address a pervasive problem with an unreasonably dangerous product manufactured and sold by Purina, that is causing dogs who eat it to get sick and die.  Beneful is estimated to have caused the death and injury of over 3,000 dogs during the last few years, including the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members' dogs.  By bringing this action, the Minnesota Plaintiff hope to

1    prevent additional dogs from suffering the same fate from consumption

2    of Beneful;

3    c)    the toxic and hazardous nature of Beneful has caught the attention of the

4    Association for Truth in Pet Food ("ATPF"), which has tested Beneful

5    and found it to contain high risk levels of Mycotoxins and bacteria and

6    has given Beneful a Risk Equivalent Quality Rating of 32, where

7    anything over 20 indicates a high risk; and

8    d)    members of the public have been and are concerned about the risk to

9    their dogs of consuming Beneful, as evidenced by, among other things,

10    the thousands of complaints by dog owners about Beneful that can be

11    found on the Internet and the hundreds of calls undersigned counsel have

12    received from dog owners whose dogs have become ill and died from

13    consuming Beneful.

## COUNT 51
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**

**(Breach of the Implied Warranty of Merchantability M.S.A. § 336.2-314)**

516.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

517.    The Minnesota Plaintiff brings this claim on her own behalf and on behalf of the Minnesota Class and the Minnesota Subclass.

518.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass, as those terms are defined in the Minnesota Uniform Commercial Code.   Further, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members constituted "buyers" as that term is defined in the Minnesota Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is defined in the Minnesota Uniform Commercial Code.

519.    As part of the sales to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass, Purina impliedly warranted that Beneful was merchantable.  Among other things, to be merchantable, Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled as the agreements may have required, and conform to the promises or affirmations of fact made on the containers or labels.

520.    Purina breached the implied warranty of merchantability as to Beneful initially because Beneful would not pass without objection in the trade under the contract description. Specifically, dog food that is unsafe for consumption for dogs and that is highly likely to cause illness and death will not pass without objection in the trade under the description of dog food. In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, safely feeding dogs.  Further, Purina breached the implied warranty of merchantability because Beneful was not adequately labeled as the agreements might have required because it failed to warn of the dangers of its consumption by dogs.

521.    At the time of sale throughout the Class Period, Purina made promises and affirmations of fact on the containers and labels of Beneful to the effect that Beneful was safe for consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

522.    However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.

523.    Within a reasonable time after the discovery of Purina's breaches, the Minnesota Plaintiff gave notice of the breaches on behalf of herself, the Minnesota Class and the

Minnesota Subclass. Alternatively, this pleading constitutes sufficient notice of breach. Alternatively, notice was not required because Purina already had specific knowledge of its breaches of warranty as to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass.

524.    As a proximate result of this breach of warranty by Purina, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass have been damaged  in the following ways: (a) the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

## COUNT 52
### Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass
### (Breach of Express Warranty M.S.A. § 336.2-313)

525.    The Minnesota Plaintiff incorporates herein all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

526.    The Minnesota Plaintiff brings this claim on behalf of herself and on behalf of the Minnesota Class and the Minnesota Subclass.

527.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass, as those terms are defined in the Minnesota Uniform Commercial Code.  Further, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members constituted "buyers" as that term is defined in the Minnesota Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is defined in the Minnesota Uniform Commercial Code.

528.    Under section 2-313 of the Uniform Commercial Code, the statements on Purina's containers and labels created express warranties, including that Beneful was safe for

consumption by pets. Said statements include, but are not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

529.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis of the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

530.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful that created an express warranty that Beneful would conform to the description.

531.    Beneful was not safe for pets to consume and caused pets to become ill and/or die.  The unsafe nature of the pet food constituted a breach of these express warranties.

532.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members were injured as a direct and proximate result of Purina's aforementioned breaches as follows: (a) the difference in value between the value of the Beneful as warranted (its full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose dogs died from consumption of Beneful, the value of those dogs; and (d) for those whose dogs died from consumption of Beneful, the cost of disposing of their remains.

533.    Within a reasonable time after the discovery of Purina's breaches, the Minnesota Plaintiff gave notice of the breach on her own behalf and on behalf of the Minnesota Class and the Minnesota Subclass.  Alternatively, this pleading constitutes a sufficient notice of breach. Alternatively, notice was not required because Purina already had specific knowledge of its breaches of warranty as to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass.

534.    The Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass demand judgment against Purina for damages, as set forth above, plus interest, costs and such additional relief as the Court may deem appropriate or to which the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members may be entitled.

**COUNT 53**
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. Seq.* ("MMWA"))**

535.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

536.    The Minnesota Plaintiff brings this claim on behalf of herself, the Minnesota Class and the Minnesota Subclass.

537.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

538.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

539.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

540.    The Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

541.    Pursuant to 15 U.S.C. § 2310(e), the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Minnesota Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, the Minnesota Plaintiff Porter already gave the required notice on behalf of herself, the Minnesota Class and the Minnesota Subclass by letter dated May 13, 2015.

542.    In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and label.  M.S.A. § 336.2-314(2) (a), (c), (e) and (f).

543.    Purina is liable to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

544.    Purina initially breached the implied warranty of merchantability as to the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass because Beneful was not fit for the ordinary purposes for which it is used – a safe, healthy dog food.  Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

545.    Purina further breached its implied warranty of merchantability to the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

546.    Purina further breached its implied warranty of merchantability to the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass of the dangers of feeding Beneful to their dogs.

547.    Purina finally breached its implied warranty of merchantability to the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

548.    Pursuant to 15 U.S.C. § 2310(d)(1), the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between Beneful as warranted (the full purchase price) and Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Minnesota Plaintiff, the members of the Minnesota Class and the Minnesota Subclass in connection with the commencement and prosecution of this action.

## COUNT 54
**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Negligence)**

549.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

550.    The Minnesota Plaintiff brings this action on behalf of herself, the Minnesota Class and the Minnesota Subclass.

551.    Purina owed a duty of care to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

552.    Purina breached this duty by selling Beneful, which was not safe and contained Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass of the dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

553.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass, would not recognize the risk; and that consumption of Beneful by dogs would foreseeably result in injury and death to those dogs, constituting property damage to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass beyond and in addition to the damages from buying the worthless Beneful.

554.    As a proximate result of Purina's negligent acts alleged herein, the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass suffered injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

## COUNT 55
### Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass
### (Strict Product Liability)

555.     The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

556.     The Minnesota Plaintiff brings this action on behalf of herself, the Minnesota Class and the Minnesota Subclass.

557.     Purina designed, manufactured and sold Beneful, which was unsafe because it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

558.     The existence of Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition. The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

559.     These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

560.     Beneful came in sealed packages, and it and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

561.     The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass beyond and in addition to the damages caused by purchasing the worthless Beneful.

562.     Accordingly, Purina is strictly liable for the damages caused to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass by the unreasonably dangerous Beneful, specifically the illness and deaths of their dogs and expenses incurred therewith.

**COUNT 56**

**Asserted Against Purina on Behalf of the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

563.    The Minnesota Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

564.    The Minnesota Plaintiff brings this action on behalf of herself, the Minnesota Class and the Minnesota Subclass.

565.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members conferred a benefit on Purina in the form of the gross revenues it derived from their purchases of Beneful.

566.    Purina had an appreciation or knowledge of the benefit conferred on it by the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members.

567.    Purina knowingly accepted and retained the benefit in the amount of the gross revenues it earned from sales of Beneful to the Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members.

568.    Purina has thereby profited by retaining the benefit under circumstances which would make it inequitable for Purina to be permitted to retain the benefit.

569.    The Minnesota Plaintiff, the Minnesota Class and the Minnesota Subclass members are entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to them.

I.    **MONTANA CAUSES OF ACTION**

**COUNT 57**

**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Breach of Express Warranty)**

570.    The Montana Plaintiff and the Montana Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

571.     The Montana Plaintiff brings this action on behalf of himself, the Montana Class and the Montana Subclass.

572.     Purina constitutes a "merchant" and a "seller" in connection with its sales of Beneful, as those terms are defined in the Montana Uniform Commercial Code.  Further, the Montana Plaintiff, the Montana Class and the Montana Subclass members constitute "buyers" in connection with their purchases of Beneful from Purina, as that term is defined in the Montana Uniform Commercial Code.  Further, Beneful constitutes "goods," as that term is defined in the Montana Uniform Commercial Code. As these are consumer transactions, no direct contractual relationship is required between Purina the Montana Class and the Montana Subclass members.

573.     By affirmations of fact, promises and descriptions made on Beneful's packaging and which relate to such goods, Purina provided Plaintiff, the members of the Montana Class and the Montana Subclass with written express warranties before or at the time of purchase, including the following:

t)     "Satisfaction Guaranteed.  If you're not happy, we're not happy. Complete satisfaction or your money back…."

u)     "At Purina, we're unconditionally devoted to pets.  We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

v)     "100% Complete and Balanced Nutrition";

w)     "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…."

x)     "Healthy"

574.    These affirmations of facts and promises made by Purina to the Montana Plaintiff, the Montana Class and the Montana Subclass members related to Beneful and became part of the bases of the bargains between them and Purina and thereby created express warranties that Beneful would conform to those affirmations and promises.  Furthermore, the aforementioned descriptions of Beneful were part of the bases of the bargains for the purchases of Beneful between Purina and the Montana Plaintiff, the Montana Class and the Montana Subclass members and they created an express warranty that the goods would conform to those descriptions.  As previously noted, because Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, it did not conform to the affirmations, promises and descriptions previously mentioned, resulting in breaches of express warranties.

575.    Beneful was marketed directly to consumers by Purina, came in sealed packages, and did not change from the time it left Purina's possession until it was purchased by consumers in stores.

576.    The Montana Plaintiff has complied with all conditions precedent to filing this breach of warranty claim, including providing timely notice of these breaches of warranty to Purina on behalf of himself, the Montana Class and the Montana Subclass within a reasonable time after discovering that Beneful might have proximately caused the damages described herein.  Such notice was reasonable based on the circumstances of this case, including the fact Purina has engaged in a campaign to prevent other affected consumers from publicly discussing similar claims while at the same time expressly denying any relationship between the consumption of Beneful and the injuries here at issue.  Alternatively, this pleading constitutes adequate notice on behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass.  Alternatively, notice need not have been given to Purina because it had actual notice of its breaches of warranty as to the Montana Plaintiff, the Montana Class and the Montana Subclass.

1    577.    As a proximate result of Purina's breach of express warranties, the Montana

2    Plaintiff and the members of the Montana Class and the Montana Subclass have suffered actual

3    damages as follows:

4              a)    the difference in value between the value of the Beneful as expressly

5                    warranted (the full purchase prices) and the value of the Beneful as

6                    actually accepted and delivered ($0, because consumers would not have

7                    paid anything for it had they known it contained Industrial Grade

8                    Glycols, Mycotoxins, Lead, or Arsenic); i.e., the full purchase price of

9                    the Beneful;

10             b)    the veterinarian bills incurred as a result of consumption of Beneful;

11             c)    the market value of the dogs killed by consumption of Beneful; and

12             d)    the cost of disposing of the remains of the dogs killed by consumption of

13                   Beneful.  The Montana Plaintiff and members of the Montana Class and

14                   the Montana Subclass cannot return Beneful to Purina for repair as the

15                   subject defect is irreparable.

16   **COUNT 58**
**Asserted as to the Montana Plaintiff, the Montana Class and the Montana Subclass**
17   **(Breach of the Implied Warranty of Merchantability, R.C.M. § 87A-2-314)**

18   578.    The Montana Plaintiff and the Montana Class members incorporate by reference

19   each preceding and succeeding paragraph as though fully set forth at length herein.

20   579.    Purina constituted both a "merchant" and a "seller" in connection with its sale of

21   Beneful to the Montana Plaintiff, the Montana Class and the Montana Subclass, as those terms

22   are defined in the Montana Uniform Commercial Code.  Further, the Montana Plaintiff, the

23   Montana Class and the Montana Subclass members constituted "buyers" as that term is defined

24   in the Montana Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is

25   defined in the Montana Uniform Commercial Code.   Particularly as this is a consumer

26

27

1  transaction, no direct contractual relationship is required between the Montana Plaintiff, the

2  Montana Class, the Montana Subclass members and Purina.

3      580.    As part of the sales to the Montana Plaintiff, the Montana Class and the

4  Montana Subclass, Purina impliedly warranted that Beneful was merchantable.  Among other

5  things, to be merchantable,  Beneful had to pass without objection in the trade under the

6  contract description, be fit for the ordinary purposes for which Beneful is used, be adequately

7  contained, packaged and labeled, and conform to the promises or affirmations of fact made on

8  the containers or labels.

9      581.    Beneful breached the warranty of implied merchantability initially because it

10  would not pass without objection in the trade under the contract description.  Specifically, dog

11  food that contains Industrial Grade Glycols, which are not approved for use in food,

12  Mycotoxins, Lead, or Arsenic will not pass without objection in the trade under the description

13  of dog food, nor could such a defect reasonably be discovered by any reasonable form of

14  examination prior to use or consumption.  In addition, Purina breached the implied warranty as

15  to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, which is

16  safely feeding dogs.  Further, Purina breached the implied warranty of merchantability because

17  Beneful was not adequately contained, packaged or labeled because it failed to warn of the

18  dangers of its consumption by dogs.   The Montana Plaintiff, the Montana Class and the

19  Montana Subclass members' reasonable expectations as to the function of such products was

20  that they would not injure or kill their dogs once consumed, or would not contain or have a

21  probability, likelihood or tendency to contain Industrial Grade Glycols, which are not approved

22  for use in food, Mycotoxins, Lead, or Arsenic.

23      582.    At the time of sale to the Montana Plaintiff, the Montana Class and the Montana

24  Subclass and throughout the Class Period, Purina made promises and affirmations of fact on the

25  packaging of Beneful to the effect that Beneful was safe for consumption by pets.  Said

26  representations included, but were not limited to, Beneful being "healthy," offering "great

27

1    nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be

2    guaranteed.

3        583.    However, Purina breached the implied warranty of merchantability because

4    Beneful did not conform to those promises and affirmations of fact, in that Beneful was in fact

5    not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and

6    customers' satisfaction was not guaranteed. For the reasons set forth above Beneful was

7    defective, such defects were present when Beneful left Purina's control, and such defects

8    caused the Montana Plaintiff, the Montana Class and the Montana Subclass members' injuries.

9        584.    Within a reasonable time after the discovery of Purina's breach of the implied

10   warranty and the possible link of Beneful to the illness and death of their pet, the Montana

11   Plaintiff gave notice of such breaches on behalf of himself, the Montana Class and the Montana

12   Subclass.  Alternatively, this pleading constitutes adequate notice on behalf of the Montana

13   Plaintiff, the Montana Class and the Montana Subclass.  Alternatively, no notice was required

14   because Purina was already aware of its breaches as to the Montana Plaintiff, the Montana

15   Class and the Montana Subclass.

16       585.    As a proximate result of this breach of implied warranty by Purina, the Montana

17   Plaintiff, the Montana Class and the Montana Subclass have been damaged in the following

18   manner: (a) by the difference in value between the value of the Beneful as warranted (the full

19   purchase price) and the value of the Beneful as actually delivered ($0, because consumers

20   would not have paid anything for it had they known it contained Industrial Grade Glycols,

21   Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c)

22   for those whose pets died from eating Beneful, the market value of the dogs; and (d) for those

23   whose dogs died from eating Beneful, the cost of disposing of the remains.

24

25

26

27

**COUNT 59**

**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

586.    The Montana Plaintiff and the Montana Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

587.    The Montana Plaintiff brings this claim on behalf of himself, the Montana Class and the Montana Subclass.

588.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

589.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

590.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

591.    The Montana Plaintiff, the members of the Montana Class and the Montana Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

592.    Pursuant to 15 U.S.C. § 2310(e), the Montana Plaintiff, the members of the Montana Class and the Montana Subclass are entitled to bring this action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Montana Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, the Montana Plaintiff already gave any required notice on behalf of himself, the Montana Class and the Montana Subclass by letter dated May 13, 2015.

593.    In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

contract description as dog food, (c) was adequately contained, packaged and labeled, and (d) conformed to the promises and affirmations of fact set forth on its container and label.

594.   Purina is liable to the Montana Plaintiff, the Montana Class and the Montana Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

595.   Purina initially breached the implied warranty of merchantability as to the Montana Plaintiff, the members of the Montana Class and the Montana Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food. Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

596.   Purina further breached its implied warranty of merchantability to the Montana Plaintiff, the members of the Montana Class and the Montana Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

597.   Purina further breached its implied warranty of merchantability to the Montana Plaintiff, the members of the Montana Class and the Montana Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the Montana Plaintiff, the members of the Montana Class and the Montana Subclass of the dangers of feeding Beneful to their dogs.

598.   Purina further breached its implied warranty of merchantability to the Montana Plaintiff, the members of the Montana Class and the Montana Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"

did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

599.    Pursuant to 15 U.S.C. § 2310(d)(1), the Montana Plaintiff, the members of the Montana Class and the Montana Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

600.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Montana Plaintiff, the members of the Montana Class and the Montana Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Montana Plaintiff, the members of the Montana Class and the Montana Subclass in connection with the commencement and prosecution of this action.

### COUNT 60
**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Negligence)**

601.    The Montana Plaintiff and the Montana Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

602.    Purina owed a duty of care to the Montana Plaintiff, the Montana Class and the Montana Subclass to provide pet food that was safe for consumption by dogs, free from toxins that could have harmful effects if consumed.

603.    Purina breached this duty by selling Beneful, which was not safe and contained that Industrial Grade Glycol, Mycotoxins, Arsenic or Lead, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Montana Plaintiff, the Montana Class and the Montana Subclass of such dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

604.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Montana Plaintiff, the Montana Class and the Montana Subclass, would not recognize the risk; and that consumption of Beneful by dogs would foreseeably result in injury and death to those dogs, constituting property damage to the Montana Plaintiff, the Montana Class and the Montana Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

605.    As a proximate result of Purina's negligent acts alleged herein, the Montana Plaintiff, the Montana Class and the Montana Subclass suffered injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

## COUNT 61
**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Strict Products Liability)**

606.    The Montana Plaintiff, the Montana Class and the Montana Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

607.    Purina designed, manufactured, distributed and sold Beneful, which was in an unsafe condition to the ultimate consumer of such products at time of sale because it contained toxins and had other harmful effects as alleged in the factual section above.

608.    The existence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition.  The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

609.    These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control and thus are directly traceable to Purina.

610.    Beneful came in sealed packages, and both the product and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

611.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Montana Plaintiff, the Montana Class and the Montana Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

612.    Accordingly, Purina is strictly liable for the damages caused to the Montana Plaintiff, the Montana Class and the Montana Subclass by the consumption of the unreasonably dangerous Beneful, specifically the illness and deaths of their dogs and the expenses incurred therewith.

### COUNT 62
**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

613.    The Montana Plaintiff, the Montana Class and the Montana Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

614.    This claim in quasi-contract is based upon principles of restitution.  A person who has been unjustly enriched at the expense of another is required to make restitution to the

other, and will restore to the person entitled thereto that which in equity and good conscience belongs to another.

615.    The Montana Plaintiff, the Montana Class and the Montana Subclass members conferred a benefit on Purina by purchasing Beneful in the form of the gross revenues Purina derived from such sales, which they would not have conferred had the true facts detailed above been disclosed by Purina.

616.    At the expense of the Montana Plaintiff, the Montana Class and the Montana Subclass, Purina received, appreciated and accepted benefits in the form of the gross revenues Purina derived from sales of Beneful to the Montana Plaintiff, the Montana Class members and the Montana Subclass.

617.    For the reasons detailed above, Purina has profited and accepted such benefits under circumstances where it engaged in improper, deceitful or misleading conduct as set forth above that would make it inequitable and unjust for Purina to retain such benefit without repaying the value it received from the sales of such products.

618.    The Montana Plaintiff, the Montana Class and the Montana Subclass members are entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to them and thereby wrongfully obtained.

**COUNT 63**
**Asserted Against Purina on Behalf of the Montana Plaintiff, the Montana Class and the Montana Subclass**
**(Violation of the Montana Unfair Trade Practices and Consumer Protection Act, M.C.A. § 30-14-101, et seq.)**

619.    The Montana Plaintiff, the Montana Class and the Montana Subclass members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

620.    The Montana Plaintiff, the Montana Class and the Montana Subclass members were actual purchasers and users of Beneful that was introduced into the stream of trade and commerce, manufactured, distributed and sold by Purina throughout Montana and the United States, who purchased such products primarily for personal, family or household purposes.

621.     As set forth in detail above, Purina disseminated unhealthy and dangerous Beneful dog food despite making numerous uniform material representations about the guaranteed and healthy nature of the Product, and omitted and willfully failed to disclose material facts to the contrary, including that Beneful contains Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, despite having learned of the potential presence of dangerous levels of ingredients and mycotoxins in the Beneful dog food prior to such sales.  In so doing, Purina engaged in and/or caused others to engage in deceptive or unfair acts in the conduct of any trade or commerce, in violation of the Montana Unfair Trade Practices and Consumer Protection Act.

622.     These unfair or deceptive trade practices occurred in the course of Purina conducting its business, trade or commerce, which included the advertising, offering for sale, sale, or distribution of Beneful, directly or indirectly affecting the people of Montana.

623.     The Montana Plaintiff, the Montana Class and the Montana Subclass members would not have purchased Beneful products at the prices that they did, if at all, but for Purina's wrongful failure to disclose Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

624.     As a result of the commission of these unfair or deceptive trade practices and failure to disclose the material omitted facts by Purina, the Montana Plaintiff, the Montana Class and the Montana Subclass members were injured and suffered an ascertainable loss of money or property.  Based on the nature of the conduct of Purina as set forth above, they thus are entitled to actual, treble or statutory damages or economic losses to the extent permitted by law and in amounts to be determined at trial, which include (a) the difference in value between the value of the Beneful as expressly warranted (the full purchase prices) and the value of the Beneful as actually accepted and delivered ($0, because it was unsafe and unfit for its ordinary purpose and thus reduced or eliminated its value); i.e., the full purchase price of the Beneful; (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of

the dogs killed by consumption of Beneful; and (d) the cost of disposing of the remains of the dogs killed by consumption of Beneful.  They also seek fees, costs, and any other equitable relief the Court considers necessary or proper.

**J.    NEW JERSEY CAUSES OF ACTION**

<u>**COUNT 64**</u>

**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**

<u>**(Violations of the New Jersey Consumer Fraud Act**</u>
<u>**N.J. Stat. Ann. § 56:8-19)**</u>

625.    The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

626.    The New Jersey Plaintiff brings this claim on her own behalf and on behalf of the New Jersey Class and New Jersey Subclass.

627.    Purina affirmatively misrepresented that Beneful was safe for consumption by pets.  Said misrepresentations include, but are not limited to, misrepresentations on its packaging, such as Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.  Beneful was, in fact, unsafe for dogs, causing injury and death to thousands.

628.    Purina's claims were thus false, misleading, and/or deceptive.

629.    Purina's    affirmative    misrepresentations    constituted    an    unconscionable commercial practice, deception, fraud, false promise, and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.

630.    Moreover, Purina failed to disclose that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

631.    This material omission also constituted a violation of the New Jersey Consumer Fraud Act.

632.    The New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members suffered ascertainable losses caused by Purina's misrepresentations and material

omissions because they paid the purchase price, or paid a price premium, due to the misleading and false advertising and deceptive promises of the safety of Beneful, when, in fact, Beneful was unsafe for pets to consume. Simply put, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members paid for the represented benefits of Beneful and did not get what they paid for.  Indeed, their purchases were of no value because Beneful was unsafe for their pets to consume.  In addition, the New Jersey Plaintiff suffered ascertainable loss in the form of veterinarian bills, loss of the market value of her dog that died and the cost of disposing of the remains of her dog that died.

633.    Beneful, which was designed, manufactured, advertised, marketed, and sold by Purina, is considered "merchandise" within the meaning of the New Jersey Consumer Fraud Act, and the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass are "persons" and "consumers" within the meaning of the New Jersey Consumer Fraud Act, such that they demand judgment against Purina for the statutory remedies made available under the New Jersey Consumer Fraud Act and such additional relief as the Court may deem appropriate or to which the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass may be entitled, pursuant to N.J.S.A. § 56:8-19.

634.    More specifically, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass are entitled to recover the following, among other possible relief: (1) the difference in value between the value of the Beneful as represented (the full purchase price) and the value of the Beneful as delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2)  all veterinarian bills resulting from their dogs' consumption of Beneful; (3) to the extent their dogs died from consumption of Beneful, the market value of those animals; (4) to the extent their dogs died from consumption of Beneful, the cost of disposing of the remains; and (5) an injunction requiring Purina to recall all Beneful currently on the shelves and to stop selling Beneful unless and until the problems with its safety have been remedied.

635. New Jersey law also provides protection to purchasers of animal food from unfair, deceptive and unconscionable practices. N.J. Stat. § 4:4-20.6 (Misbranding), N.J. Stat. § 4:4-20.7 (Adulteration), and N.J. Stat. § 4:4-20.8 (Prohibited Acts).

636. A commercial feed is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health;" N.J. Stat. § 4:4-20.7, and a commercial feed is misbranded if its "labeling is false or misleading in any particular." N.J. Stat. § 4:4-20.6. New Jersey law prohibits the "manufacture or distribution of any commercial feed that is adulterated or misbranded." N.J. Stat. § 4:4-20.8.

637. Beneful contains poisonous, deleterious or nonnutritive substances, which injured the dogs of the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members, and the composition or quality of Beneful falls below what is purported or represented by its label, as set forth above.

638. Purina's conduct, as more fully described herein, violated N.J. Stat. §§ 4:4-20.6-8. Violation of these laws, which are designed to protect consumers like the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass, form an alternative basis for their New Jersey Consumer Fraud Act claim.

639. Plaintiff and the other members of the New Jersey Class and New Jersey Subclass further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New Jersey Class members will be irreparably harmed unless the unlawful actions of Purina are enjoined, in that Purina will continue to falsely and misleadingly market and advertise and represent on its packaging the healthy nature of Beneful. Towards that end, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass request an order granting them injunctive relief requiring removal of the unsafe product from retail outlets, corrective disclosures and/or disclaimers on the labeling and advertising of Beneful and/or the removal of the harmful ingredients before sales resume.

640. Absent injunctive relief, Purina will continue to manufacture and sell unsafe Beneful without warning to consumers of its harmful effects.

641. In this regard, Purina has violated, and continues to violate, the New Jersey Consumer Fraud Act, which makes deception, fraud, false promise, and/or misrepresentation of goods unlawful. As a direct and proximate result of Purina's violation of the New Jersey Consumer Fraud Act, as described above, the New Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass have suffered damages, as set forth above.

**COUNT 65**
**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**
**(Breach of Express Warranty**
**N.J. Stat. Ann. § 12A:2-313)**

642. The New Jersey Plaintiff incorporates herein all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

643. The New Jersey Plaintiff brings this claim on her own behalf and on behalf of the New Jersey Class and New Jersey Subclass.

644. Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass, as those terms are defined in the New Jersey Uniform Commercial Code. Further, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members constituted "buyers" as that term is defined in the New Jersey Uniform Commercial Code. Beneful, itself, constituted "goods," as that term is defined in the New Jersey Uniform Commercial Code.

645. Under section 2-313 of the Uniform Commercial Code, the statements on Purina's packaging created express warranties, including that Beneful was safe for consumption by pets. Said statements include, but are not limited to, Beneful being "healthy,"

offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

646.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

647.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful that created an express warranty that Beneful would conform to the descriptions.

648.    Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which constituted a breach of these express warranties.

649.    The New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members were injured as a direct and proximate result of Purina's aforementioned breaches as follows: (a) by the difference in value between the value of the Beneful as warranted (its full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consumption of Beneful, the market value of those dogs; and (d) for those whose dogs died from consumption of Beneful, the cost of disposing of their remains.

650.    Within a reasonable time after the discovery of Purina's breaches, the New Jersey Plaintiff gave notice of the breach on her own behalf and on behalf of the New Jersey Class and New Jersey Subclass.  Alternatively, this pleading constitutes a sufficient notice of

breach.  Alternatively, no notice was required because Purina specifically knew of its breaches of warranty as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass.

651.    The New Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass demand judgment against Purina for damages, as set forth above, plus interests, costs and such additional relief as the Court may deem appropriate or to which the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members may be entitled.

**COUNT 66**
**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**
**(Breach of the Implied Warranty of Merchantability**
**N.J. Stat. Ann. § 12A:2-314)**

652.    The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

653.    The New Jersey Plaintiff brings this claim on behalf of herself, the New Jersey Class and New Jersey Subclass.

654.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass, as those terms are defined in the New Jersey Uniform Commercial Code.  Further, the New Jersey Plaintiff and the New Jersey Class members constituted "buyers" as that term is defined in the New Jersey Uniform Commercial Code.  Beneful, itself, constituted "goods," as that term is defined in the New Jersey Uniform Commercial Code.

655.    As part of the sales to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass, Purina impliedly warranted that Beneful was merchantable.  Among other things, to be merchantable, the Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled as the agreements may have required, and conform to the promises or affirmations of fact made on the containers or labels.

656.    Beneful breached the warranty of implied merchantability initially because it would not pass without objection in the trade under the contract description.  Specifically, dog food that contains Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic will not pass without objection in the trade under the description of dog food.  In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, safely feeding dogs.  Further, Purina breached the implied warranty of merchantability because Beneful was not adequately labeled as the agreements might have required because it failed to warn of the dangers of its consumption by dogs.

657.    At the time of sale throughout the Class Period, Purina made promises and affirmations of fact on the packaging of Beneful to the effect that Beneful was safe for consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

658.    However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.

659.    Within a reasonable time after the discovery of Purina's breach, the New Jersey Plaintiff gave notice of the breaches on behalf of herself, the New Jersey Class and New Jersey Subclass.  Alternatively, this pleading constitutes sufficient notice of breach.  Alternatively, no notice was required because Purina was already aware of its breaches as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass.

660.    As a proximate result of this breach of warranty by Purina, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass have been damaged in the following manners: (a) by the difference in value between the value of the Beneful as warranted (the full

purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the market value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

### COUNT 67

**Asserted Against Purina on Behalf of the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

661. The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

662. The New Jersey Plaintiff brings this claim on behalf of herself, the New Jersey Class and New Jersey Subclass.

663. At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

664. Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

665. Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

666. The New Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass are "consumers" as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

667. Pursuant to 15 U.S.C. § 2310(e), the New Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the New Jersey Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure. However, New Jersey Plaintiff, Armstrong, already gave the

1    required notice on behalf of herself, the New Jersey Class and New Jersey Subclass by letter

2    dated May 15, 2015.

3        668.    In connection with its sale of Beneful, Purina gave an implied warranty as

4    defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of

5    the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its

6    ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

7    contract description as dog food, (c) was adequately contained, packaged and labeled as the

8    agreements required, and (d) conformed to the promises and affirmations of fact set forth on its

9    container and label.

10       669.    Purina is liable to the New Jersey Plaintiff, the New Jersey Class and New

11   Jersey Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty

12   of merchantability.

13       670.    Purina initially breached the implied warranty of merchantability as to the New

14   Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass because

15   Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.

16   Specifically, Beneful  contained Industrial Grade Glycols, which are not approved for use in

17   food, Mycotoxins, Lead, or Arsenic which made it unfit for its ordinary purpose of providing

18   safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

19       671.    Purina further breached its implied warranty of merchantability to the New

20   Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass because

21   Beneful would not pass without objection in the trade under its contract description as dog

22   food, as it contained Industrial Grade Glycols, which are not approved for use in food,

23   Mycotoxins, Lead, or Arsenic.

24       672.    Purina further breached its implied warranty of merchantability to the New

25   Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass because

26   Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that

27

1    accompanied the Beneful dog food did not warn the New Jersey Plaintiff, the members of the
2    New Jersey Class and New Jersey Subclass of the dangers of feeding Beneful to their dogs.

3         673.    Purina finally breached its implied warranty of merchantability to the New
4    Jersey Plaintiff, the members of the New Jersey Class and New Jersey Subclass because
5    Beneful did not conform to the promises and affirmations of fact set forth on its container and
6    label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not
7    "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and
8    customers' satisfaction was not guaranteed.

9         674.    Pursuant to 15 U.S.C. § 2310(d)(1), the New Jersey Plaintiff, the members of the
10   New Jersey Class and New Jersey Subclass are entitled to recover the following damages
11   proximately caused to them by Purina's breach of the implied warranty of merchantability: (1)
12   the difference in value between the Beneful as warranted (the full purchase price) and the
13   Beneful as actually delivered ($0.00, because consumers would not have paid anything for it
14   had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the
15   veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating
16   Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful,
17   the cost of disposing of the remains.

18        675.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the New Jersey Plaintiff, the
19   members of the New Jersey Class and New Jersey Subclass are entitled to recover a sum equal
20   to the aggregate amount of costs and expenses (including attorneys' fees based on actual time
21   expended) determined by the Court to have been reasonably incurred by the New Jersey
22   Plaintiff, the members of the New Jersey Class and New Jersey Subclass in connection with the
23   commencement and prosecution of this action.

24

25

26

27

1
2

**COUNT 68**

**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**
**(Negligence)**

3
4

676.    The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

5
6

677.    The New Jersey Plaintiff brings this action on behalf of herself and on behalf of the New Jersey Class and New Jersey Subclass.

7
8
9

678.    Purina owed a duty of reasonable care to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

10
11
12
13
14
15
16

679.    Purina breached this duty by selling Beneful, which contains harmful toxins, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass of Beneful's dangers on its packaging. Such conduct by Purina was negligent because it did not reflect the level of care that an ordinary person in Purina's place would have given.

17
18
19
20
21
22

680.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in injury and death to dogs, constituting property damage to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass beyond and in addition to the damages from purchasing worthless Beneful.

23
24
25

681.    As a proximate cause of Purina's negligent acts alleged herein, the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass suffered injury to property, specifically the illness and deaths of their dogs and the expenses incurred therewith.

26
27

**COUNT 69**

**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass**
**(Products Liability**
**N.J. Stat. Ann. § 2A:58C-2)**

682.    The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

683.    The New Jersey Plaintiff brings this action on her own behalf and on behalf of the New Jersey Class and New Jersey Subclass.

684.    Purina manufactured Beneful which contained toxins and had other harmful effects as alleged, *supra*.

685.    Beneful was not reasonably fit, suitable or safe for its intended purpose because it contained toxins and was otherwise designed and/or manufactured in a defective manner and failed to contain adequate warnings.

686.    The existence of toxins and other harmful effects in Beneful, at all times material hereto, constituted an unreasonably dangerous defect and/or condition.  Further, the failure to warn of the danger of Beneful on its packaging constituted an unreasonably dangerous defect and/or condition.

687.    These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

688.    Beneful came in sealed packages, and it did not change from the time it left Purina's possession, through the time it arrived in stores to be sold to consumers and consumers bought and took possession of Beneful.

689.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, and related expenses, constituting property damage to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass beyond and in addition to the damages from purchasing the worthless Beneful.

690.    Accordingly, Purina is strictly liable for these damages caused to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass by its unreasonably dangerous product.

## COUNT 70

**Asserted as to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass (Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

691.    The New Jersey Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

692.    The New Jersey Plaintiff brings this claim on her own behalf and on behalf of the New Jersey Class and New Jersey Subclass.

693.    The New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members conferred a benefit on Purina by purchasing Beneful in the form of the gross revenues Purina received from those sales.

694.    Purina has been unjustly enriched by retaining the gross revenues derived from the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members' purchases of Beneful, which retention under these circumstances is unjust and inequitable.

695.    Because Purina's retention of the revenue conferred on it by the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members is unjust and inequitable, Purina must pay it in restitution to the New Jersey Plaintiff, the New Jersey Class and New Jersey Subclass members.

**K.    NEW YORK CAUSES OF ACTION**

## COUNT 71

**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass (Breach of Implied Warranty of Merchantability)**

696.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

697.    The New York Plaintiffs brings this claim on their own behalves and on behalf of the New York Class and the New York Subclass.

698.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the New York Plaintiffs, the New York Class and the New York Subclass, as those terms are defined in the New York Uniform Commercial Code.   Further, the New York Plaintiffs, the New York Class and the New York Subclass members constituted "buyers" as that term is defined in the New York Uniform Commercial Code.   Beneful, itself, constituted "goods," as that term is defined in the New York Uniform Commercial Code.

699.    As part of the sales to the New York Plaintiffs, the New York Class and the New York Subclass, Purina impliedly warranted that Beneful was merchantable.   Among other things, to be merchantable, the Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled as the agreements may have required, and conform to the promises or affirmations of fact made on the containers or labels.

700.    Beneful breached the warranty of implied merchantability initially because it would not pass without objection in the trade under the contract description.   Specifically, dog food that contains Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic will not pass without objection in the trade under the description of dog food.   In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, safely feeding dogs.   Further, Purina breached the implied warranty of merchantability because Beneful was not adequately labeled as the agreements might have required because it failed to warn of the dangers of its consumption by dogs.

701.    At the time of sale throughout the Class Period, Purina made promises and affirmations of fact on the containers and labels of Beneful to the effect that Beneful was safe for consumption by pets.   Said representations included, but were not limited to, Beneful being

"healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

702. However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.

703. Within a reasonable time after the discovery of Purina's breach, the New York Plaintiffs gave notice of the breaches on behalf of themselves, the New York Class and the New York Subclass. Alternatively, this pleading constitutes sufficient notice of breach. Alternatively, no notice was required because Purina specifically knew of its breaches of warranty as to the New York Plaintiffs, the New York Class and the New York Subclass.

704. As a proximate result of this breach of warranty by Purina, the New York Plaintiffs, the New York Class and the New York Subclass have been damaged  in the following manners: (a) by the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c) for those whose pets died from eating Beneful, the market value of the dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

### COUNT 72
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Breach of Express Warranty)**

705. The New York Plaintiffs incorporates herein all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

706.    The New York Plaintiffs brings this claim on their own behalves and on behalf of the New York Class and the New York Subclass.

707.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the New York Plaintiffs, the New York Class and the New York Subclass, as those terms are defined in the New York Uniform Commercial Code.   Further, the New York Plaintiffs, the New York Class and the New York Subclass members constituted "buyers" as that term is defined in the New York Uniform Commercial Code.   Beneful, itself, constituted "goods," as that term is defined in the New York Uniform Commercial Code.

708.    Under section 2-313 of the Uniform Commercial Code, the statements on Purina's packaging created express warranties, including that Beneful was safe for consumption by pets. Said statements include, but are not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

709.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

710.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful that created an express warranty that Beneful would conform to the descriptions.

711.    Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, constituting a breach of these express warranties.

712.    The New York Plaintiffs, the New York Class and the New York Subclass members were injured as a direct and proximate result of Purina's aforementioned breaches as follows: (a) by the difference in value between the value of the Beneful as warranted (its full purchase price) and the value of the Beneful as actually delivered ($0, because consumers

would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consumption of Beneful, the market value of those dogs; and (d) for those whose dogs died from consumption of Beneful, the cost of disposing of their remains.

713.    Within a reasonable time after the discovery of Purina's breaches, the New York Plaintiffs gave notice of the breach on their own behalf and on behalf of the New York Class and the New York Subclass.  Alternatively, this pleading constitutes a sufficient notice of breach.  Alternatively, no notice was required because Purina specifically knew of its breaches of warranty as to the New York Plaintiffs, the New York Class and the New York Subclass.

714.    The New York Plaintiffs, the members of the New York Class and the New York Subclass demand judgment against Purina for damages, as set forth above, plus interests, costs and such additional relief as the Court may deem appropriate or to which the New York Plaintiffs, the New York Class and the New York Subclass members may be entitled.

## COUNT 73
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

715.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

716.    The New York Plaintiffs brings this claim on behalf of themselves, the New York Class and the New York Subclass.

717.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

718.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

719.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

720. The New York Plaintiffs, the members of the New York Class and the New York Subclass are "consumers" as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

721. Pursuant to 15 U.S.C. § 2310(e), the New York Plaintiffs, the members of the New York Class and the New York Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the New York Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure. However, New York Plaintiffs Normand already gave the required notice on behalf of themselves, the New York Class and the New York Subclass by letter dated May 22, 2015 and Plaintiff Hickey already gave the required notice on behalf of themselves, the New York Class and the New York Subclass by letter dated May 28, 2015.

722. In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and label.

723. Purina is liable to the New York Plaintiffs, the New York Class and the New York Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

724. Purina initially breached the implied warranty of merchantability as to the New York Plaintiffs, the members of the New York Class and the New York Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food. Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in

food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

725.    Purina further breached its implied warranty of merchantability to the New York Plaintiff, the members of the New York Class and the New York Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

726.    Purina further breached its implied warranty of merchantability to the New York Plaintiffs, the members of the New York Class and the New York Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the New York Plaintiffs, the members of the New York Class and the New York Subclass of the dangers of feeding Beneful to their dogs.

727.    Purina finally breached its implied warranty of merchantability to the New York Plaintiffs, the members of the New York Class and the New York Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

728.    Pursuant to 15 U.S.C. § 2310(d)(1), the New York Plaintiffs, the members of the New York Class and the New York Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating

Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

729.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the New York Plaintiffs, the members of the New York Class and the New York Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the New York Plaintiffs, the members of the New York Class and the New York Subclass in connection with the commencement and prosecution of this action.

**COUNT 74**
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Negligence)**

730.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

731.    The New York Plaintiffs brings this action on behalf of themselves and on behalf of the New York Class and the New York Subclass.

732.    Purina owed a duty of reasonable care to the New York Plaintiffs, the New York Class and the New York Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

733.    Purina breached this duty by selling Beneful, which contains harmful toxins, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the New York Plaintiffs, the New York Class and the New York Subclass of Beneful's dangers on its packaging. Such conduct by Purina was negligent because it did not reflect the level of care that an ordinary person in Purina's place would have given.

734.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the New York Plaintiffs, the New York Class and the New York Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in injury and death to dogs, constituting property damage to the New York Plaintiffs, the New York Class and the New York Subclass beyond and in addition to the damages from purchasing the worthless Beneful.

735.    As a proximate cause of Purina's negligent acts alleged herein, the New York Plaintiffs, the New York Class and the New York Subclass suffered injury to property, specifically the illness and deaths of their dogs and the expenses incurred therewith.

### COUNT 75
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Negligent Misrepresentation)**

736.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

737.    Purina owed the New York Plaintiffs, the New York Class and the New York Subclass a duty to exercise reasonable care in representing the safety of Beneful.

738.    Purina falsely represented that Beneful was safe for consumption by dogs. Purina also failed to disclose that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.  Beneful was under a duty to make such disclosure because the affirmative representations that it made were incomplete and misleading without the further disclosure of the dangers of Beneful.  Purina made the false representations and the failure to disclose in the course of its business and in connection with transactions in which it had a pecuniary interest.

739.    In reality, Beneful caused dogs to become ill and, in many cases, to die.

740.    The New York Plaintiffs, the New York Class and the New York Subclass members reasonably and justifiably relied on the information provided by Purina and on Purina's non-disclosure regarding the safety of Beneful.

741.    As a proximate cause of Purina's false representations and omissions, Plaintiffs, the New York Class and the New York Subclass members suffered injury to property, specifically in the illness and deaths of their pets and the expenses incurred in connection therewith.

**COUNT 76**
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Strict Products Liability)**

742.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

743.    The New York Plaintiffs brings this action on their own behalves, the New York Class and the New York Subclass.

744.    Purina manufactured Beneful which contained toxins and had other harmful effects as alleged, *supra*.

745.    Beneful was not reasonably fit, suitable or safe for its intended purpose because it contained toxins and was otherwise designed and/or manufactured in a defective manner and failed to contain adequate warnings.

746.    The existence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful, at all times material hereto, constituted an unreasonably dangerous defect and/or condition.  Further, the failure to warn of the danger of Baneful on its packaging constituted an unreasonably dangerous defect and/or condition.

747.    These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

748.    Beneful came in sealed packages, and it did not change from the time it left Purina's possession, through the time it arrived in stores to be sold to consumers and consumers bought and took possession of Beneful.

749.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, and related expenses, constituting property damage to the New York Plaintiffs, the New York Class and the New York Subclass beyond and in addition to the damages from purchasing the worthless Beneful.

750.    Accordingly, Purina is strictly liable for these damages caused to the New York Plaintiffs, the New York Class and the New York Subclass by its unreasonably dangerous product.

## COUNT 77
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(New York General Business Law ("GBL") § 349 Deceptive Acts and Practices Unlawful)**

751.    The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

752.    The New York Plaintiffs, the members of the New York Class and the New York Subclass are consumers who purchased Beneful, which was designed, manufactured, marketed and distributed by Purina.  They bring this action pursuant to New York Business Law Section 349.

753.    Purina has engaged in deceptive practices in the sale of Beneful to consumers, including: (1) false and misleading marketing and advertising, including false representations on Beneful's packaging concerning the safety and quality of Beneful, and (2) failing to disclose and/or concealing a known defect and risk, the dangers of Beneful.

754.    Such actions and failures to act have caused direct, foreseeable and proximate damages to the New York Plaintiffs, the other members of the New York Class and the New York Subclass.  Those damages include (a) the difference in value between the value of

Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of consumption of Beneful; (c) the market value of the dogs killed by consumption of Beneful; and (d) the expenses incurred in disposing of the remains of the dogs killed by consumption of Beneful.

755.    New York law also provides protection to purchasers of animal food from unfair, deceptive and unconscionable practices.    N.Y. Agric. & Mkts. Law § 131 (Misbranding), N.Y. Agric. & Mkts. Law § 132 (Adulteration), and N.Y. Agric. & Mkts. Law § 133 (Prohibited Acts).

756.    A commercial feed is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health" (N.Y. Agric. & Mkts. Law § 132) and a commercial feed is misbranded if its "labeling is false or misleading in any particular." N.Y. Agric. & Mkts. Law § 131.  New York law prohibits the "manufacture or distribution of any commercial feed that is adulterated or misbranded." N.Y. Agric. & Mkts. Law § 133.

757.    Beneful contains poisonous, deleterious or nonnutritive substances, including Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which Purina omitted from consumers.  These substances injured the dogs of the New York Plaintiffs and the New York Class members, and the composition or quality of Beneful falls below what is purported or represented by its label, as set forth above.

758.    Purina's conduct, as more fully described herein, violated N.Y. Agric. & Mkts. Law § 131-133.  Violations of these laws, which are designed to protect consumers like the New York Plaintiffs, the New York Class and the New York Subclass, form an alternate basis for their GBL § 349 claim.

759.    Plaintiffs, the other members of the New York Class and the New York Subclass

further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New York Class members will be irreparably harmed unless the unlawful actions of the Purina are enjoined, in that Purina will continue to falsely and misleadingly market and advertise and represent on its packaging the healthy nature of Beneful, and omit that Beneful contains Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic. Towards that end, the New York Plaintiffs, the New York Class and the New York Subclass request an order granting them injunctive relief requiring removal of unsafe product from retail outlets, corrective disclosures and/or disclaimers on the labeling and advertising of Beneful and/or the removal of the harmful ingredients before sales resume.

760. Absent injunctive relief, Purina will continue to manufacture and sell unsafe Beneful without warning to consumers of its harmful effects.

761. In this regard, Purina has violated, and continues to violate, section 349 of the New York General Business Law (GBL), which makes deceptive acts and practices unlawful. As a direct and proximate result of Purina's violation of GBL § 349 as described above, the New York Plaintiffs, the members of the New York Class and the New York Subclass have suffered damages as set forth above.

**COUNT 78**
**Asserted Against Purina on Behalf of the New York Plaintiffs, the New York Class and the New York Subclass**
**(Unjust Enrichment under New York Common Law)**

762. The New York Plaintiffs incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

763. As a result of Purina's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sale of Beneful, Purina was enriched at the expense of the New York Plaintiffs, the New York Class and the New York Subclass members by the gross revenues it derived from their payment of the purchase prices for Beneful.

764. Under the circumstances, it would be against equity and good conscience to

permit Purina to retain the gross revenues that it derived from the sale of Beneful to the New York Plaintiffs, the New York Class and the New York Subclass members in light of the fact that Beneful was unsafe.  Thus, it would be unjust or inequitable for Purina to retain those gross revenues without restitution to the New York Plaintiffs and the New York Class members of those amounts.

**L.      OHIO CAUSES OF ACTION**

<u>**COUNT 79**</u>

**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**

<u>**(Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, *et. seq.* ("MMWA"))**</u>

765.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

766.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

767.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

768.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

769.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

770.    The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

771.    Pursuant to 15 U.S.C. § 2310(e), the Ohio Plaintiff and the members of the Ohio Class are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Ohio Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, Ohio

1    Plaintiff Winters already gave the required notice on behalf of herself, the Ohio Class and the

2    Ohio Subclass by letter dated May 20, 2015.

3          772.   In connection with its sale of Beneful, Purina gave an implied warranty as

4    defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of

5    the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its

6    ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

7    contract description as dog food, (c) was adequately contained, packaged and labeled as the

8    agreements required, and (d) conformed to the promises and affirmations of fact set forth on its

9    container and label.  Ohio Rev. Code § 1302.27.

10         773.   Purina is liable to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass

11   pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of

12   merchantability.

13         774.   Purina initially breached the implied warranty of merchantability as to the Ohio

14   Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful was not fit for

15   the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful

16   contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead,

17   or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In

18   fact, Beneful has caused injury and death to thousands of dogs.

19         775.   Purina further breached its implied warranty of merchantability to the Ohio

20   Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful would not pass

21   without objection in the trade under its contract description as dog food, as it contained

22   Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or

23   Arsenic.

24         776.   Purina further breached its implied warranty of merchantability to the Ohio

25   Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful was not

26   adequately contained, packaged, and labeled.  The directions and labeling that accompanied the

27

1   Beneful dog food did not warn the Ohio Plaintiff, the members of the Ohio Class and the Ohio

2   Subclass of the dangers of feeding Beneful to their dogs.

3        777.    Purina finally breached its implied warranty of merchantability to the Ohio

4   Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful did not

5   conform to the promises and affirmations of fact set forth on its container and label, as

6   described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"

7   did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers'

8   satisfaction was not guaranteed.

9        778.    Pursuant to 15 U.S.C. § 2310(d)(1), the Ohio Plaintiff, the members of the Ohio

10  Class and the Ohio Subclass are entitled to recover the following damages proximately caused

11  to them by Purina's breach of the implied warranty of merchantability: (1) the difference in

12  value between the Beneful as warranted (the full purchase price) and the Beneful as actually

13  delivered ($0.00, because consumers would not have paid anything for it had they known it

14  contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills

15  caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the

16  market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of

17  disposing of the remains.

18       779.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Ohio Plaintiff, the members

19  of the Ohio Class and the Ohio Subclass are entitled to recover a sum equal to the aggregate

20  amount of costs and expenses (including attorneys' fees based on actual time expended)

21  determined by the Court to have been reasonably incurred by the Ohio Plaintiff, the members

22  of the Ohio Class and the Ohio Subclass in connection with the commencement and

23  prosecution of this action.

24

25

26

27

**COUNT 80**
**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
**(Breach of Express Warranty**
**Ohio Rev. Code § 1302.26)**

780.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

781.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

782.    Purina constituted both a "merchant" and a "seller," as those terms are defined in Ohio Rev. Code § 1302.01(A)(4) & (5), in connection with its sale of Beneful to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass.  Further, the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass constituted "buyers," as that term is defined in Ohio Rev. Code § 1302.01(A)(1).  Beneful, itself, constituted "goods," as that term is defined in Ohio Rev. Code § 1302.01(A)(8).

783.    The statements on Purina's packaging for Beneful created express warranties, including that Beneful was safe for consumption by pets, under both common law and Ohio Rev. Code § 1302.26.  Said statements include, but are not limited to, Beneful dog food being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

784.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

785.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those descriptions.

786.     Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, constituting a breach of these express warranties.

787.     The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of those dogs; and (d) for those whose dogs died from consuming Beneful, the cost of disposing of their remains.

788.     Within a reasonable time after their discovery of Purina's breaches, the Ohio Plaintiff gave notice of the breaches of the express warranties on behalf of herself, the Ohio Class and the Ohio Subclass.  Alternatively, this pleading constitutes a sufficient notice of Purina's breaches of the express warranties.  Alternatively, it was not necessary for the Ohio Plaintiff, the Ohio Class and the Ohio Subclass members to give Purina notice of its breaches of the express warranties as to them because Purina already had actual notice of those breaches.

**COUNT 81**
**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
**Breach of the Implied Warranty of Merchantability**
**Ohio Rev. Code § 1302.27**

789.     The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

790.     The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

791.     Purina is a "seller" and "merchant" as to Beneful within the meaning of Ohio Rev. Code § 1302.01(A)(4) & (5).  Purina designed, manufactured and sold Beneful, which constitutes "goods" within the meaning of Ohio Rev. Code § 1302.01 (A)(8).  The Ohio

1   Plaintiff, the members of the Ohio Class and the Ohio Subclass constituted "buyers" within the

2   meaning of Ohio Rev. Code § 1302.01(A)(1).   Consequently, pursuant to Ohio Rev. Code §

3   1302.27, Purina impliedly warranted that Beneful was merchantable, including that it: (a) was

4   fit for its ordinary purposes as safe, healthy dog food, (b) it could pass without objection in the

5   trade under its contract description as dog food, (c) was adequately contained, packaged, and

6   labeled as the agreements required, and (d) it conformed to the promises and affirmations of

7   fact set forth on its container and labels.

8       792.    Beneful was sold in sealed packaging, and the defects existed when it left

9   Purina's control.

10      793.    When Purina designed, manufactured, distributed and sold Beneful, it knew the

11  purpose for which Beneful was intended, *i.e.*, that it would be consumed by dogs.

12      794.    Purina initially breached the implied warranty of merchantability as to the Ohio

13  Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful was not fit for

14  the ordinary purposes for which it is used—a safe, healthy dog food.   Specifically, Beneful

15  contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead,

16  or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.   In

17  fact, Beneful has caused injury and death to thousands of dogs.

18      795.    Purina further breached its implied warranty of merchantability to the Ohio

19  Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful would not pass

20  without objection in the trade under its contract description as dog food, as it contained

21  Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or

22  Arsenic.

23      796.    Purina further breached its implied warranty of merchantability to the Ohio

24  Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful was not

25  adequately contained, packaged, and labeled.   The directions and labeling that accompanied

26

27

Beneful did not warn the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass of the dangers of feeding Beneful to their dogs.

797.    Purina finally breached its implied warranty of merchantability to the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

798.    The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of those dogs; (d) for those whose dogs died from consuming Beneful, the cost of disposing of their remains; and (e) other economic losses, including the increased risk of health problems in their pets.

799.    Within a reasonable time after their discovery of Purina's breaches, the Ohio Plaintiff gave notice of the breaches of the implied warranty of merchantability on behalf of herself, the Ohio Class and the Ohio Subclass.  Alternatively, this pleading constitutes a sufficient notice of Purina's breaches of the implied warranty of merchantability. Alternatively, it was not necessary for the Ohio Plaintiff to give Purina already notice of its breaches of the implied warranty of merchantability as to her, the Ohio Class and the Ohio Subclass because Purina had actual notice of such breaches.

**COUNT 82**
**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
**(Violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq*.)**

800.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

801.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

802.    The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass are "consumers" as defined in Ohio Rev. Code § 1345.02.

803.    The purpose of the Ohio Consumer Sales Practices Act ("CSPA") is to protect consumers from suppliers who commit deceptive or unconscionable sales practices.

804.    The Ohio Plaintiff, the Ohio Class and the Ohio Subclass members are consumers, and the transfer of Beneful to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass members is considered a "consumer transaction" within the meaning of the CSPA. *See* Ohio Rev. Code § 1345.01.

805.    Ohio Rev. Code § 1345.02 declares unlawful any unfair or deceptive act or practice in connection with a consumer transaction.  "It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to (A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact."  Ohio Adm. Code 109:4-3-10.

806.    Although Ohio Adm. Code 109:4-3-10 provided Purina with prior notice that the conduct described therein was deceptive or unconscionable, Purina violated the CSPA by representing to the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass that Beneful constituted safe, healthy food, when Purina did not have a reasonable basis in fact such

as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence, to substantiate representations, claims, or assertions that Beneful was "healthy," offered "great nutrition" to dogs, and promoted "healthy growth."  Moreover, Purina omitted that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

807.    Purina's violations of the CSPA were the proximate cause of actual economic damages to the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass equal to: (a) the amount the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass paid for the worthless Beneful: the difference in value between the value of Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) their veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from eating Beneful, the market value of their  dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of their remains.

### COUNT 83
**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
**(Negligence Ohio Rev. Code § 2307.71, *et seq*.)**

808.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

809.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

810.    Purina owed a duty of reasonable care to the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass to provide dog food that was safe for consumption by dogs, free from excessive amounts of toxins with harmful effects.

811.    Purina breached this duty by selling Beneful, which contained excessive amounts of harmful toxins, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths

and illnesses following consumption of Beneful; and without adequately warning the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass of Beneful's dangers on its packaging.

812.    Such conduct by Purina was negligent because it did not reflect the level of care that an ordinarily prudent and reasonable person in Purina's place would have given under the same or similar circumstances.

813.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in their injury and death.   Such injury and death to the dogs constituted property damage to the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass beyond and in addition to their damage from purchasing the worthless Beneful.

814.    As a proximate result of Purina's negligent acts alleged herein, the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses incurred therewith.

### COUNT 84
**Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
**(Strict Products Liability Ohio Rev. Code § 2307.71, *et seq*.)**

815.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

816.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the Ohio Subclass.

817.    Purina designed, manufactured, distributed and sold Beneful, which contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, as alleged, *supra*. The presence of Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic, and other harmful effects in Beneful, at all times material hereto, which would not reasonably have been expected by consumers, constituted an unreasonably dangerous defect and/or condition.

818.    Beneful was unreasonably dangerous because of defects in marketing, design and manufacturing, which reasonable consumers would not have expected.

819.    There was a defect in the marketing of Beneful which made it unreasonably dangerous because Purina failed to warn the Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass, on its packaging or otherwise, of the potential harm to their dogs from eating Beneful, which warning reasonable consumers would have expected.

820.    Beneful was defectively designed because it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, there were substitute ingredients available for Beneful that would meet the same needs and not be unsafe or unreasonably expensive, Purina had the ability to eliminate the unsafe character of Beneful without seriously impairing its usefulness or significantly increasing its costs, it was not anticipated that purchasers of Beneful would be aware of the dangers inherent in the use of the product, and the expectations of the ordinary consumer were that dog food manufactured by Purina would be safe for dogs.

821.    Alternatively, Beneful was defectively manufactured because it contained excessive amounts of toxins or other ingredients that are harmful and deadly to dogs that deviated in terms of quality from the specifications or planned output in a manner that rendered it unreasonably dangerous and not within the expectations of reasonable consumers.

822.    These unreasonably dangerous defects in the marketing, design and manufacture of Beneful existed at the time the Beneful left Defendant's control.

823.    Beneful came in sealed packages, and it did not change from the time it left Purina's possession, through the time it arrived in stores to be sold to consumers and consumers bought and took possession of it.

824.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, and related expenses, constituting property damage to the Ohio

1    Plaintiff, the members of the Ohio Class and the Ohio Subclass beyond and in addition to their

2    damages from purchasing the worthless Beneful.

3         825.    Accordingly, Purina is strictly liable for these damages caused to the Ohio

4    Plaintiff, the members of the Ohio Class and the Ohio Subclass by its unreasonably dangerous

5    product.

                                        **COUNT 85**
6          **Asserted as to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass**
            **(Unjust Enrichment/Restitution/Assumpsit/Money Had and Received)**
7
         826.    The Ohio Plaintiff incorporates herein the allegations of all of the preceding and

8    subsequent paragraphs as if fully set forth here verbatim.

9         827.    The Ohio Plaintiff brings this claim on behalf of herself, the Ohio Class and the

10   Ohio Subclass.

11        828.    The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass

12   purchased Beneful, which was defective, not merchantable, and unreasonably dangerous and

13   therefore had no value to them.

14        829.    The Ohio Plaintiff, the members of the Ohio Class and the Ohio Subclass

15   purchased Beneful designed, manufactured and marketed by Purina in various retail stores.

16   Purina knowingly received and retained a benefit from the Ohio Plaintiff, the Ohio Class

17   members and the Ohio Subclass, the gross revenues resulting from their purchases.  Purina is

18   not justified in retaining these revenues because of the diminished value, inherent defects,

19   adulterated state, misbranded content and general lack of merchantability of Beneful.

20        830.    Principles of fairness and equity demand that Purina disgorge the above-

21   referenced revenues to the Ohio Plaintiff, the Ohio Class and the Ohio Subclass members.

22

23

24

25

26

27

M.     PENNSYLVANIA CAUSES OF ACTION

<u>COUNT 86</u>
**Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class
and the Pennsylvania Subclass**
(<u>**Violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 P.S. §
201-1, *et seq.***</u>)

831.    The Pennsylvania Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

832.    This Count is brought by the Pennsylvania Plaintiffs on behalf of themselves the Pennsylvania Class and the Pennsylvania Subclass.

833.    At all times relevant hereto, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members were "persons" within the meaning of 73 P.S. § 201-2(3)..

834.    Purina's conduct, as alleged herein, constituted unfair or deceptive acts or practices and unfair methods of competition in trade or commerce (within the meaning of 73 P.S.§ 201-2(4)),   in violation of 73 P.S. § 201-3, and regulations promulgated thereunder, including the following types of conduct specified in 73 P.S. § 201-2:

a)    Representing that goods or services have characteristics or ingredients that they do not have (§ 201-2(vi));

b)    Representing that goods are of a particular standard, quality or grade, if they are of another (§ 201-2(vii));

c)    Advertising goods or services with intent not to sell them as advertised (§ 201-2(ix));

d)    Failing to comply with the terms of a written guaranty or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made (§ 201-2(xiv)); and

e)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding (§ 201-2(xxi)).

835.    Purina's unfair and deceptive acts and practices (including conduct prohibited by the provisions cited in subparagraphs (a) through (e) above), as alleged in greater detail herein, include, but are not limited to: (a) its false and misleading statements, representations, and depictions in its labeling, packaging, marketing, promotion and advertising for Beneful, including representing that Beneful offers "100% complete and balanced nutrition," that is "healthy" for dogs and that it promotes dogs' "healthy growth"; (b) the fact that, contrary to Purina's representations, Purina omitted that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, leading to confusion or misunderstanding; and (d) that these substances caused the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members' dogs to become ill and, in some cases, die; and (c) and its breaches of the implied warranty of merchantability and its express warranties.

836.    As a result of Purina's unfair and deceptive acts and practices, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members have suffered ascertainable losses of money or property within the meaning of 73 P.S. § 201-9.2, which they seek to recover, consisting of at least the following:

       a)     Veterinary bills incurred as a result of their dogs' illnesses or injuries caused by consumption of Beneful;

       b)     The costs of disposing of the remains of their dogs killed by consumption of Beneful;

       c)     The values of their dogs killed by consumption of Beneful; and

       d)     The amounts they paid for Beneful: the difference between the value of Beneful as represented (the purchase price) and the value of Beneful as actually accepted and delivered (which was $-0-, because of the unsafe and hazardous nature of the product).

837.   The Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members are entitled to recover these actual damages or statutory damages of $100, whichever is greater, plus multiple damages.

**COUNT 87**
**Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass**
**(Breach of the Implied Warranty of Merchantability, 13 Pa. C.S.A. § 2314)**

838.   The Pennsylvania Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

839.   The Pennsylvania Plaintiffs bring this claim on their own behalves and on behalf of the Pennsylvania Class and the Pennsylvania Subclass.

840.   Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass, as those terms are defined in the Pennsylvania Uniform Commercial Code.   Further, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members constituted "buyers" as that term is defined in the Pennsylvania Uniform Commercial Code. Beneful, itself, constituted "goods," as that term is defined in the Pennsylvania Uniform Commercial Code.

841.   As part of the sales to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass Purina impliedly warranted that Beneful was merchantable.  Among other things, to be merchantable, Beneful had to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which Beneful is used, be adequately contained, packaged and labeled as the agreements may have required, and conform to the promises or affirmations of fact made on the containers or labels.

842.   Purina breached the warranty of implied merchantability as to Beneful initially because Beneful would not pass without objection in the trade under the contract description. Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in

food, Mycotoxins, Lead, or Arsenic.  Dog food that is unsafe for consumption for dogs and that is highly likely to cause illness and death will not pass without objection in the trade under the description of dog food.  In addition, Purina breached the implied warranty as to Beneful, because Beneful was not fit for the ordinary purpose for which it is used, safely feeding dogs. Further, Purina breached the implied warranty of merchantability because Beneful was not adequately labeled as the agreements might have required because it failed to warn of the dangers of its consumption by dogs.

843.    At the time of sale throughout the Class Period, Purina made promises and affirmations of fact on the containers and labels of Beneful to the effect that Beneful was safe for consumption by pets.  Said representations included, but were not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

844.    However, Purina breached the implied warranty of merchantability because Beneful did not conform to those promises and affirmations of fact in that Beneful was in fact not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth" and customers' satisfaction was not guaranteed.

845.    Within a reasonable time after the discovery of Purina's breach, the Pennsylvania Plaintiffs gave notice of the breaches on behalf of themselves, the Pennsylvania Class and the Pennsylvania Subclass. Alternatively, this pleading constitutes sufficient notice of breach.   Alternatively, notice was not required because Purina already had specific knowledge of its breaches of warranty as to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass.

846.    As a proximate result of this breach of warranty by Purina, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass have been damaged in the following ways: (a) the difference in value between the value of the Beneful as warranted (the full purchase price) and the value of the Beneful as actually delivered ($0, because consumers

1  would not have paid anything for it had they known it contained Industrial Grade Glycols,

2  Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of Beneful; (c)

3  for those whose pets died from eating Beneful, the value of the dogs; and (d) for those whose

4  dogs died from eating Beneful, the cost of disposing of the remains.

**COUNT 88**
**Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class**
**and the Pennsylvania Subclass**
**(Breach of Express Warranty 13 Pa. C.S.A. § 2313)**

847.    The Pennsylvania Plaintiffs incorporate herein all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

848.    The Pennsylvania Plaintiffs bring this claim on behalf of themselves on behalf of the Pennsylvania Class and the Pennsylvania Subclass.

849.    Purina constituted both a "merchant" and a "seller" in connection with its sale of Beneful to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass, as those terms are defined in the Pennsylvania Uniform Commercial Code.  Further, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members constituted "buyers" as that term is defined in the Pennsylvania Uniform Commercial Code. Beneful, itself, constituted "goods," as that term is defined in the Pennsylvania Uniform Commercial Code.

850.    Under section 2-313 of the Uniform Commercial Code, the statements on Purina's containers and labels created express warranties, including that Beneful was safe for consumption by pets. Said statements include, but are not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

851.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the

1  bargain for the purchase of Beneful and created an express warranty that Beneful would

2  conform to those affirmations of fact and promises.

3     852.   Likewise, the statements as described in detail above constituted descriptions of

4  Beneful that became part of the basis of the bargain for the purchase of Beneful that created an

5  express warranty that Beneful would conform to the descriptions.

6     853.   Beneful was not safe for pets to consume and caused pets to become ill and/or

7  die.  The unsafe nature of the pet food constituted a breach of these express warranties.

8     854.   The Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania

9  Subclass members were injured as a direct and proximate result of Purina's aforementioned

10 breaches as follows: (a) the difference in value between the value of the Beneful as warranted

11 (its full purchase price) and the value of the Beneful as actually delivered ($0, because

12 consumers would not have paid anything for it had they known it contained Industrial Grade

13 Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills caused by consumption of

14 Beneful; (c) for those whose dogs died from consumption of Beneful, the value of those dogs;

15 and (d) for those whose dogs died from consumption of Beneful, the cost of disposing of their

16 remains.

17    855.   Within a reasonable time after the discovery of Purina's breaches, the

18 Pennsylvania Plaintiffs gave notice of the breaches on their own behalves and on behalf of the

19 Pennsylvania Class and the Pennsylvania Subclass.  Alternatively, this pleading constitutes a

20 sufficient notice of breach.  Alternatively, notice was not required because Purina already had

21 specific knowledge of its breaches of warranty as to the Pennsylvania Plaintiffs, the

22 Pennsylvania Class and the Pennsylvania Subclass.

23    856.   The Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the

24 Pennsylvania Subclass demand judgment against Purina for damages, as set forth above, plus

25 interest, costs and such additional relief as the Court may deem appropriate or to which the

26

27

1  Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members may

2  be entitled.

**COUNT 89**
**Asserted Against Purina on Behalf of the Pennsylvania**
**Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. Seq.* ("MMWA"))**

5  857.    The Pennsylvania Plaintiffs incorporate herein the allegations of all of the

6  preceding and subsequent paragraphs as if fully set forth here verbatim.

7  858.    The Pennsylvania Plaintiffs bring this claim on behalf of themselves the

8  Pennsylvania Class and the Pennsylvania Subclass.

9  859.    At all times relevant hereto, there was in full force and effect the Magnuson-

10  Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

11  860.    Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

12  861.    Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

13  862.    The Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the

14  Pennsylvania Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).    They are

15  consumers because they are persons entitled under applicable state law to enforce against the

16  warrantor the obligations of its implied warranty.

17  863.    Pursuant to 15 U.S.C. § 2310(e), the Pennsylvania Plaintiffs, the members of the

18  Pennsylvania Class and the Pennsylvania Subclass are entitled to bring this class action and are

19  not required to give Purina notice and an opportunity to cure until such time as the Court

20  determines the representative capacity of the Pennsylvania Plaintiffs pursuant to Rule 23 of the

21  Federal Rules of Civil Procedure.    However, the Pennsylvania Plaintiffs already gave the

22  required notice on behalf of themselves the Pennsylvania Class and the Pennsylvania Subclass

23  by letters dated May 13, 2015.

24  864.    In connection with its sale of Beneful, Purina gave an implied warranty as

25  defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.    As a part of

26  the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its

1  ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

2  contract description as dog food, (c) was adequately contained, packaged and labeled as the

3  agreements required, and (d) conformed to the promises and affirmations of fact set forth on its

4  container and label.  13 Pa. C.S.A. § 2314(b)(1), (3), (5) and (6).

5      865.   Purina is liable to the Pennsylvania Plaintiffs, the Pennsylvania Class and the

6  Pennsylvania Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied

7  warranty of merchantability.

8      866.   Purina initially breached the implied warranty of merchantability as to the

9  Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass

10  because Beneful was not fit for the ordinary purposes for which it is used – a safe, healthy dog

11  food.  Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use

12  in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of

13  providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of

14  dogs.

15     867.   Purina further breached its implied warranty of merchantability to the

16  Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass

17  because Beneful would not pass without objection in the trade under its contract description as

18  dog food, as it contained Industrial Grade Glycols, which are not approved for use in food,

19  Mycotoxins, Lead, or Arsenic.

20     868.   Purina further breached its implied warranty of merchantability to the

21  Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass

22  because Beneful was not adequately contained, packaged, and labeled.  The directions and

23  labeling that accompanied the Beneful dog food did not warn the Pennsylvania Plaintiffs, the

24  members of the Pennsylvania Class and the Pennsylvania Subclass of the dangers of feeding

25  Beneful to their dogs.

26

27

869.    Purina finally breached its implied warranty of merchantability to the Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

870.    Pursuant to 15 U.S.C. § 2310(d)(1), the Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between Beneful as warranted (the full purchase price) and Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Pennsylvania Plaintiffs, the members of the Pennsylvania Class and the Pennsylvania Subclass in connection with the commencement and prosecution of this action.

## COUNT 90
**Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class
and the Pennsylvania Subclass
(Negligence)**

871.    The Pennsylvania Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

872.    The Pennsylvania Plaintiffs bring this action on behalf of themselves the Pennsylvania Class and the Pennsylvania Subclass.

873.    Purina owed a duty of care to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass to provide pet food that was safe for consumption by dogs, free from toxins with harmful effects.

874.    Purina breached this duty by selling Beneful, which contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass of the dangers on Beneful's packaging. Such conduct by Purina was negligent in that Purina failed to act as an ordinarily prudent and reasonable person would have acted under the same or similar circumstances.

875.    Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass, would not recognize the risk; and that consumption of Beneful by dogs would foreseeably result in injury and death to those dogs, constituting property damage to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass beyond and in addition to damage from buying the worthless Beneful.

876.    As a proximate result of Purina's negligent acts alleged herein, the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass suffered injury to property, specifically in the illness and deaths of their dogs and the expenses incurred therewith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**COUNT 91**
**Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class**
**and the Pennsylvania Subclass**
**(Strict Product Liability)**

877.    The Pennsylvania Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

878.    The Pennsylvania Plaintiffs bring this action on behalf of themselves the Pennsylvania Class and the Pennsylvania Subclass.

879.    Purina designed, manufactured, distributed and sold Beneful, which was unsafe because it contained toxins and had other harmful effects as alleged, *supra*.

880.    The existence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful was, at all times material hereto, an unreasonably dangerous defect and/or condition.  The failure of Purina to warn on its package of the dangerousness of Beneful also constituted an unreasonably dangerous defect and/or condition.

881.    These unreasonably dangerous defects and/or conditions existed at the time Beneful left Purina's control.

882.    Beneful came in sealed packages, and it and its packaging did not change from the time it left Purina's possession through the time it arrived in stores to be sold to consumers and consumers purchased and took possession of it.

883.    The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, constituting property damage to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass beyond and in addition to the damage caused by purchasing the worthless Beneful.

884.    Accordingly, Purina is strictly liable for the damages caused to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass by the unreasonably

dangerous Beneful, specifically the illness and deaths of their dogs and expenses incurred therewith.

## COUNT 92
### Asserted as to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass

### (Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)

885.    The Pennsylvania Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth herein verbatim.

886.    The Pennsylvania Plaintiffs bring this action on behalf of themselves the Pennsylvania Class and the Pennsylvania Subclass.

887.    The Pennsylvania Plaintiffs, the Pennsylvania Class members and the Pennsylvania Subclass conferred a benefit on Purina in the form of the gross revenues Purina derived from the money they paid to purchase Beneful.

888.    Purina had an appreciation or knowledge of the benefit conferred on it by the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members.

889.    Purina accepted and retained the benefit in the amount of the revenues it earned from sales of Beneful to the Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass members.

890.    Purina has thereby profited by retaining the benefit under circumstances which would make it unjust for Purina to be permitted to retain the benefit.

891.    The Pennsylvania Plaintiffs, the Pennsylvania Class and the Pennsylvania Subclass are entitled to restitution of the entire amount Purina received from Purina's sales of Beneful to them.

N.     **TEXAS CAUSES OF ACTION**

**COUNT 93**

**Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class
and the Texas Subclass
(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

892.     The Texas Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

893.     The Texas Plaintiffs bring this claim on behalf of themselves the Texas Class and the Texas Subclass.

894.     At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

895.     Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

896.     Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

897.     The Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

898.     Pursuant to 15 U.S.C. § 2310(e), the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Texas Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, Texas Plaintiff Pena already gave the required notice on behalf of herself the Texas Class and the Texas Subclass by letter dated May 11, 2015.

899.     In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its

1    contract description as dog food, (c) was adequately contained, packaged and labeled as the
2    agreements required, and (d) conformed to the promises and affirmations of fact set forth on its
3    container and label.  Tex. Bus. Com. Code § 2.314(b)(1), (3), (5) and (6)

4        900.    Purina is liable to the Texas Plaintiffs, the Texas Class and the Texas Subclass
5    pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of
6    merchantability.

7        901.    Purina initially breached the implied warranty of merchantability as to the Texas
8    Plaintiffs, the members of the Texas Class and the Texas Subclass because Beneful was not fit
9    for the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful
10   contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead,
11   or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In
12   fact, Beneful has caused injury and death to thousands of dogs.

13       902.    Purina further breached its implied warranty of merchantability to the Texas
14   Plaintiffs, the members of the Texas Class and the Texas Subclass because Beneful would not
15   pass without objection in the trade under its contract description as dog food, as it contained
16   Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or
17   Arsenic.

18       903.    Purina further breached its implied warranty of merchantability to the Texas
19   Plaintiffs, the members of the Texas Class and the Texas Subclass because Beneful was not
20   adequately contained, packaged, and labeled.  The directions and labeling that accompanied the
21   Beneful dog food did not warn the Texas Plaintiffs, the members of the Texas Class and the
22   Texas Subclass of the dangers of feeding Beneful to their dogs.

23       904.    Purina finally breached its implied warranty of merchantability to the Texas
24   Plaintiffs, the members of the Texas Class and the Texas Subclass because Beneful did not
25   conform to the promises and affirmations of fact set forth on its container and label, as
26   described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy,"

27

did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

905.   Pursuant to 15 U.S.C. § 2310(d)(1), the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are entitled to recover the following damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass in connection with the commencement and prosecution of this action.

## COUNT 94
**Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class
and the Texas Subclass
(Breach of Express Warranty, Tex. Bus. & Com. Code § 2.313)**

906.   The Texas Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

907.   The Texas Plaintiffs bring this claim on behalf of themselves the Texas Class and the Texas Subclass.

908.   Purina constituted both a "merchant" and a "seller," as those terms are defined in Tex. Bus & Com. Code §§ 2.103 & 2.104, in connection with its sale of Beneful to the Texas Plaintiffs, the Texas Class and the Texas Subclass.  Further, the Texas Plaintiffs, the members

of the Texas Class and the Texas Subclass constituted "buyers," as that term is defined in Tex. Bus & Com. Code § 2.103.  Beneful, itself, constituted "goods," as that term is defined in Tex. Bus & Com. Code § 2.105.

909.    The statements on Purina's packaging for Beneful created express warranties, including that Beneful was safe for consumption by pets, under both common law and Tex. Bus. Com. Code § 2.313.  Said statements include, but are not limited to, Beneful dog food being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

910.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

911.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those descriptions.

912.    Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, constituting a breach of these express warranties.

913.    The Texas Plaintiffs, the members of the Texas Class and the Texas Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic ); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from eating Beneful, the market value of those dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of their remains.

914.     Within a reasonable time after their discovery of Purina's breaches, the Texas Plaintiffs gave notice of the breaches of the express warranties on behalf of herself and the Texas Class.  Alternatively, this pleading constitutes a sufficient notice of Purina's breaches of the express warranties.  Alternatively, it was not necessary for the Texas Plaintiffs, the Texas Class and the Texas Subclass members to give Purina notice of its breaches of the express warranties because Purina had actual notice of its breaches of warranty as to the Texas Plaintiffs, the Texas Class and the Texas Subclass.

### COUNT 95
**Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class and the Texas Subclass**
**(Breach of the Implied Warranty of Merchantability, Tex. Bus. & Com. Code § 2.314)**

915.     The Texas Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

916.     The Texas Plaintiff brings this claim on behalf of herself the Texas Class and the Texas Subclass.

917.     Purina is a "seller" and "merchant" as to Beneful within the meaning of Tex. Bus. & Com. Code §§ 2.103 & 2.104.  Purina designed, manufactured and sold Beneful, which constitutes "goods" within the meaning of Tex. Bus, & Com. Code § 2.105.  The Texas Plaintiff, the members of the Texas Class and the Texas Subclass constituted "buyers" within the meaning of Tex. Bus, & Com. Code § 2.103.  Consequently, pursuant to Tex. Bus, & Com. Code § 2.314(b)(1), (3), (5) & (6), Purina impliedly warranted that Beneful was merchantable, including that it: (a) was fit for its ordinary purposes as safe, healthy dog food, (b) it could pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged, and labeled as the agreements required, and (d) it conformed to the promises and affirmations of fact set forth on its container and labels.

918.     Purina initially breached the implied warranty of merchantability as to the Texas Plaintiff, the members of the Texas Class and the Texas Subclass because Beneful was not fit

for the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

919.    Purina further breached its implied warranty of merchantability to the Texas Plaintiff, the members of the Texas Class and the Texas Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

920.    Purina further breached its implied warranty of merchantability to the Texas Plaintiff, the members of the Texas Class and the Texas Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied Beneful did not warn the Texas Plaintiff, the members of the Texas Class and the Texas Subclass of the dangers of feeding Beneful to their dogs.

921.    Purina finally breached its implied warranty of merchantability to the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

922.    The Texas Plaintiff, the members of the Texas Class and the Texas Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c)

1  for those whose dogs died from eating Beneful, the market value of those dogs; and (d) for

2  those whose dogs died from eating Beneful, the cost of disposing of their remains.

3      923.    Within a reasonable time after their discovery of Purina's breaches, the Texas

4  Plaintiff gave notice of the breaches of the implied warranty of merchantability on behalf of

5  themselves the Texas Class and the Texas Subclass.  Alternatively, this pleading constitutes a

6  sufficient notice of Purina's breaches of the implied warranty of merchantability.

7  Alternatively, it was not necessary for the Texas Plaintiffs, the Texas Class and the Texas

8  Subclass members to give Purina notice of its breaches of warranty, because Purina had actual

9  notice of its breaches of warranty as to the Texas Plaintiffs, the Texas Class and the Texas

10  Subclass.

11                                  **COUNT 96**

12      **Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class
                        and the Texas Subclass**

13  **(Violation of Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA"))**

14      924.    The Texas Plaintiffs incorporate herein the allegations of all of the preceding

15  and subsequent paragraphs as if fully set forth here verbatim.

16      925.    The Texas Plaintiffs bring this claim on behalf of herself the Texas Class and the

17  Texas Subclass.

18      926.    The Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are

19  "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4).

20      927.    Beneful, itself, constituted "goods," as that term is defined in Tex. Bus. & Com.

21  Code § 17.45(1).

22      928.    Purina violated DTPA § 17.50(a)(2), because Purina breached both express and

23  implied warranties relating to Beneful, as describe in detail, *supra.*

24      929.    Purina's violations of DTPA § 17.50(a)(2) were the producing cause of actual

25  economic damages to the Texas Plaintiffs, the members of the Texas Class and the Texas

26  Subclass equal to: (a) the amount the Texas Plaintiffs, the members of the Texas Class and the

27

Texas Subclass paid for the worthless Beneful: the difference in value between the value of Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) their veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from eating Beneful, the market value of their dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of their remains, which they seek to recover from Purina pursuant to DTPA § 17.50(b)(1).

930. Alternatively, the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass seek disgorgement and/or restitution of the gross revenue derived by Purina from its sale of Beneful to them, along with any other equitable relief to which they are entitled, pursuant to DTPA § 17.50(b)(3). In addition to their actual economic damages, pursuant to DTPA § 17.50(d), the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are entitled to recover their reasonable and necessary attorneys' fees and court costs.

931. Purina committed the conduct in question knowingly or intentionally, pursuant to DTPA § 17.50(b), as evidenced by the fact that despite knowledge of the deaths of thousands of dogs as the result of eating Beneful and that it had breached its express and implied warranties relating to Beneful, Purina continued to market and sell Beneful, all the while omitting that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic. Because Purina's breaches of its express and implied warranties relating to Beneful were made knowingly or intentionally, the Texas Plaintiffs, the Texas Class and the Texas Subclass are entitled to recover additional damages of not more than three times the amount of their economic damages.

932. For those members of the Texas Class and the Texas Subclass whose dogs were injured or killed by consumption of Beneful more than two years before the filing of the

1  Original Complaint in this action, the statute of limitations has not run on their DTPA causes of

2  action pursuant to Tex. Bus. & Com. Code § 17.565 because they did not discover, and should

3  not have discovered in the exercise of reasonable diligence, Purina's breaches of warranties

4  until within two years prior to the filing of the Original Complaint in this action.

5                                    **COUNT 97**

6  **Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class
   and the Texas Subclass**

7  **(Negligence)**

8      933.    The Texas Plaintiffs incorporate herein the allegations of all of the preceding

9  and subsequent paragraphs as if fully set forth here verbatim.

10     934.    The Texas Plaintiffs bring this claim on behalf of themselves the Texas Class

11 and the Texas Subclass.

12     935.    Purina owed a duty of reasonable care to the Texas Plaintiffs, the members of

13 the Texas Class and the Texas Subclass to provide dog food that was safe for consumption by

14 dogs, free from excessive amounts of toxins with harmful effects.

15     936.    Purina breached this duty by designing, manufacturing, marketing and selling

16 Beneful, which contained Industrial Grade Glycols, which are not approved for use in food,

17 Mycotoxins, Lead, or Arsenic, without adequate quality control and testing; without using

18 proper manufacturing and production practices; without properly investigating reports of pet

19 deaths and illnesses following consumption of Beneful; and without adequately warning the

20 Texas Plaintiffs, the members of the Texas Class and the Texas Subclass of Beneful's dangers

21 on its packaging. Such conduct by Purina was negligent because it did not reflect the level of

22 care that an ordinarily prudent and reasonable person in Purina's place would have given under

23 the same or similar circumstances.

24     937.    Purina should have known that Beneful posed a risk of harm to dogs; that

25 purchasers of Beneful, including the Texas Plaintiffs, the members of the Texas Class and the

26 Texas Subclass, would not recognize the risk; and that consumption of Beneful by pets would

27

foreseeably result in their injury and death.  Such injury and death to the dogs constituted property damage to the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass beyond and in addition to their damage from purchasing the worthless Beneful.

938.    As a proximate result of Purina's negligent acts alleged herein, the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses incurred therewith.

<u>**COUNT 98**</u>

**Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class and the Texas Subclass**

**(Strict Products Liability – Section 402A of the Restatement (Second) of Torts)**

939.    The Texas Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

940.    The Texas Plaintiffs bring this claim on behalf of themselves the Texas Class and the Texas Subclass.

941.    Purina designed, manufactured and sold Beneful, which contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic as alleged, *supra*. The presence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic in Beneful, at all times material hereto, constituted an unreasonably dangerous defect and/or condition.

942.    Beneful was unreasonably dangerous because of defects in marketing, design and manufacturing.

943.    There was a defect in the marketing of Beneful which made it unreasonably dangerous because Purina failed to warn the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass, on its packaging or otherwise, of the potential harm to their dogs from eating Beneful.

944.    Beneful was defectively designed because it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, there were substitute

1  ingredients available for Beneful that would meet the same needs and not be unsafe or
2  unreasonably expensive, Purina had the ability to eliminate the unsafe character of Beneful
3  without seriously impairing its usefulness or significantly increasing its costs, it was not
4  anticipated that purchasers of Beneful would be aware of the dangers inherent in the use of the
5  product, and the expectations of the ordinary consumer were that dog food manufactured by
6  Purina would be safe for dogs.

7      945.    Alternatively, Beneful was defectively manufactured because it contained
8  excessive amounts of toxins or other ingredients that are harmful and deadly to dogs that
9  deviated in terms of quality from the specifications or planned output in a manner that rendered
10  it unreasonably dangerous beyond the expectations of ordinary consumers.

11     946.    These unreasonably dangerous defects in the marketing, design and manufacture
12  of Beneful existed at the time the Beneful left Purina's control.

13     947.    Beneful came in sealed packages, and it did not change from the time it left
14  Purina's possession, through the time it arrived in stores to be sold to consumers and consumers
15  bought and took possession of it.

16     948.    The unreasonably dangerous defects and/or conditions of Beneful proximately
17  caused injury and death to dogs, and related expenses, constituting property damage to the
18  Texas Plaintiffs, the members of the Texas Class and the Texas Subclass beyond and in
19  addition to their damages from purchasing the worthless Beneful.

20     949.    Accordingly, Purina is strictly liable for these damages caused to the Texas
21  Plaintiffs, the members of the Texas Class and the Texas Subclass by its unreasonably
22  dangerous product.

23

24

25

26

27

1

2

3

**COUNT 99**

**Asserted Against Purina on Behalf of the Texas Plaintiffs, the Texas Class
and the Texas Subclass**

**(Assumpsit/Money Had and Received/Unjust Enrichment/Restitution)**

4

5

950.     The Texas Plaintiffs incorporate herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

6

7

951.     The Texas Plaintiffs bring this claim on behalf of herself the Texas Class and the Texas Subclass.

8

9

10

952.     The Texas Plaintiffs, the members of the Texas Class and the Texas Subclass purchased Beneful, which was defective, not merchantable, and unreasonably dangerous and therefore had no value to them.

11

12

13

14

953.     Purina holds money, namely the gross revenues it derived from its sale of Beneful to the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass, which in equity and good conscience belong to the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass.

15

16

17

954.     Based upon money had and received, the Texas Plaintiffs, the members of the Texas Class and the Texas Subclass are entitled to recover the full amount of all gross revenue derived by Purina from the sale of Beneful to them.

18

**O.      WASHINGTON CAUSES OF ACTION**

19

20

**COUNT 100**

**Asserted as to the Washington Plaintiff, the Washington Class
and the Washington Subclass**

21

22

**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* ("MMWA"))**

23

955.     The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

24

25

956.     The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

26

27

957.     At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

958.     Beneful is a consumer product as defined in 15 U.S.C. § 2301(1).

959.     Purina is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

960.     The Washington Plaintiff, the members of the Washington Class and the Washington Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

961.     Pursuant to 15 U.S.C. § 2310(e), the Washington Plaintiff, the members of the Washington Class and the Washington Subclass are entitled to bring this class action and are not required to give Purina notice and an opportunity to cure until such time as the Court determines the representative capacity of the Washington Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, Washington Plaintiff Kimball already gave the required notice on behalf of herself the Washington Class and the Washington Subclass by letter dated May 20, 2015.

962.     In connection with its sale of Beneful, Purina gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Purina warranted that Beneful: (a) was fit for its ordinary purpose as safe dog food, (b) would pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and label.  Wash. Rev. Code § 62A.2–314.

963.     Purina is liable to the Washington Plaintiff, the Washington Class and the Washington Subclass pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

964.   Purina initially breached the implied warranty of merchantability as to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

965.   Purina further breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

966.   Purina further breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied the Beneful dog food did not warn the Washington Plaintiff, the members of the Washington Class and the Washington Subclass of the dangers of feeding Beneful to their dogs.

967.   Purina finally breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

968.   Pursuant to 15 U.S.C. § 2310(d)(1), the Washington Plaintiff, the members of the Washington Class and the Washington Subclass are entitled to recover the following

damages proximately caused to them by Purina's breach of the implied warranty of merchantability: (1) the difference in value between the Beneful as warranted (the full purchase price) and the Beneful as actually delivered ($0.00, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (2) the veterinarian bills caused by consumption of Beneful; (3) for those whose pets died from eating Beneful, the market value of the dogs; and (4) for those whose dogs died from eating Beneful, the cost of disposing of the remains.

969.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Washington Plaintiff, the members of the Washington Class and the Washington Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by the Washington Plaintiff, the members of the Washington Class and the Washington Subclass in connection with the commencement and prosecution of this action.

**COUNT 101**
**Asserted as to the Washington Plaintiff, the Washington Class**
**and the Washington Subclass**

**(Breach of Express Warranty - Wash. Rev. Code § 62A.2–313)**

970.    The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

971.    The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

972.    Purina constituted both a "merchant" and a "seller," as those terms are defined in Wash. Rev. Code §§ 62A.2-104 and 62A.2-103, in connection with its sale of Beneful to the Washington Plaintiff, the Washington Class and the Washington Subclass.  Further, the Washington Plaintiff, the members of the Washington Class and the Washington Subclass constituted "buyers," as that term is defined in Wash. Rev. Code § 62A.2-103.  Beneful, itself, constituted "goods," as that term is defined in Wash. Rev. Code § 62A.2-105.

973.    The statements on Purina's packaging for Beneful created express warranties, including that Beneful was safe for consumption by pets, under both common law and Wash. Rev. Code § 62A.2–313.  Said statements include, but are not limited to, Beneful dog food being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

974.    The statements regarding Beneful described in detail above constituted affirmations of fact and promises relating to Beneful that became part of the basis for the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those affirmations of fact and promises.

975.    Likewise, the statements as described in detail above constituted descriptions of Beneful that became part of the basis of the bargain for the purchase of Beneful and created an express warranty that Beneful would conform to those descriptions.

976.    Beneful was not safe for pets to consume and caused pets to become ill and/or die.  The unsafe nature of Beneful constituted a breach of these express warranties.

977.    The Washington Plaintiff, the members of the Washington Class and the Washington Subclass were injured as a proximate result of Purina's aforementioned breaches as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of those dogs; and (d) for those whose dogs died from consuming Beneful, the cost of disposing of their remains.

978.    Within a reasonable time after her discovery of Purina's breaches, the Washington Plaintiff gave notice of the breaches of the express warranties on behalf of herself the Washington Class and the Washington Subclass.  Alternatively, this pleading constitutes a

sufficient notice of Purina's breaches of the express warranties. Alternatively, it was not necessary for the Washington Plaintiff, the Washington Class and the Washington Subclass members to give Purina notice of its breaches of the express warranties as to them because Purina already had actual notice of those breaches.

**COUNT 102**

**Asserted as to the Washington Plaintiff, the Washington Class
and the Washington Subclass**

**(Breach of the Implied Warranty of Merchantability - Wash. Rev. Code § 62A.2–314**

979.    The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

980.    The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

981.    Purina is a "seller" and "merchant" as to Beneful within the meaning of Wash. Rev. Code §§ 62A.2-103 and 62A.2-104. Purina designed, manufactured and sold Beneful, which constitutes "goods" within the meaning of Wash. Rev. Code § 62A.2-105. The Washington Plaintiff, the members of the Washington Class and the Washington Subclass constituted "buyers" within the meaning of Wash. Rev. Code § 62A.2-103. Consequently, pursuant to Wash. Rev. Code § 62A.2–314, Purina impliedly warranted that Beneful was merchantable, including that it: (a) was fit for its ordinary purposes as safe, healthy dog food, (b) could pass without objection in the trade under its contract description as dog food, (c) was adequately contained, packaged, and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact set forth on its container and labels.

982.    Beneful was sold in sealed packaging, and the defects existed when it left Purina's control.

983.    When Purina designed, manufactured, distributed and sold Beneful, it knew the purpose for which Beneful was intended; *i.e.*, that it would be consumed by dogs.

984.    Purina initially breached the implied warranty of merchantability as to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful was not fit for the ordinary purposes for which it is used—a safe, healthy dog food.  Specifically, Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, which made it unfit for its ordinary purpose of providing safe, healthy dog food.  In fact, Beneful has caused injury and death to thousands of dogs.

985.    Purina further breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful would not pass without objection in the trade under its contract description as dog food, as it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.

986.    Purina further breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful was not adequately contained, packaged, and labeled.  The directions and labeling that accompanied Beneful did not warn the Washington Plaintiff, the members of the Washington Class and the Washington Subclass of the dangers of feeding Beneful to their dogs.

987.    Purina finally breached its implied warranty of merchantability to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass because Beneful did not conform to the promises and affirmations of fact set forth on its container and label, as described above.  Specifically, Beneful did not constitute safe, healthy food, was not "healthy," did not offer "great nutrition" to dogs, did not promote "healthy growth," and customers' satisfaction was not guaranteed.

988.    The Washington Plaintiff, the members of the Washington Class and the Washington Subclass were injured as a proximate result of Purina's aforementioned breaches

as follows: (a) in the amount of the difference in value between the value of the Beneful as warranted (its full purchase prices) and the Beneful as actually delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) the veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from consuming Beneful, the market value of those dogs; (d) for those whose dogs died from consuming Beneful, the cost of disposing of their remains; and (e) other economic losses, including the increased risk of health problems in their pets.

989.    Within a reasonable time after her discovery of Purina's breaches, the Washington Plaintiff gave notice of the breaches of the implied warranty of merchantability on behalf of herself the Washington Class and the Washington Subclass.  Alternatively, this pleading constitutes a sufficient notice of Purina's breaches of the implied warranty of merchantability.  Alternatively, it was not necessary for the Washington Plaintiff to give Purina already notice of its breaches of the implied warranty of merchantability as to her the Washington Class and the Washington Subclass because Purina had actual notice of such breaches.

<u>**COUNT 103**</u>
**Asserted as to the Washington Plaintiff, the Washington Class and
the Washington Subclass**
<u>**(Violation of the Washington Consumer Protection Act, Unfair Business Practices, Wash.
Rev. Code § 19.86.010 *et seq.*)**</u>

990.    The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

991.    The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

992.    The Washington Consumer Protection Act ("WCPA") declares unlawful (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) with a public interest impact, and (iv) which causes injury to Plaintiffs.

993.    Purina is a "person" within the meaning of the WCPA, Wash. Rev. Code § 19.86010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(2).

994.    The Washington Plaintiff, the Washington Class and the Washington Subclass members are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

995.    At all relevant times, Purina engaged in unfair acts or practices in the conduct of its business by promising and affirming on its container and label that Beneful was "healthy," offered "great nutrition" to dogs, and promoted "healthy growth" when, in actuality, Purina omitted that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.  Purina further engaged in unfair acts or practices in the conduct of its business when it continued to represent the health benefits of Beneful despite being aware of numerous complaints from users of Beneful that their dogs had become ill or died after consuming it.

996.    The acts and practices described above are unfair because these acts or practices (1) have caused substantial financial injury to the Washington Plaintiff, the Washington Class and the Washington Subclass members; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers.

997.    Purina's unfair practices have occurred in its trade or business and were and are capable of injuring a substantial portion of the public.  As such, Purina's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

998.    As a direct and proximate result of Purina's unfair acts or practices, the Washington Plaintiff, the Washington Class and the Washington Subclass members suffered injury in fact.  As a result of Purina's unfair practices, Plaintiff and Class members suffered injury in fact and lost money.

999.    Plaintiff the Washington Class and the Washington Subclass are therefore entitled to an order enjoining the conduct complained herein; actual damages to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass equal to: (a) the amount the Washington Plaintiff,  the members of the Washington Class and the Washington Subclass paid for the worthless Beneful: the difference in value between the value of Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) their veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from eating Beneful, the market value of their  dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of their remains; treble damages pursuant to Wash. Rev. Code § 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

1000.    The Washington Plaintiff, the Washington Class and the Washington Subclass are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, or all or part of the ill-gotten profits Purina received from the sale of Beneful.

## **COUNT 104**

**Asserted as to the Washington Plaintiff, the Washington Class and the Washington Subclass**
**(Violation of the Washington Consumer Protection Act, Deceptive Business Practices, Wash. Rev. Code § 19.86.010 *et seq.*)**

1001.    The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

1002.    The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

1003.   The Washington Consumer Protection Act ("WCPA") declares unlawful (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) with a public interest impact, and (iv) which causes injury to Plaintiffs.

1004.   Purina is a "person" within the meaning of the WCPA, Wash. Rev. Code § 19.86010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(2).

1005.   The Washington Plaintiff, the Washington Class and the Washington Subclass members are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

1006.   At all relevant times, Purina engaged in deceptive acts or practices in the conduct of its business by promising and affirming on its container and label that Beneful was "healthy," offered "great nutrition" to dogs, and promoted "healthy growth" when, in actuality, Purina omitted that Beneful contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic.  Purina further engaged in deceptive acts or practices in the conduct of its business when it continued to represent the health benefits of Beneful despite being aware of numerous complaints from users of Beneful that their dogs had become ill or died after consuming it.

1007.   The numerous complaints that Purina concealed from the Washington Plaintiff, the Washington Class and the Washington Subclass members are material in that a reasonable consumer would not have purchased Beneful and subjected himself or herself to injury had he or she known these facts.

1008.   Purina's deceptive practices have occurred in its trade or business and were and are capable of deceiving a substantial portion of the public.  As such, Purina's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

1009.   As a direct and proximate result of Purina's deceptive acts or practices, the Washington Plaintiff, the Washington Class and the Washington Subclass members suffered

injury in fact.  As a result of Purina's deceptive practices, Plaintiff, Class and Suclass members were overcharged for the Beneful and thus lost money.

1010.  Plaintiff, the Class and the Subclass are therefore entitled to an order enjoining the conduct complained herein; actual damages to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass equal to: (a) the amount the Washington Plaintiff, the members of the Washington Class and the Washington Subclass paid for the worthless Beneful: the difference in value between the value of Beneful as represented (the full purchase prices) and the value of Beneful as actually accepted and delivered ($0, because consumers would not have paid anything for it had they known it contained Industrial Grade Glycols, Mycotoxins, Lead, or Arsenic); (b) their veterinarian bills incurred as a result of their pets consuming Beneful; (c) for those whose dogs died from eating Beneful, the market value of their  dogs; and (d) for those whose dogs died from eating Beneful, the cost of disposing of their remains; treble damages pursuant to Wash. Rev. Code § 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

1011.  The Washington Plaintiff, the Washington Class and the Washington Subclass are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, or all or part of the ill-gotten profits Purina received from the sale of Beneful.

**COUNT 105**
**Asserted as to the Washington Plaintiff, the Washington Class**
**and the Washington Subclass**
**(Negligence - Washington Product Liability Act, Wash. Rev. Code § 7.72.030(1))**

1012.  The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

1013.  The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

1014.   Purina owed a duty of reasonable care to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass to provide dog food that was safe for consumption by dogs, free from excessive amounts of toxins with harmful effects.

1015.   Purina breached this duty by selling Beneful, which contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning the Washington Plaintiff, the members of the Washington Class and the Washington Subclass of Beneful's dangers on its packaging.

1016.   Such conduct by Purina was negligent because it did not reflect the level of care that an ordinarily prudent and reasonable person in Purina's place would have given under the same or similar circumstances.

1017.   Purina should have known that Beneful posed a risk of harm to dogs; that purchasers of Beneful, including the Washington Plaintiff, the members of the Washington Class and the Washington Subclass, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in their injury and death.  Such injury and death to the dogs constituted property damage to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass beyond and in addition to their damage from purchasing the worthless Beneful.

1018.   As a proximate result of Purina's negligent acts alleged herein, the Washington Plaintiff, the members of the Washington Class and the Washington Subclass suffered injury to property, specifically the illness and deaths of their dogs, and the expenses incurred therewith.

**COUNT 106**
**Asserted as to the Washington Plaintiff, the Washington Class**
**and the Washington Subclass**
**(Strict Products Liability - Wash. Rev. Code § 7.72.030(2))**

1019.   The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

1020.   The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

1021.   Purina designed, manufactured, distributed and sold Beneful, which contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic as alleged, *supra*. The presence of Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic and other harmful effects in Beneful, at all times material hereto, which would not reasonably have been expected by consumers, constituted an unreasonably dangerous defect and/or condition.

1022.   Beneful was unreasonably dangerous because of defects in marketing, design and manufacturing, which reasonable consumers would not have expected.

1023.   There was a defect in the marketing of Beneful which made it unreasonably dangerous because Purina failed to warn the Washington Plaintiff, the members of the Washington Class and the Washington Subclass, on its packaging or otherwise, of the potential harm to their dogs from eating Beneful, which warning reasonable consumers would have expected.

1024.   Beneful was defectively designed because it contained Industrial Grade Glycols, which are not approved for use in food, Mycotoxins, Lead, or Arsenic, there were substitute ingredients available for Beneful that would meet the same needs and not be unsafe or unreasonably expensive, Purina had the ability to eliminate the unsafe character of Beneful without seriously impairing its usefulness or significantly increasing its costs, it was not anticipated that purchasers of Beneful would be aware of the dangers inherent in the use of the

product, and the expectations of the ordinary consumer were that dog food manufactured by Purina would be safe for dogs.

1025. Alternatively, Beneful was defectively manufactured because it contained excessive amounts of toxins or other ingredients that are harmful and deadly to dogs that deviated in terms of quality from the specifications or planned output in a manner that rendered it unreasonably dangerous and not within the expectations of reasonable consumers.

1026. These unreasonably dangerous defects in the marketing, design and manufacture of Beneful existed at the time the Beneful left Purina's control.

1027. Beneful came in sealed packages, and it did not change from the time it left Purina's possession, through the time it arrived in stores to be sold to consumers and consumers bought and took possession of it.

1028. The unreasonably dangerous defects and/or conditions of Beneful proximately caused injury and death to dogs, and related expenses, constituting property damage to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass beyond and in addition to their damages from purchasing the worthless Beneful.

1029. Accordingly, Purina is strictly liable for these damages caused to the Washington Plaintiff, the members of the Washington Class and the Washington Subclass by its unreasonably dangerous product.

### COUNT 107
**Asserted as to the Washington Plaintiff, the Washington Class
and the Washington Subclass
(Unjust Enrichment/Restitution/Assumpsit/Money Had and Received)**

1030. The Washington Plaintiff incorporates herein the allegations of all of the preceding and subsequent paragraphs as if fully set forth here verbatim.

1031. The Washington Plaintiff brings this claim on behalf of herself the Washington Class and the Washington Subclass.

1     1032. The Washington Plaintiff, the members of the Washington Class and the

2  Washington Subclass, at their expense, purchased Beneful, which was defective, not

3  merchantable, and unreasonably dangerous and therefore had no value to them.

4     1033. The Washington Plaintiff, the members of the Washington Class and the

5  Washington Subclass purchased Beneful designed, manufactured and marketed by Purina in

6  various retail stores.  Purina knowingly received and retained a benefit from the Washington

7  Plaintiff, the Washington Class and the Washington Subclass members, the gross revenues

8  resulting from their purchases.  Purina is not justified in retaining these revenues because of the

9  diminished value, inherent defects, adulterated state, misbranded content and general lack of

10  merchantability of Beneful.

11     1034. Principles of fairness and equity demand that Purina disgorge the above-

12  referenced revenues to the Washington Plaintiff and the Washington Class members.

## PRAYER

14     WHEREFORE, Plaintiffs and the Classes request that the Court enter an order of

15  judgment against Purina including the following:

16     1.     Certification of the action as a class action under Rule 23 of the Federal Rules of

17  Civil Procedure and appointment of Plaintiffs as Class Representatives and their counsel of

18  record as Class Counsel;

19     2.     An order requiring Purina to pay Plaintiffs and other Class members an amount

20  of actual, statutory, and punitive damages, and restitution in an amount to be determined at

21  trial, and where allowed by law;

22     3.     An order grating equitable relief in the form of restitution and/or disgorgement

23  of all unlawful or illegal profits received by Purina as a result of the unlawful, unfair and/or

24  deceptive conduct alleged herein;

25     4.     An order granting Plaintiffs' reasonable costs and attorneys' fees; and

26     5.     An order granting such other relief as may be just and proper.

27

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated:  June 19, 2015.                    Respectfully submitted,

By: */s/ Jeffrey B. Cereghino*
    Jeffrey B. Cereghino, SBN 099480
    Email: jbc@rocklawcal.com
    Michael F. Ram, SBN 104805
    Email:  mram@rocklawcal.com
    Matt J. Malone, SBN 221545
    Email: mjm@rocklawcal.com
    Susan Brown, SBN 287986
    Email: sbrown@rocklawcal.com
    RAM, OLSON, CEREGHINO &
      KOPCZYNSKI LLP
    555 Montgomery Street, Suite 820
    San Francisco, California 94111
    Telephone:  (415) 433-4949
    Facsimile:  (415) 433-7311

    John Yanchunis
    Email:  jyanchunis@forthepeople.com
    James D. Young
    Email:  jyoung@forthepeople.com
    MORGAN & MORGAN COMPLEX
      LITIGATION GROUP
    201 N Franklin Street, Floor 7
    Tampa, Florida 33602
    Telephone: (813)275-5272
    Facsimile: (813)275-9295

    Beth E. Terrell, SBN 178181
    Email:  bterrell@tmdwlaw.com
    Adrienne D. McEntee
    Email:  amcentee@tmdwlaw.com
    Samuel J. Strauss
    Email:  sstrauss@tmdwlaw.com
    TERRELL MARSHALL DAUDT
      & WILLIE PLLC
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone:  (206) 816-6603
    Facsimile:  (206) 350-3528

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

David Pastor
Email:  dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Telephone:  (617) 742-9700
Facsimile:  (617) 742-9701

Preston W. Leonard
Email:  pleonard@theleonardlawoffice.com
LEONARD LAW OFFICE, P.C.
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Telephone:  (617) 329-1295

Todd Garber
Email:tgarber@fbfglaw.com
Greg Blankinship
Email: gblankinship@fbfglaw.com
FINKELSTEIN, BLANKINSHIP,
   FREI-PEARSON & GARBER, LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Telephone:  (914) 298-3281, ext 2803
Facsimile:  (914) 824-1561

Alan M. Mansfield, SBN 125998
Consumer Law Group of California
Email:  alan@clgca.com
CONSUMER LAW GROUP
10200 Willow Creek Road, Suite 160
San Diego, California 92131
Telephone:  (619) 308-5034
Facsimile:  (888) 341-5048

Roger Mandel
Email:  rlm@lhlaw.net
LACKEY HERSHMAN, L.L.P
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203

Kenneth G. Gilman
Email:  Kgilman@gilmanpastor.com
GILMAN LAW LLP

8951 Bonita Beach Road, S.E., Suite 525
Bonita Springs, Florida  34135
Telephone:  (888) 252-0048
Michael J. Flannery
Email: mflannery@cuneolaw.com
CUNEO GILBERT & LADUCA, LLP
300 North Tucker Boulevard, No. 801
St. Louis, Missouri 63101
Telephone:  (202)-587-5063
Facsimile:  (202) 789-1813

Jennifer R. Edwards
Email: jre@TheAnimalLawCenter.com
THE ANIMAL LAW CENTER
730 W. Hampden Avenue, #304
Englewood, Colorado 80110
Telephone:  (303) 322-4355

Kim E. Richman
Email: krichman@richmanlawgroup.com
THE RICHMAN LAW GROUP
195 Plymouth Street
Brooklyn, New York 11201
Telephone:  (212) 687-8291

Thomas E. Soule
Email:  tsoule@edcombs.com
EDLEMAN, COMBS, LATTURNER
   & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone:  (312) 739-4200
Facsimile:  (312) 419-0379

S. Chandler Visher
Email: chandler@visherlaw.com
LAW OFFICES OF S.
   CHANDLER VISHER
44 Montgomery Street, Suite 3830
San Francisco, California  94104
Telephone:  415-901-0500
Facsimile:  415-901-0504

*Attorneys for Plaintiff and Proposed Class*